1   Neal R. Marder (SBN: 126879)
      nmarder@winston.com
2   Kyle R. Gehrmann (SBN: 212032)
      kgehrmann@winston.com
3   WINSTON & STRAWN LLP
    333 South Grand Avenue, 38th Floor
4   Los Angeles, CA 90071-1543
    Telephone:    213-615-1700
5   Facsimile:    213-615-1750

6   Attorneys for Defendants
    MEDQUIST INC. AND MEDQUIST
7   TRANSCRIPTIONS, LTD.

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11

12  KAISER FOUNDATION HEALTH PLAN,      )   Case No. 3:08-cv-03245 (PJH)
    INC., et al.                         )
13                                       )   DECLARATION OF KYLE GEHRMANN
                Plaintiffs,              )   IN SUPPORT OF DEFENDANTS'
14                                       )   MOTION TO TRANSFER VENUE TO THE
            vs.                          )   DISTRICT OF NEW JERSEY, CAMDEN
15                                       )   DIVISION
    MEDQUIST, INC, et al.                )
16                                       )   Date: August 27, 2008
                Defendants.             )   Time: 9:00 AM
17                                       )   Location: Courtroom 3, 17th Floor
                                         )
18                                       )   The Honorable Phyllis J. Hamilton
                                         )
19                                       )
                                         )
20                                       )
                                         )
21  _____)

22

23

24

25

26

27

28

*(left margin, vertical text)* Winston & Strawn LLP / 333 South Grand Avenue / Los Angeles, CA 90071-1543

1

## DECLARATION OF KYLE R. GEHRMANN

2  I, Kyle R. Gehrmann, hereby declare:

3      1.    I am an attorney admitted to practice law before this Court and all Courts of

4  the State of California. I am an associate with the law firm of Winston & Strawn LLP, attorneys of

5  record for Defendants MedQuist Inc. and MedQuist Transcriptions, Ltd ("MedQuist"). I make this

6  Declaration in support of Defendants Motion to Transfer Venue to the District of New Jersey,

7  Camden Division. I have personal knowledge of the facts set forth below, and if called upon to do

8  so, could and would testify thereto.

9      2.    Attached as Exhibit A is a true and correct copy of the docket sheet in <u>South</u>

10 <u>Broward Hospital District, et al. v. MedQuist, Inc. et al.</u>, United States District Court for the District

11 of New Jersey Case Number 05-CV-2206 (JBS/AMD).

12     3.    Attached as Exhibit B is a true and correct copy of the Notice of Related Case

13 filed in Alameda County Superior Court by Plaintiffs when they initiated this action.

14     4.    Attached as Exhibit C is a true and correct copy of Mark Taylor, *Fraud*

15 *lawsuit targets transcription giant MedQuist*, Modern Healthcare, October 11, 2004, in which

16 Plaintiffs' lead counsel, Mark L. Hogge of Greenberg Traurig, is quoted stating that Plaintiffs chose

17 to bring the <u>South Broward</u> litigation in California because it has "very favorable class-action laws

18 and some of the toughest consumer fraud statutes in the country."

19     5.    Attached as Exhibit D is a true and correct copy of one of Judge Simandle's

20 Orders in <u>South Broward Hospital District, et al. v. MedQuist, Inc. et al.</u>, United States District

21 Court for the District of New Jersey Case Number 05-CV-2206 (JBS/AMD).

22     6.    Attached as Exhibit E is a true and correct copy of an Opinion of Judge

23 Simandle in <u>South Broward Hospital District, et al. v. MedQuist, Inc. et al.</u>, United States District

24 Court for the District of New Jersey Case Number 05-CV-2206 (JBS/AMD).

25     7.    Attached as Exhibit F is a true and correct copy of the Order transferring

26 <u>South Broward Hospital District, et al. v. MedQuist, Inc. et al.</u> from the Central District of California

27 to the District of New Jersey.

28

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1
DECLARATION

1    8.    Attached as Exhibit G are true and correct copies or Tables C and D from

2  James C. Duff, *Judicial Business of the United States Courts*: 2007 Annual Report of the Director,

3  printed from http://www.uscourts.gov/judbususc/judbus.html. I determined the total number of

4  judges and magistrate judges in the Northern District of California and the District of New Jersey by

5  reviewing each district's directory of judges on their websites.

6    9.    Attached as Exhibit H is a true and correct copy of Local Rule 40.1 of the

7  United States District Court for the District of New Jersey, "Allocation and Assignment of Cases."

8    10.    Attached as Exhibit I is a true and correct copy of the docket sheet in <u>Myers,

9  et al. v. MedQuist, Inc. et al.</u>, United States District Court for the District of New Jersey Case

10  Number 05-CV-4608 (JBS/AMD). In paragraph 37 of the Consolidated Amended Complaint in that

11  case, plaintiffs alleged that MedQuist "inflated line counts for bills sent to customers and deflated

12  line counts calculations for payment to its transcriptionists."

13    11.    Attached as Exhibit J is a true and correct copy of the docket sheet in <u>Steiner

14  v. MedQuist, Inc. et al.</u>, United States District Court for the District of New Jersey Case Number 04-

15  CV-5487 (JBS/AMD). In paragraph 2 of the Complaint, plaintiffs alleged that "Defendants

16  employed an intentional scheme to defraud shareholders that was implemented through the design of

17  its billing programs to overcharge customers for transcription services to achieve desired profit

18  margins."

19    12.    Attached as Exhibit K is a true and correct copy of the docket sheet in <u>Kanter

20  v. Barella et al.</u>, United States District Court for the District of New Jersey Case Number 04-CV-

21  5542 (JBS/JBR). In paragraph 2 of the Complaint, plaintiffs alleged that "the Company and its

22  employees where intentionally falsifying its billing practices, in particular, the computation of

23  AAMT lines for which clients were billed, to artificially inflate revenue and income in its published

24  financial statements."

25    13.    Attached as Exhibit L is a true and correct copy of the Third Amended

26  Complaint in <u>South Broward Hospital District, et al. v. MedQuist, Inc. et al.</u>, United States District

27  Court for the District of New Jersey Case Number 05-CV-2206 (JBS/AMD).

28

**Winston & Strawn LLP**
333 South Grand Avenue
Los Angeles, CA 90071-1543

2
DECLARATION

14.     I have reviewed the opinions and orders of the court in the <u>South Broward</u>, <u>Kanter</u>, <u>Myers</u>, and <u>Steiner</u> cases mentioned above. In <u>Kanter</u>, <u>Myers</u>, and <u>Steiner</u>, the court issued opinions and orders totaling over 100 pages.

15.     Attached as Exhibit M is a true and correct copy of a page from Plaintiffs' website: <u>https://members.kaiserpermanente.org/kpweb/structurekp/navlinkpage.do?cfe_number=123&segment=members&nav_top_order=200&region=SCA</u>.

16.     Attached as Exhibit N is a page printed from the website of Greenberg Traurig LLP, found at <u>http://gtlaw.com/People/MarkLHogge</u>.

I declare under penalty of perjury under the laws of the United States of America and the State of California, that the foregoing is true and correct.

Executed this _____ day of July, 2008, at Los Angeles, California

_____
Kyle R. Gehrmann

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

LA:218392.1

14.    I have reviewed the opinions and orders of the court in the <u>South Broward</u>, <u>Kanter</u>, <u>Myers</u>, and <u>Steiner</u> cases mentioned above. In <u>Kanter</u>, <u>Myers</u>, and <u>Steiner</u>, the court issued opinions and orders totaling over 100 pages.

15.    Attached as Exhibit M is a true and correct copy of a page from Plaintiffs' website: <u>https://members.kaiserpermanente.org/kpweb/structurekp/navlinkpage.do?cfe_number=123&segment=members&nav_top_order=200&region=SCA</u>.

16.    Attached as Exhibit N is a page printed from the website of Greenberg Traurig LLP, found at <u>http://gtlaw.com/People/MarkLHogge</u>.

I declare under penalty of perjury under the laws of the United States of America and the State of California, that the foregoing is true and correct.

Executed this 22nd day of July, 2008, at Los Angeles, California

_____
Kyle R. Gehrmann

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

LA:218392.1

3
DECLARATION

EXHIBIT A

CLOSED, RULE16, SCHEDO

# U.S. District Court
## District of New Jersey [LIVE] (Camden)
## CIVIL DOCKET FOR CASE #: 1:05-cv-02206-JBS-AMD

| | |
|---|---|
| SOUTH BROWARD HOSPITAL DISTRICT et al v. MEDQUIST INC. et al | Date Filed: 04/22/2005 |
| Assigned to: Judge Jerome B. Simandle | Date Terminated: 06/09/2008 |
| Referred to: Magistrate Judge Ann Marie Donio | Jury Demand: Both |
| Case in other court: USCA 3rd Circuit, 07-02076 | Nature of Suit: 190 Contract: Other |
| Central District of California, 2:04cv7520 | Jurisdiction: Diversity |
| Cause: 28:1332 Diversity-Breach of Contract | |

**Plaintiff**

| | | |
|---|---|---|
| **SOUTH BROWARD HOSPITAL DISTRICT** | represented by | **CLARK P. RUSSELL** |
| *doing business as* | | GREENBERG TRAURIG, LLP |
| MEMORIAL HOSPITAL WEST | | 200 PARK AVENUE |
| *doing business as* | | PO BOX 677 |
| MEMORIAL HOSPITAL | | FLORHAM PARK, NJ 07932-0677 |
| PEMBROKE | | (973) 360-7900 |
| *doing business as* | | *LEAD ATTORNEY* |
| MEMORIAL REGIONAL HOSPITAL | | *ATTORNEY TO BE NOTICED* |

**IAN SETH SHAINBROWN**
GREENBERG TRAURIG LLP
200 PARK AVENUE
FLORHAM PARK, NJ 07932
973-360-2358
Email: shainbrowni@gtlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ROGER B. KAPLAN**
GREENBERG TRAURIG, LLP
200 CAMPUS DRIVE
PO BOX 677
FLORHAM PARK, NJ 07932-0677
(973) 360-7957
Fax: (973) 301-8410
Email: kaplanr@gtlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**CHILDRENS HOSPITAL LOS
ANGELES**
*TERMINATED: 04/27/2007*

represented by   **CLARK P. RUSSELL**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ROGER B. KAPLAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**NORTHBAY HEALTHCARE
GROUP**
*doing business as*
NORTHBAY MEDICAL CENTER
*doing business as*
VACA VALLEY HOSPITAL

represented by   **CLARK P. RUSSELL**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ROGER B. KAPLAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**PARTNERS HEALTHCARE
SYSTEMS, INC.**
*doing business as*
PARTNERS HEALTHCARE
*doing business as*
MASSACHUSETTS GENERAL
HOSPITAL
*doing business as*
MASSACHUSETTS GENERAL
PHYSICIAN'S ORGANIZATION
*doing business as*
BRIGHAM AND WOMEN'S
HOSPITAL
*doing business as*
SPAULDING REHABILITATION
HOSPITAL
*doing business as*
NEWTON-WELLESLEY HOSPITAL
*doing business as*
NORTH SHORE MEDICAL CENTER,
INC.
*doing business as*
THE SALEM HOSPITAL
*doing business as*
UNION HOSPITAL

represented by   **CLARK P. RUSSELL**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ROGER B. KAPLAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**RIVERSIDE HEALTHCARE**

represented by   **CLARK P. RUSSELL**

**SYSTEMS, L.P.**
*doing business as*
RIVERSIDE COMMUNITY
HOSPITAL

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ROGER B. KAPLAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**WEST HILLS HOSPITAL**                 represented by  **CLARK P. RUSSELL**
*individually and on behalf of all those*               (See above for address)
*similarly situated*                                    *LEAD ATTORNEY*
*doing business as*                                     *ATTORNEY TO BE NOTICED*
WEST HILLS HOSPITAL &
MEDICAL CENTER                                          **ROGER B. KAPLAN**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**MEDQUIST INC.**                       represented by  **MARC J. GROSS**
                                                        GREENBAUM, ROWE, SMITH &
                                                        DAVIS, LLP
                                                        75 LIVINGSTON AVENUE
                                                        SUITE 301
                                                        ROSELAND, NJ 07068-3701
                                                        (973) 535-1600
                                                        Fax: (973) 577-1785
                                                        Email: mgross@greenbaumlaw.com
                                                        *ATTORNEY TO BE NOTICED*

                                                        **OLIVIER SALVAGNO**
                                                        GREENBAUM, ROWE, SMITH &
                                                        DAVIS, LLP
                                                        PO BOX 5600
                                                        WOODBRIDGE, NJ 07095
                                                        (732) 549-5600
                                                        Email: osalvagno@greenbaumlaw.com
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**

**RONALD SCARPONE**                     represented by  **FREDERICK E. BLAKELOCK**
                                                        GIBBONS, DEL DEO, DOLAN,
                                                        GRIFFINGER & VECCHIONE, PC
                                                        1700 TWO LOGAN SQUARE
                                                        18TH & ARCH STREETS

PHILADELPHIA, PA 19103
(215) 665-0400
Fax: (215) 636-0366
Email: fblakelock@gibbonslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**TIMOTHY S. SUSANIN**
GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE
TWO LOGAN SQUARE
18TH & ARCH
SUITE 1700
PHILADELPHIA, PA 19103-2769
215-665-0400
Email: tsusanin@gibbonslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**MARC J. GROSS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**OLIVIER SALVAGNO**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOHN SUENDER**                    represented by    **HENRY F. REICHNER**
REED SMITH, LLP
2500 ONE LIBERTY PLACE
1650 MARKET STREET
PHILADELPHIA, PA 19103-7301
(215) 851-8100
Email: hreichner@reedsmith.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**LAUREN GRAHAM DELEHEY**
REED SMITH, LLP
PRINCETON FORRESTAL VILLAGE

136 MAIN STREET
SUITE 250
PRINCETON, NJ 08543-7839
(609) 987-0050
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**MARALEEN DANAI SHIELDS**

POST & SCHELL, PC
1245 SOUTH CEDAR CREST
BOULEVARD
SUITE 300
ALLENTOWN, PA 18103
(610) 433-0193
Email: mshields@postschell.com
*TERMINATED: 06/20/2007*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JANETT D. PATEIRO**
REED SMITH, LLP
136 MAIN STREET
PRINCETON, NJ 08540
(609) 524-2040
Email: jpateiro@reedsmith.com
*TERMINATED: 06/27/2005*
*ATTORNEY TO BE NOTICED*

**Defendant**

**BRIAN KEARNS**          represented by   **KEENA M. MACKAY**
LATHAM & WATKINS, LLP
OEN NEWARK CENTER
16TH FLOOR
NEWARK, NJ 07102
(973) 639-1234
Email: keena.mackay@lw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CHRISTOPHER M. DIMURO**
PATTON BOGGS LLP
ONE RIVERFRONT PLAZA
6TH FLOOR
NEWARK, NJ 07102
(973) 848-5640
Email: cdimuro@pattonboggs.com
*TERMINATED: 05/02/2006*
*ATTORNEY TO BE NOTICED*

**Defendant**

**MICHAEL CLARK**          represented by   **RICHARD A. DEMICHELE, JR.**
DeMICHELE & DeMICHELE, ESQS.
800 NORTH KINGS HIGHWAY
SUITE 503
CHERRY HILL, NJ 08034
856-755-3660
Email: rick@southjerseylawfirm.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**MARC J. GROSS**
(See above for address)
*TERMINATED: 05/11/2007*
*ATTORNEY TO BE NOTICED*

**OLIVIER SALVAGNO**
(See above for address)
*TERMINATED: 05/11/2007*
*ATTORNEY TO BE NOTICED*

**Defendant**

**MEDQUIST TRANSCRIPTIONS, LTD.**     represented by    **MARC J. GROSS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**OLIVIER SALVAGNO**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/22/2005 | 57 | Certified Copy of Transfer Order and docket received, Case transferred in from District of Central District of California; Case Number 04-7520. Original file with documents numbered 1-56, certified copy of transfer order and docket sheet received., filed by RIVERSIDE HEALTHCARE SYSTEMS, L.P., SOUTH BROWARD HOSPITAL DISTRICT, MEMORIAL HOSPITAL WEST, MEMORIAL HOSPITAL PEMBROKE, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC.. (Attachments: # 1 Central District of California Docket# 2 Complaint, etc.) (Central District of California documents are too voluminous to be scanned, see Clerks file)(gg, ) Additional attachment(s) added on 5/4/2005 (gg, ). Additional attachment(s) added on 5/4/2005 (gg, ). (Entered: 05/02/2005) |
| 05/12/2005 | 58 | Letter from Sullivan & Cromwell LLP re: change of address for deft's out of state attorney Mark L. Smith to the law firm of Winston & Strawn. (th, ) (Entered: 05/12/2005) |
| 05/17/2005 | 59 | NOTICE of Appearance by ROGER B. KAPLAN on behalf of RIVERSIDE HEALTHCARE SYSTEMS, L.P., SOUTH BROWARD HOSPITAL DISTRICT, MEMORIAL HOSPITAL WEST, MEMORIAL HOSPITAL PEMBROKE, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC. (KAPLAN, ROGER) (Entered: 05/17/2005) |
| 05/18/2005 | 60 | CERTIFICATE OF SERVICE by RIVERSIDE HEALTHCARE SYSTEMS, L.P., MEMORIAL HOSPITAL WEST, MEMORIAL HOSPITAL PEMBROKE, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY |

| | | |
|---|---|---|
| | | HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC. re 59 Notice of Appearance (KAPLAN, ROGER) (Entered: 05/18/2005) |
| 05/26/2005 | 61 | NOTICE of Appearance by JANETT D. PATEIRO on behalf of JOHN SUENDER (PATEIRO, JANETT) (Entered: 05/26/2005) |
| 05/26/2005 | 62 | NOTICE by JOHN SUENDER *for Admission Pro Hac Vice of James A. Murphy and Cameron S. Matheson, Certification of James A. Murphy, Certification of Cameron S. Matheson, Proposed Order, Certificate of Service* (Attachments: # 1 # 2 # 3 # 4)(PATEIRO, JANETT) (Entered: 05/26/2005) |
| 05/27/2005 | | CLERKS OFFICE QUALITY CONTROL MESSAGE - The (MOTION TO APPEAR PRO HAC VICE) filed by (J. PATEIRO) on (5/26/05) was submitted incorrectly as a (NOTICE). PLEASE RESUBMIT THE (MOTION) BY (06/02/05) USING (MOTION TO APPEAR). This submission will remain on the docket unless otherwise ordered by the court. This message is for informational purposes only. (db, ) (Entered: 05/27/2005) |
| 05/27/2005 | 63 | MOTION for Leave to Appear Pro Hac Vice *of James A. Murphy and Cameron S. Matheson* by JOHN SUENDER. (Attachments: # 1 Certification # 2 Certification # 3 Text of Proposed Order # 4)(PATEIRO, JANETT) (Entered: 05/27/2005) |
| 05/31/2005 | | Setting Deadlines as to 63 MOTION for Leave to Appear Pro Hac Vice of James A. Murphy and Cameron S. Matheson. Motion Hearing set for 7/1/2005 before Magistrate Judge Ann Marie Donio. PLEASE BE ADVISED THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (db, ) (Entered: 05/31/2005) |
| 06/01/2005 | 64 | MOTION for Leave to Appear Pro Hac Vice by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC.. (Attachments: # 1 # 2 # 3 # 4 # 5 # 6 # 7 # 8 # 9 # 10 # 11 # 12 # 13)(KAPLAN, ROGER) (Entered: 06/01/2005) |
| 06/01/2005 | 65 | NOTICE of Appearance by CHRISTOPHER M. DIMURO on behalf of BRIAN KEARNS (Attachments: # 1 Certificate of Service)(DIMURO, CHRISTOPHER) (Entered: 06/01/2005) |
| 06/01/2005 | 66 | MOTION for Leave to Appear Pro Hac Vice by BRIAN KEARNS. (Attachments: # 1 Certificate of Service)(DIMURO, CHRISTOPHER) (Entered: 06/01/2005) |
| 06/02/2005 | 67 | BRIEF *LETTER BRIEF IN SUPPORT OF PLAINTIFFS' APPLICATION FOR A PROTECTIVE ORDER AGAINST MEDQUIST* filed by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC.. (KAPLAN, ROGER) (Entered: 06/02/2005) |
| 06/02/2005 | | Setting Deadlines as to 64 MOTION for Leave to Appear Pro Hac Vice, 66 |

| | | |
|---|---|---|
| | | MOTION for Leave to Appear Pro Hac Vice. Motion Hearing set for 7/1/2005 before Magistrate Judge Ann Marie Donio. PLEASE BE ADVISED THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (db, ) (Entered: 06/02/2005) |
| 06/03/2005 | 68 | NOTICE of Appearance by MARC J. GROSS on behalf of MEDQUIST INC. (GROSS, MARC) (Entered: 06/03/2005) |
| 06/03/2005 | | Judge Joel B. Rosen added. Judge Ann Marie Donio no longer assigned to case. (ds ) (Entered: 06/06/2005) |
| 06/06/2005 | | MOTIONS 64 MOTION for Leave to Appear Pro Hac Vice, 66 MOTION for Leave to Appear Pro Hac Vice, 63 MOTION for Leave to Appear Pro Hac Vice *of James A. Murphy and Cameron S. Matheson* REFERRED to Judge Magistrate Judge Joel B. Rosen. (ds, ) (Entered: 06/06/2005) |
| 06/06/2005 | 69 | BRIEF *Correction of Letter Brief* filed by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC.. (KAPLAN, ROGER) (Entered: 06/06/2005) |
| 06/08/2005 | 70 | NOTICE of Appearance by MARALEEN DANAI SHIELDS on behalf of JOHN SUENDER (Attachments: # 1 Certificate of Service)(SHIELDS, MARALEEN) (Entered: 06/08/2005) |
| 06/14/2005 | 71 | MOTION for Leave to Appear Pro Hac Vice by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC.. (Attachments: # 1 # 2 # 3 # 4 # 5) (KAPLAN, ROGER) (Entered: 06/14/2005) |
| 06/20/2005 | | Setting Deadlines as to 71 MOTION for Leave to Appear Pro Hac Vice. Motion Hearing set for 7/15/2005 before Magistrate Judge Joel B. Rosen. PLEASE BE ADVISED THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (db, ) (Entered: 06/20/2005) |
| 06/20/2005 | 72 | BRIEF *in Opposition to Letter Motion for a Protective Order* filed by MEDQUIST INC., MEDQUIST TRANSCRIPTIONS, LTD.. (GROSS, MARC) (Entered: 06/20/2005) |
| 06/20/2005 | 73 | AFFIDAVIT of Piero A. Tozzi in opposition to Letter Motion for a Protective Order by MEDQUIST INC., MEDQUIST TRANSCRIPTIONS, LTD.. (Attachments: # 1 Exhibit A"# 2 Exhibit "B"# 3 Exhibit "C"# 4 Exhibit "D"# 5 Exhibit "E"# 6 Exhibit "G"# 7 Exhibit "H"# 8 Exhibit "I"# 9 Exhibit "F"# 10 Errata "J"# 11 Exhibit "K"# 12 Exhibit "L"# 13 Exhibit "M"# 14 Exhibit "N"# 15 Exhibit "O"# 16 Exhibit "P"# 17 Exhibit "Q"# 18 Exhibit "R")(GROSS, MARC) (Entered: 06/20/2005) |
| 06/20/2005 | | Minute Entry for proceedings held before Judge Joel B. Rosen : Discovery Hearing held on 6/20/2005. (bb, ) (Entered: 06/21/2005) |

| 06/24/2005 | 76 | ORDER granting 66 Motion for Edward J. Shapiro, Charles J. Butler and Joshus K. Chandler Leave to Appear Pro Hac Vice . Signed by Judge Joel B. Rosen on 06/24/05. (db, ) (Entered: 06/27/2005) |
|---|---|---|
| 06/24/2005 | 77 | ORDER granting 64 Motion for Kathryn L. Clune, Mark L. Hogge, Katie A. Jefcoat Leave to Appear Pro Hac Vice . Signed by Judge Joel B. Rosen on 06/24/05. (db, ) (Entered: 06/27/2005) |
| 06/24/2005 | 78 | ORDER granting 63 Motion for James A. Murphy and Cameron E. Matheson Leave to Appear Pro Hac Vice . Signed by Judge Joel B. Rosen on 06/24/05. (db, ) (Entered: 06/27/2005) |
| 06/27/2005 | 74 | Substitution of Attorney - Attorney HENRY F. REICHNER and HENRY F. REICHNER for JOHN SUENDER added. Attorney JANETT D. PATEIRO terminated.. (REICHNER, HENRY) (Entered: 06/27/2005) |
| 06/27/2005 | 75 | CERTIFICATE OF SERVICE by JOHN SUENDER re 74 Substitution of Attorney (REICHNER, HENRY) (Entered: 06/27/2005) |
| 06/28/2005 | 79 | Letter from Medquist requesting telephone conference regarding briefing schedule. (Attachments: # 1 Affidavit of Gail J. Standish)(GROSS, MARC) (Entered: 06/28/2005) |
| 06/30/2005 | 80 | Letter from Roger B. Kaplan of 6/30/05 re Tel Conf w/ Mag Rosen of 6/30/2005. (KAPLAN, ROGER) (Entered: 06/30/2005) |
| 06/30/2005 | 81 | Certification of Mark L. Hogge re June 30, 2005 Tel. Conf w/ Mag Rosen on behalf of RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC. Re 79 Letter, 80 Letter. (KAPLAN, ROGER) (Entered: 06/30/2005) |
| 06/30/2005 | 82 | Letter from Roger B. Kaplan re Tel. Conf. for June 30, 2005 re 79 Letter, 80 Letter, 81 Certification,. (KAPLAN, ROGER) (Entered: 06/30/2005) |
| 06/30/2005 | | Minute Entry for proceedings held before Judge Joel B. Rosen : Discovery Hearing held on 6/30/2005. (bb, ) (Entered: 07/01/2005) |
| 07/05/2005 | | Pro Hac Vice fee: $ 150, receipt number 303092 received from Mark Hogg Esq. (db, ) (Entered: 07/06/2005) |
| 07/05/2005 | | Pro Hac Vice fee: $ 150, receipt number 303093 received from Kathryn L. Clune Esq. (db, ) (Entered: 07/06/2005) |
| 07/05/2005 | | Pro Hac Vice fee: $ 150, receipt number 303094 received from Katie A. Jefcoat, Esq. (db, ) (Entered: 07/06/2005) |
| 07/05/2005 | | Pro Hac Vice fee: $ 150, receipt number 303095 received from Eve Triffo Esq. (db, ) (Entered: 07/06/2005) |
| 07/22/2005 | | Pro Hac Vice fee for Edward J. Shapiro: $ 150, receipt number 100 303228. (ar1, ) (Entered: 07/28/2005) |
| 07/22/2005 | | Pro Hac Vice fee for Charles J. Butler: $ 150, receipt number 100 303229. |

| | | |
|---|---|---|
| | | (ar1, ) (Entered: 07/28/2005) |
| 07/22/2005 | | Pro Hac Vice fee for Joshua K. Chandler: $ 150, receipt number 100 303230. (ar1, ) (Entered: 07/28/2005) |
| 08/01/2005 | 83 | ANSWER to Complaint with Jury Demand by JOHN SUENDER. (Attachments: # 1 Certificate of Service)(SHIELDS, MARALEEN) (Entered: 08/01/2005) |
| 08/01/2005 | 84 | ANSWER to Complaint with Jury Demand by BRIAN KEARNS. (Attachments: # 1 Certificate of Service)(DIMURO, CHRISTOPHER) (Entered: 08/01/2005) |
| 08/01/2005 | 85 | ANSWER to Complaint with Jury Demand by MEDQUIST INC., RONALD SCARPONE, MICHAEL CLARK, MEDQUIST TRANSCRIPTIONS, LTD.. (GROSS, MARC) (Entered: 08/01/2005) |
| 08/08/2005 | 86 | ORDER Initial Conference set for 10/5/2005 at 10:00 AM before Magistrate Judge Joel B. Rosen. Signed by Judge Joel B. Rosen on 08/08/05. (db, ) (Entered: 08/08/2005) |
| 08/10/2005 | 87 | ORDER that defendants shall answer the Second Amended Complaint on or before August 1, 2005. . Signed by Judge Joel B. Rosen on 08/10/05. (db, ) (Entered: 08/11/2005) |
| 08/17/2005 | 88 | MOTION to Stay by MEDQUIST INC.. (Attachments: # 1 Certificate of Service # 2 Brief # 3 Text of Proposed Order)(GROSS, MARC) (Entered: 08/17/2005) |
| 08/18/2005 | | Setting Deadlines as to 88 MOTION to Stay. Motion Hearing set for 9/16/2005 before Magistrate Judge Joel B. Rosen. PLEASE BE ADVISED THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (db, ) (Entered: 08/18/2005) |
| 08/31/2005 | 89 | MOTION to Dismiss by BRIAN KEARNS. (Attachments: # 1 Memorandum of Law# 2 Proposed Order# 3 Certificate of Service)(DIMURO, CHRISTOPHER) (Entered: 08/31/2005) |
| 08/31/2005 | 90 | MOTION to Dismiss by JOHN SUENDER. Responses due by 10/7/2005 (Attachments: # 1 Brief # 2 Text of Proposed Order # 3 Certificate of Service) (SHIELDS, MARALEEN) (Entered: 08/31/2005) |
| 08/31/2005 | 91 | Letter from defendants Michael Clark and Ronald Scarpone joining in the motions to dismiss of co-defendants John Suender and Brian Kearns re 89 MOTION to Dismiss, 90 MOTION to Dismiss. (GROSS, MARC) (Entered: 08/31/2005) |
| 08/31/2005 | 92 | MOTION to Dismiss *in Favor of Arbitration* by MEDQUIST INC., RONALD SCARPONE, MICHAEL CLARK, MEDQUIST TRANSCRIPTIONS, LTD.. Responses due by 10/31/2005 (Attachments: # 1 Certificate of Service # 2 Brief # 3 Text of Proposed Order)(GROSS, MARC) (Entered: 08/31/2005) |
| 08/31/2005 | 93 | MOTION to Dismiss *for Failure to State a Claim* by MEDQUIST INC., RONALD SCARPONE, MICHAEL CLARK, MEDQUIST |

| | | |
|---|---|---|
| | | TRANSCRIPTIONS, LTD.. Responses due by 10/31/2005 (Attachments: # 1 Certificate of Service # 2 Brief # 3 Text of Proposed Order)(GROSS, MARC) (Entered: 08/31/2005) |
| 09/01/2005 | | Setting Deadlines as to 89 MOTION to Dismiss, 90 MOTION to Dismiss, 92 MOTION to Dismiss *in Favor of Arbitration*, 93 MOTION to Dismiss *for Failure to State a Claim*. Motion Hearing set for 10/7/2005 before Judge Jerome B. Simandle. PLEASE BE ADVISED THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT.(db, ) (Entered: 09/01/2005) |
| 09/02/2005 | 94 | BRIEF in Opposition re 88 MOTION to Stay *Discovery* filed by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC.. (Attachments: # 1 Certification / Declaration of Mark L. Hogge, Esq. in Support of Plaintiffs' Opposition to Defendant MedQuist, Inc.'s Motion to Vacate or Continue Rule 16 Conference and To Stay Discovery# 2 Exhibit A to Hogge's Declaration# 3 Exhibit B to Hogge's Declaration# 4 Exhibit C to Hogge's Declaration# 5 Exhibit D to Hogge's Declaration# 6 Exhibit E to Hogge's Declaration# 7 Exhibit F to Hogge's Declaration# 8 Exhibit G to Hogge's Declaration# 9 Exhibit H to Hogge's Declaration# 10 Exhibit I to Hogge's Declaration# 11 Exhibit J to Hogge's Declaration# 12 Exhibit K to Hogge's Declaration# 13 Certificate of Service # 14 Text of Proposed Order)(KAPLAN, ROGER) (Entered: 09/02/2005) |
| 09/07/2005 | 95 | DECLARATION re 94 Brief in Opposition to Motion,,,, *(Declaration of Mark L. Hogge, Esq. in Support of Plaintiffs' Opposition to Defendant MedQuist, Inc.'s Motion to Vacate or Continue Rule 16 Conference and To Stay Discovery (Continuation of Supporting Exhibits (L-Q)* by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC.. (Attachments: # 1 Exhibit L to Hogge's Declaration (Continuation of Exhibits)# 2 Exhibit M to Hogge's Declaration# 3 Exhibit N to Hogge's Declaration# 4 Exhibit O to Hogge's Declaration# 5 Exhibit P to Hogge's Declaration# 6 Exhibit Q to Hogge's Declaration) (KAPLAN, ROGER) (Entered: 09/07/2005) |
| 09/13/2005 | 96 | REPLY to Response to Motion re 88 MOTION to Stay filed by MEDQUIST INC., RONALD SCARPONE, MICHAEL CLARK, MEDQUIST TRANSCRIPTIONS, LTD.. (Attachments: # 1 Certificate of Service) (SALVAGNO, OLIVIER) (Entered: 09/13/2005) |
| 09/15/2005 | 97 | NOTICE of Appearance by OLIVIER SALVAGNO on behalf of MEDQUIST INC., RONALD SCARPONE, MICHAEL CLARK, MEDQUIST TRANSCRIPTIONS, LTD. (Attachments: # 1 Certificate of Service) (SALVAGNO, OLIVIER) (Entered: 09/15/2005) |
| 09/23/2005 | 98 | MOTION for Leave to Appear Pro Hac Vice by MEDQUIST INC.. (Attachments: # 1 Affidavit Of Marc J. Gross, Esq.# 2 Text of Proposed |

| | | |
|---|---|---|
| | | Order)(GROSS, MARC) (Entered: 09/23/2005) |
| 09/23/2005 | | Setting Deadlines as to 98 MOTION for Leave to Appear Pro Hac Vice. Motion Hearing set for 10/21/2005 before Magistrate Judge Joel B. Rosen. PLEASE BE ADVISED THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (db, ) (Entered: 09/26/2005) |
| 09/29/2005 | 99 | ORDER granting 71 Motion for Frank E. Merideth Leave to Appear Pro Hac Vice; a 150.00 fee made payable to "Clerk U.S. District Court" is due from pro hac attorney . Signed by Judge Joel B. Rosen on 09/29/05. (db, ) (Entered: 09/30/2005) |
| 10/13/2005 | 100 | ORDER granting 98 Motion for Neal R. Marder, David M. Hickey, Gail J. Standish, Peter E. Perkowski and Stephen r. Smerek,Leave to Appear Pro Hac Vice: a fee of $150.00 made payable to "Clerk U.S. District Court" is due from each attorney admitted pro hac. Signed by Judge Joel B. Rosen on 10/13/05. (db, ) (Entered: 10/13/2005) |
| 10/14/2005 | 101 | ORDER granting in part 88 Motion to Stay Discovery. Signed by Judge Joel B. Rosen on 10/14/05. (db, ) (Entered: 10/17/2005) |
| 10/17/2005 | | Pro Hac Vice fee: $ 150, receipt number 303665 received from Pro hac attorney Frank E. Mere Dith (db, ) (Entered: 10/28/2005) |
| 10/24/2005 | | Pro Hac Vice fee: $ 750.00, receipt number 303722 received from Pro Hac attorneys Neal R. Marder, David M. Hickey, Gail J. Standish, Peter E. Perkowski, Stephen R. Smerek (db, ) (Entered: 10/28/2005) |
| 10/27/2005 | 102 | MOTION for Leave to Appear Pro Hac Vice by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC.. (KAPLAN, ROGER) (Entered: 10/27/2005) |
| 10/27/2005 | 103 | Letter from Greenberg Traurig LLP re 102 MOTION for Leave to Appear Pro Hac Vice. (Attachments: # 1 # 2 # 3 # 4)(KAPLAN, ROGER) (Entered: 10/27/2005) |
| 10/27/2005 | | Setting Deadlines as to 102 MOTION for Leave to Appear Pro Hac Vice. Motion Hearing set for 12/2/2005 before Magistrate Judge Joel B. Rosen. PLEASE BE ADVISED THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (db, ) (Entered: 10/31/2005) |
| 10/31/2005 | 104 | BRIEF in Opposition re 93 MOTION to Dismiss *for Failure to State a Claim* filed by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC.. (KAPLAN, ROGER) (Entered: 10/31/2005) |
| 10/31/2005 | 105 | BRIEF in Opposition re 89 MOTION to Dismiss filed by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH |

| | | |
|---|---|---|
| | | BROWARD HOSPITAL DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC.. (KAPLAN, ROGER) (Entered: 10/31/2005) |
| 10/31/2005 | 106 | BRIEF in Opposition re 90 MOTION to Dismiss *(Suender)* filed by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC.. (Attachments: # 1 Exhibit A)(KAPLAN, ROGER) (Entered: 10/31/2005) |
| 10/31/2005 | 107 | Letter from Mark Hogge re 91 Letter. (KAPLAN, ROGER) (Entered: 10/31/2005) |
| 10/31/2005 | 108 | BRIEF in Opposition re 92 MOTION to Dismiss *in Favor of Arbitration* filed by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC.. (KAPLAN, ROGER) (Entered: 10/31/2005) |
| 10/31/2005 | 109 | AFFIDAVIT in Opposition re 92 MOTION to Dismiss *in Favor of Arbitration* filed by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC.. (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Exhibit 4# 5 Exhibit 5# 6 Exhibit 6# 7 Exhibit 7# 8 Exhibit 8# 9 Exhibit 9# 10 Exhibit 10# 11 Exhibit 11# 12 Exhibit 12# 13 Exhibit 13)(KAPLAN, ROGER) (Entered: 10/31/2005) |
| 10/31/2005 | 110 | CERTIFICATE OF SERVICE by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC. *of Plaintiffs' Opposition Briefs to Defendants' Motion to Dismiss Second Amended Complaint and Defendant MedQuist's Motion to Dismiss in Favor of Arbitration* (KAPLAN, ROGER) (Entered: 10/31/2005) |
| 11/08/2005 | 111 | MOTION for Sanctions *Pursuant to Rule 11* by MEDQUIST INC., MEDQUIST TRANSCRIPTIONS, LTD.. (Attachments: # 1 Certificate of Service # 2 Affidavit Standish# 3 Affidavit Nelson# 4 Brief # 5 Text of Proposed Order)(GROSS, MARC) (Entered: 11/08/2005) |
| 11/08/2005 | | Setting Deadlines as to 111 MOTION for Sanctions *Pursuant to Rule 11*. Motion Hearing set for 12/2/2005 before Magistrate Judge Joel B. Rosen. PLEASE BE ADVISED THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (db, ) (Entered: 11/10/2005) |
| 11/10/2005 | | CLERKS OFFICE QUALITY CONTROL MESSAGE - The (AFFIDAVIT/DECLARATION OF MAUREEN NELSON, ATTACHED TO THE MOTION FOR SANCTIONS 111 ) submitted by (M. GROSS) on |

| | | |
|---|---|---|
| | | (11/08/05) did not contain a signature. PLEASE RESUBMIT THE DOCUMENT WITH THE PROPER ELECTRONIC (SCANNED) SIGNATURE USING AFFIDAVIT IN THE OTHER EVENTS CATEGORY BY (11/15/05). This submission will remain on the docket unless otherwise ordered by the court. This message is for informational purposes only. (db, ) (Entered: 11/10/2005) |
| 11/10/2005 | | Motions No Longer Referred: 111 MOTION for Sanctions *Pursuant to Rule 11* (db, ) (Entered: 11/10/2005) |
| 11/10/2005 | | Resetting Deadlines as to 111 MOTION for Sanctions *Pursuant to Rule 11.* Motion Hearing set for 12/2/2005 before Judge Jerome B. Simandle. PLEASE BE ADVISED THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (db, ) (Entered: 11/10/2005) |
| 11/11/2005 | 112 | AFFIDAVIT re 111 MOTION for Sanctions *Pursuant to Rule 11* by MEDQUIST INC., MEDQUIST TRANSCRIPTIONS, LTD.. (GROSS, MARC) (Entered: 11/11/2005) |
| 11/15/2005 | 113 | Letter re Set Motion and R&R Deadlines/Hearings,. (KAPLAN, ROGER) (Entered: 11/15/2005) |
| 11/30/2005 | 114 | RESPONSE in Support re 90 MOTION to Dismiss *Second Amended Complaint* filed by JOHN SUENDER. (Attachments: # 1 Certificate of Service)(SHIELDS, MARALEEN) (Entered: 11/30/2005) |
| 11/30/2005 | 115 | MOTION to Strike 106 Brief in Opposition to Motion, *Exhibit A* by JOHN SUENDER. Responses due by 12/14/2005 (Attachments: # 1 Certificate of Service)(SHIELDS, MARALEEN) (Entered: 11/30/2005) |
| 11/30/2005 | | Setting Deadlines as to 115 MOTION to Strike 106 Brief in Opposition to Motion, *Exhibit A*. Motion Returnable date set for 1/6/2005 09:30 AM before Judge Jerome B. Simandle. PLEASE BE ADVISED THIS MOTION SHALL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (MB, ) (Entered: 11/30/2005) |
| 11/30/2005 | | Motions No Longer Referred: 115 MOTION to Strike 106 Brief in Opposition to Motion, *Exhibit A* (MB, ) (Entered: 11/30/2005) |
| 11/30/2005 | 116 | REPLY to Response to Motion re 89 MOTION to Dismiss filed by BRIAN KEARNS. (Attachments: # 1 Certificate of Service)(DIMURO, CHRISTOPHER) (Entered: 11/30/2005) |
| 11/30/2005 | 117 | BRIEF in Support re 93 MOTION to Dismiss *for Failure to State a Claim* filed by MEDQUIST INC., RONALD SCARPONE, MICHAEL CLARK, MEDQUIST TRANSCRIPTIONS, LTD.. (GROSS, MARC) (Entered: 11/30/2005) |
| 11/30/2005 | 118 | BRIEF in Support re 92 MOTION to Dismiss *in Favor of Arbitration* filed by MEDQUIST INC., RONALD SCARPONE, MICHAEL CLARK, MEDQUIST TRANSCRIPTIONS, LTD.. (Attachments: # 1 Declaration) (GROSS, MARC) (Entered: 11/30/2005) |
| | | |

| | | |
|---|---|---|
| 12/01/2005 | | Resetting Deadlines as to 115 MOTION to Strike 106 Brief in Opposition to Motion, *Exhibit A*. Motion Returnable date set for 1/6/2006 before Judge Jerome B. Simandle. PLEASE BE ADVISED THIS MOTION SHALL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (MB, ) (Entered: 12/01/2005) |
| 12/02/2005 | 119 | BRIEF in Opposition re 111 MOTION for Sanctions *Pursuant to Rule 11* filed by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC.. (KAPLAN, ROGER) (Entered: 12/02/2005) |
| 12/02/2005 | 120 | DECLARATION of Mark L. Hogge re 119 Brief in Opposition to Motion, by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC.. (Attachments: # 1 Exhibit 1# 2 Errata 2# 3 Exhibit 3# 4 Exhibit 4# 5 Exhibit 5# 6 Exhibit 6# 7 Exhibit 7# 8 Exhibit 8) (KAPLAN, ROGER) (Entered: 12/02/2005) |
| 12/02/2005 | 121 | CERTIFICATE OF SERVICE by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC. re 119 Brief in Opposition to Motion, (KAPLAN, ROGER) (Entered: 12/02/2005) |
| 12/12/2005 | 122 | AMENDED COMPLAINT , *Amendment To Second Amended Complaint* against all defendants all defendants., filed by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC..(KAPLAN, ROGER) (Entered: 12/12/2005) |
| 12/12/2005 | 123 | AMENDED COMPLAINT *Redlined Version of Amendment To Second Amended Complaint (Part 1)* against all defendants all defendants., filed by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC..(KAPLAN, ROGER) (Entered: 12/12/2005) |
| 12/12/2005 | 124 | AMENDED COMPLAINT *Redlined Version of Amendment To Second Amended Complaint (Part2)* against all defendants all defendants., filed by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC..(KAPLAN, ROGER) (Entered: 12/12/2005) |
| 12/13/2005 | 126 | Minute Entry for proceedings held before Judge Jerome B. Simandle : |

| | | |
|---|---|---|
| | | Telephone Conference Call held on 12/13/2005. (Court Reporter Lisa Marcus.) (db, ) (Entered: 12/19/2005) |
| 12/14/2005 | 125 | ORDER, That in light of Plaintiffs' filing a Third Amended Complaint, the presently pending motions by defendants {Docket Item Nos. 89 , 90 , 92 , 93 and 115 upon which oral argument was scheduled for December 14, 2005, are dismissed without prejudice to refiling as provided etc.. Signed by Judge Jerome B. Simandle on 12/14/05. (db, ) (Entered: 12/16/2005) |
| 12/16/2005 | | CLERKS OFFICE QUALITY CONTROL MESSAGE - The (AMENDED DOCUMENT, # 122 ) filed by (R. KAPLAN) on (12/12/05) was submitted incorrectly as a (AMENDED COMPLAINT). FOR FUTURE REFERENCE: Please use (AMENDED DOCUMENT) in the (OTHER EVENTS CATEGORY) and documents 123 124 as the attachments to the Amended Document. This submission will remain on the docket unless otherwise ordered by the court. This message is for informational purposes only. (db, ) (Entered: 12/16/2005) |
| 12/19/2005 | 127 | AMENDED ORDER re 125 Order on Motion to Dismiss,,,, Order on Motion to Strike,,,,, . Signed by Judge Jerome B. Simandle on 12/19/05. (db, ) (Entered: 12/20/2005) |
| 12/20/2005 | 128 | Proposed Pretrial Order *to Extend the Schedule Set Forth in the Court Order of December 14, 2005* by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC.. (KAPLAN, ROGER) (Entered: 12/20/2005) |
| 12/21/2005 | | CLERKS OFFICE QUALITY CONTROL MESSAGE - The (Proposed Pretrial Order to extend the schedule set forth in the Court's order of December 14, 2005) submitted by (R. KAPLAN) on (12/20/05) must be executed by a Judicial Officer before filing. FOR FURTURE REFERENCE: Please forward to the appropriate Judicial Officer in accordance with his/her preferred practice. This submission will remain on the docket unless otherwise ordered by the court. This message is for informational purposes only. (db, ) (Entered: 12/21/2005) |
| 12/21/2005 | 129 | ORDER extending the schedule set forth in the 125 Order of December 14, 2005 . Signed by Judge Jerome B. Simandle on 12/21/05. (db, ) (Entered: 12/23/2005) |
| 12/29/2005 | 130 | ORDER extending the schedule set forth in the 125 Order of December 14, 2005 . Signed by Judge Jerome B. Simandle on 12/29/05. (db, ) (Entered: 01/03/2006) |
| 01/04/2006 | 131 | AMENDED COMPLAINT *Plaintiffs' Third Amended Complaint* against all defendants all defendants., filed by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC.. (Attachments: # 1 Exhibit A# 2 Certificate of Service)(KAPLAN, ROGER) (Entered: 01/04/2006) |

| | | |
|---|---|---|
| 01/12/2006 | 132 | TRANSCRIPT of Proceedings held on 12/13/05 before Judge Simandle. Court Reporter: Lisa Marcus. PLEASE NOTE: The complete transcript of these proceedings is maintained in paper format on file in the Clerks Office. To request copies of this transcript, contact the Official Court Reporter or Transcription Service who prepared the transcript. (db, ) (Entered: 01/13/2006) |
| 01/20/2006 | 133 | MOTION to Dismiss *Third Amended Complaint, together with Brief in support thereof, Table of Contents, Order and Certificate of Service* by JOHN SUENDER. Responses due by 2/8/2006 (Attachments: # 1 # 2)(REICHNER, HENRY) (Entered: 01/20/2006) |
| 01/20/2006 | 134 | MOTION to Dismiss *Third Amended Complaint* by BRIAN KEARNS. Responses due by 2/8/2006 (Attachments: # 1 Brief in Support of Motion# 2 Text of Proposed Order # 3 Certificate of Service)(DIMURO, CHRISTOPHER) (Entered: 01/20/2006) |
| 01/20/2006 | 135 | MOTION to Dismiss *Plaintiffs' Third Amended Complaint* by MEDQUIST INC., RONALD SCARPONE, MICHAEL CLARK, MEDQUIST TRANSCRIPTIONS, LTD.. (Attachments: # 1 Brief # 2 Text of Proposed Order # 3 Certificate of Service)(SALVAGNO, OLIVIER) (Entered: 01/20/2006) |
| 01/20/2006 | 136 | MOTION to Dismiss *the First Claim for Fraud in the Inducement of the Arbitration Clause for Failure to State a Claim, to Compel Arbitration of All Claims by Plaintiffs Childrens Hospital, Northbay, and Partners Hcs, and to Stay The Case in its Entirety Pending Arbitration* by MEDQUIST INC., RONALD SCARPONE, MICHAEL CLARK, MEDQUIST TRANSCRIPTIONS, LTD.. (Attachments: # 1 Brief # 2 Nelson Declaration# 3 Exhibit A to Nelson Declaration (Part 1)# 4 Exhibit A to Nelson Declaration (Part 2)# 5 Exhibit B to Nelson Declaration (Part 1)# 6 Exhibit B to Nelson Declaration (Part 2)# 7 Exhibit C to Nelson Declaration# 8 Exhibit D to Nelson Declaration (Part 1)# 9 Exhibit D to Nelson Declaration (Part 2)# 10 Exhibit D to Nelson Declaration (Part 3)# 11 Exhibit D to Nelson Declaration (Part 4)# 12 Text of Proposed Order # 13 Certificate of Service) (SALVAGNO, OLIVIER) (Entered: 01/20/2006) |
| 01/20/2006 | | Setting Deadlines as to 133 MOTION to Dismiss *Third Amended Complaint, together with Brief in support thereof, Table of Contents, Order and Certificate of Service*, 134 MOTION to Dismiss *Third Amended Complaint*. Motion Hearing set for 2/17/2006 before Judge Jerome B. Simandle. PLEASE BE ADVISED THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT.(db, ) (Entered: 01/24/2006) |
| 01/20/2006 | | Setting Deadlines as to 135 MOTION to Dismiss *Plaintiffs' Third Amended Complaint*, 136 MOTION to Dismiss *the First Claim for Fraud in the Inducement of the Arbitration Clause for Failure to State a Claim, to Compel Arbitration of All Claims by Plaintiffs Childrens Hospital, Northbay, and Partners Hcs, and to Stay The Case in its Enti. Motion Hearing set for 2/17/2006 before Judge Jerome B. Simandle. PLEASE BE ADVISED THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE* |

| | | |
|---|---|---|
| | | *NOTIFIED BY THE COURT.* (db, ) (Entered: 01/30/2006) |
| 01/23/2006 | 137 | NOTICE of Appearance by LAUREN GRAHAM-DELEHEY on behalf of JOHN SUENDER (db, ) (Entered: 01/27/2006) |
| 01/31/2006 | 138 | REPLY to Response to Motion re 111 MOTION for Sanctions *Pursuant to Rule 11 Reply Brief in Further support of MedQuist's Motion for Rule 11 Sanctions* filed by MEDQUIST INC.. (Attachments: # 1 Certificate of Service)(GROSS, MARC) (Entered: 01/31/2006) |
| 02/08/2006 | 139 | BRIEF in Opposition re 134 MOTION to Dismiss *Third Amended Complaint* filed by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC.. (KAPLAN, ROGER) (Entered: 02/08/2006) |
| 02/08/2006 | 140 | BRIEF in Opposition re 133 MOTION to Dismiss *Third Amended Complaint, together with Brief in support thereof, Table of Contents, Order and Certificate of Service* filed by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC.. (KAPLAN, ROGER) (Entered: 02/08/2006) |
| 02/08/2006 | 141 | BRIEF in Opposition re 135 MOTION to Dismiss *Plaintiffs' Third Amended Complaint* filed by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC.. (KAPLAN, ROGER) (Entered: 02/08/2006) |
| 02/08/2006 | 142 | DECLARATION of Kathryn L. Clune by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC.. (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Errata 4# 5 Exhibit 5# 6 Exhibit 6# 7 Exhibit 7# 8 Exhibit 8# 9 Exhibit 9# 10 Exhibit 10# 11 Exhibit 11# 12 Exhibit 12# 13 Exhibit 13# 14 Exhibit 14# 15 Exhibit 15# 16 Exhibit 16# 17 Exhibit 17# 18 Exhibit 18# 19 Exhibit 19# 20 Exhibit 20)(KAPLAN, ROGER) (Entered: 02/08/2006) |
| 02/08/2006 | 143 | BRIEF in Opposition re 136 MOTION to Dismiss *the First Claim for Fraud in the Inducement of the Arbitration Clause for Failure to State a Claim, to Compel Arbitration of All Claims by Plaintiffs Childrens Hospital, Northbay, and Partners Hcs, and to Stay The Case in its Enti* filed by *RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC.. (KAPLAN, ROGER) (Entered: 02/08/2006)* |
| 02/08/2006 | 144 | CERTIFICATE OF SERVICE by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL |

| | | |
|---|---|---|
| | | DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC. re 142 Declaration,,, 140 Brief in Opposition to Motion,, 143 Brief in Opposition to Motion,, 141 Brief in Opposition to Motion,, 139 Brief in Opposition to Motion, (KAPLAN, ROGER) (Entered: 02/08/2006) |
| 02/22/2006 | 145 | BRIEF in Support re 133 MOTION to Dismiss *Third Amended Complaint, together with Brief in support thereof, Table of Contents, Order and Certificate of Service with accompanying Certificate of Service* filed by JOHN SUENDER. (REICHNER, HENRY) (Entered: 02/22/2006) |
| 02/22/2006 | 146 | REPLY to Response to Motion re 134 MOTION to Dismiss *Third Amended Complaint* filed by BRIAN KEARNS. (Attachments: # 1 Certificate of Service)(DIMURO, CHRISTOPHER) (Entered: 02/22/2006) |
| 02/22/2006 | 147 | BRIEF in Support re 135 MOTION to Dismiss *Plaintiffs' Third Amended Complaint -- Reply Brief in Support of Defendants' MedQuist Inc's., MedQuist Transcriptions, Ltd's., Michael Clark's and Ronald Scarpone's Motion to Dismiss Third Amended Complaint* filed by MEDQUIST INC.. (GROSS, MARC) (Entered: 02/22/2006) |
| 02/22/2006 | 148 | REPLY to Response to Motion re 136 MOTION to Dismiss *the First Claim for Fraud in the Inducement of the Arbitration Clause for Failure to State a Claim, to Compel Arbitration of All Claims by Plaintiffs Childrens Hospital, Northbay, and Partners Hcs, and to Stay The Case in its Enti -- Reply Brief in Support of Motion to Dismiss the First Claim for Fraud in the Inducement of the Arbitration Clause for Failure to State a Claim, To Compel Arbitration of all claims by Plainitffs Childrens Hospital, Northbay and Partners HSC, and to Stay the Case in Its Entirety Pending Arbitration -- filed by MEDQUIST INC.. (GROSS, MARC) (Entered: 02/22/2006)* |
| 02/23/2006 | | CLERKS OFFICE QUALITY CONTROL MESSAGE - The (CERTIFICATE OF SERVICE SECTION OF THE BRIEF submitted by (H. Reichner) on (2/22/06) did not contain a proper signature. Only Registered Users are permitted to sign electronically filed documents without a handwritten signature. PLEASE RESUBMIT THE DOCUMENT WITH A PROPER ELECTRONIC OR SCANNED SIGNATURE BY (2/24/06). (sa, ) (Entered: 02/23/2006) |
| 02/23/2006 | | CLERK'S OFFICE QUALITY CONTROL MESSAGE: The brief submitted by M. Gross document #147 on 2/22/06 did not contain a certificate of service. PLEASE SUBMIT A CERTIFICATE OF SERVICE WITH A PROPER SIGNATURE BY 2/24/06. (sa, ) (Entered: 02/23/2006) |
| 02/23/2006 | | CLERKS OFFICE QUALITY CONTROL MESSAGE - The (reply, document #148) submitted by (M. Gross) on (2/22/06) is unreadable. PLEASE RESUBMIT THE DOCUMENT BY 2/24/06), (sa, ) (Entered: 02/23/2006) |
| 02/23/2006 | 149 | REPLY to Response to Motion re 136 MOTION to Dismiss *the First Claim for Fraud in the Inducement of the Arbitration Clause for Failure to State a Claim, to Compel Arbitration of All Claims by Plaintiffs Childrens Hospital, Northbay, and Partners Hcs, and to Stay The Case in its Enti -- Resubmission of Reply Brief in Support of Motion to Dismiss the First Claim for Fraud in* |

| | | |
|---|---|---|
| | | *the Inducement of the Arbitration Clause for Failure to State a Claim, to Compel Arbitration of all Claims by Plaintiffs Childrens Hospital, Northbay and Partners HCS and to Stay the Case in its Entirety Pending Arbitration -- filed by MEDQUIST INC.. (GROSS, MARC) (Entered: 02/23/2006)* |
| 02/23/2006 | 150 | CERTIFICATE OF SERVICE by MEDQUIST INC., RONALD SCARPONE, MICHAEL CLARK, MEDQUIST TRANSCRIPTIONS, LTD. re 149 Reply to Response to Motion,, (SALVAGNO, OLIVIER) (Entered: 02/23/2006) |
| 02/23/2006 | 151 | CERTIFICATE OF SERVICE by MEDQUIST INC., RONALD SCARPONE, MICHAEL CLARK, MEDQUIST TRANSCRIPTIONS, LTD. re 147 Brief in Support of Motion, (SALVAGNO, OLIVIER) (Entered: 02/23/2006) |
| 03/08/2006 | 152 | Minute Entry for proceedings held before Judge Jerome B. Simandle : Motion Hearing held on 3/8/2006 re 135 MOTION to Dismiss *Plaintiffs' Third Amended Complaint* filed by MEDQUIST TRANSCRIPTIONS, LTD.,, MICHAEL CLARK,, MEDQUIST INC.,, RONALD SCARPONE,, 133 MOTION to Dismiss *Third Amended Complaint, together with Brief in support thereof, Table of Contents, Order and Certificate of Service* filed by JOHN SUENDER,, 134 MOTION to Dismiss *Third Amended Complaint* filed by BRIAN KEARNS,, 136 MOTION to Dismiss *the First Claim for Fraud in the Inducement of the Arbitration Clause for Failure to State a Claim, to Compel Arbitration of All Claims by Plaintiffs Childrens Hospital, Northbay, and Partners Hcs, and to Stay The Case in its Enti filed by MEDQUIST TRANSCRIPTIONS, LTD.,, MICHAEL CLARK,, MEDQUIST INC.,, RONALD SCARPONE, ORDERED DECISION RESERVED ON ALL MOTIONS. (Court Reporter Lisa Marcus.) (db, ) (Entered: 03/09/2006)* |
| 03/09/2006 | 153 | ORDER that Jeanette M. Brook be permitted to appear pro hac vice for the plaintiffs. Signed by Judge Joel B. Rosen on 3/9/06. (db, ) (Entered: 03/09/2006) |
| 03/21/2006 | 154 | TRANSCRIPT of Proceedings held on 3/08/06 before Judge Simandle. Court Reporter: Lisa Marcus. PLEASE NOTE: The complete transcript of these proceedings is maintained in paper format on file in the Clerks Office. To request copies of this transcript, contact the Official Court Reporter or Transcription Service who prepared the transcript. (db, ) (Entered: 03/21/2006) |
| 04/24/2006 | 155 | NOTICE of Appearance by KEENA M. MACKAY on behalf of BRIAN KEARNS (MACKAY, KEENA) (Entered: 04/24/2006) |
| 05/01/2006 | 156 | Letter from Attorney, Keena M. Mackay re 155 Notice of Appearance. (db, ) (Entered: 05/02/2006) |
| 11/02/2006 | | Magistrate Judge Ann Marie Donio added. (MB, ) (Entered: 11/02/2006) |
| 03/30/2007 | 157 | OPINION FILED. Signed by Judge Jerome B. Simandle on 3/30/07. (js) (Entered: 03/30/2007) |
| 03/30/2007 | 158 | ORDER granting 111 Motion for Sanctions; granting in part and denying in |

| | | |
|---|---|---|
| | | part 133 Motion to Dismiss; granting in part and denying in part 134 Motion to Dismiss; granting in part and denying in part 135 Motion to Dismiss; denying in part 136 Motion to Dismiss. Signed by Judge Jerome B. Simandle on 3/30/07. (js) (Entered: 03/30/2007) |
| 04/03/2007 | 159 | SCHEDULING ORDER: Telephone Conference set for 4/11/2007 at 2:30 PM before Magistrate Judge Ann Marie Donio. Signed by Judge Ann Marie Donio on 4/3/07. (js) (Entered: 04/03/2007) |
| 04/09/2007 | 160 | ANSWER to Amended Complaint *Third Amended Complaint* by MEDQUIST INC., MEDQUIST TRANSCRIPTIONS, LTD.. (Attachments: # 1 Certificate of Service)(GROSS, MARC) (Entered: 04/09/2007) |
| 04/10/2007 | 161 | NOTICE OF APPEAL by MEDQUIST INC., MEDQUIST TRANSCRIPTIONS, LTD.. Filing fee $ 455, receipt number 1432389. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (Attachments: # 1 Certificate of Service)(GROSS, MARC) (Entered: 04/10/2007) |
| 04/11/2007 | 162 | ANSWER to Amended Complaint by JOHN SUENDER. (Attachments: # 1 Certificate of Service)(DELEHEY, LAUREN) (Entered: 04/11/2007) |
| 04/11/2007 | | Minute Entry for proceedings held before Judge Ann Marie Donio : Status Conference held on 4/11/2007. (jm1, ) (Entered: 04/16/2007) |
| 04/12/2007 | 163 | SCHEDULING ORDER: Telephone Conference set for 5/7/2007 at 3:30 PM before Magistrate Judge Ann Marie Donio. Signed by Judge Ann Marie Donio on 4/12/07. (js) (Entered: 04/12/2007) |
| 04/16/2007 | 164 | ANSWER to Amended Complaint by BRIAN KEARNS. (Attachments: # 1 Certificate of Service)(MACKAY, KEENA) (Entered: 04/16/2007) |
| 04/18/2007 | 165 | Notice of Docketing USCA Case Number 07-2076 for 161 Notice of Appeal (USCA), Notice of Appeal (USCA) filed by MEDQUIST INC., MEDQUIST TRANSCRIPTIONS, LTD.. USCA Case Manager LaToya Corprew (Document Restricted - Court Only) (Corprew, LaToya) (Entered: 04/18/2007) |
| 04/18/2007 | 166 | NOTICE of Appearance by FREDERICK E. BLAKELOCK on behalf of RONALD SCARPONE (BLAKELOCK, FREDERICK) (Entered: 04/18/2007) |
| 04/20/2007 | 167 | NOTICE of Appearance by TIMOTHY S. SUSANIN on behalf of RONALD SCARPONE (SUSANIN, TIMOTHY) (Entered: 04/20/2007) |
| 04/20/2007 | 168 | Letter from Marc J. Gross, Esq. enclosing case law. (Attachments: # 1) (GROSS, MARC) (Entered: 04/20/2007) |
| 04/23/2007 | 169 | Notice of Request by Pro Hac Vice James A. Murphy, Esq. and Cameron S. Matheson, Esq. to receive Notices of Electronic Filings. (DELEHEY, LAUREN) (Entered: 04/23/2007) |
| 04/24/2007 | 170 | MOTION to Stay *Proceedings Pending Appeal of Order Denying Arbitration* |

| | | |
|---|---|---|
| | | *and Refusing Stay* by MEDQUIST INC., MEDQUIST TRANSCRIPTIONS, LTD.. (Attachments: # 1 Brief in Support of Motion to Stay Proceedings Pending Appeal# 2 Text of Proposed Order # 3 Certificate of Service) (GROSS, MARC) (Entered: 04/24/2007) |
| 04/24/2007 | | Setting Deadlines as to 170 MOTION to Stay *Proceedings Pending Appeal of Order Denying Arbitration and Refusing Stay*. Motion Hearing set for 5/18/2007 before Mag. Judge Ann M. Donio . PLEASE BE ADVISED THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (js) (Entered: 04/24/2007) |
| 04/26/2007 | 171 | MOTION for Leave to Appear Pro Hac Vice by RONALD SCARPONE. (BLAKELOCK, FREDERICK) (Entered: 04/26/2007) |
| 04/26/2007 | | Setting Deadlines as to 171 MOTION for Leave to Appear Pro Hac Vice. Motion Hearing set for 6/1/2007 before Magistrate Judge Ann Marie Donio. PLEASE BE ADVISED THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (js) (Entered: 04/26/2007) |
| 04/27/2007 | 172 | STIPULATION of Dismissal by CHILDRENS HOSPITAL LOS ANGELES. (KAPLAN, ROGER) (Entered: 04/27/2007) |
| 04/27/2007 | 173 | TRANSCRIPT REQUEST by MEDQUIST INC., MEDQUIST TRANSCRIPTIONS, LTD. re 165 USCA Case Number (SALVAGNO, OLIVIER) (Entered: 04/27/2007) |
| 04/30/2007 | 174 | Notice of Request by Pro Hac Vice Neal R. Marder, Esq., David M. Hickey, Esq., Gail J. Standish, Esq., Peter E. Perkowski, Esq. and Stephen R. Smerek, Esq. to receive Notices of Electronic Filings. (Attachments: # 1 Certificate of Service)(SALVAGNO, OLIVIER) (Entered: 04/30/2007) |
| 05/04/2007 | 175 | BRIEF in Opposition re 170 MOTION to Stay *Proceedings Pending Appeal of Order Denying Arbitration and Refusing Stay* filed by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, CHILDRENS HOSPITAL LOS ANGELES, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC.. (RUSSELL, CLARK) (Entered: 05/04/2007) |
| 05/04/2007 | 176 | ANSWER to Amended Complaint by RONALD SCARPONE. (BLAKELOCK, FREDERICK) (Entered: 05/04/2007) |
| 05/04/2007 | 177 | NOTICE of Appearance by RICHARD A. DEMICHELE, JR on behalf of MICHAEL CLARK (js) (Entered: 05/07/2007) |
| 05/04/2007 | 178 | MOTION for Leave to Appear Pro Hac Vice by MICHAEL CLARK. (Attachments: # 1 Declaration # 2 Declaration of Hibey# 3 Declaration of Reinhard# 4 Text of Proposed Order)(js) (Entered: 05/07/2007) |
| 05/04/2007 | | Setting Deadlines as to 178 MOTION for Leave to Appear Pro Hac Vice. Motion Hearing set for 6/1/2007 before Magistrate Judge Ann Marie Donio. PLEASE BE ADVISED THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (js) |

| | | (Entered: 05/07/2007) |
|---|---|---|
| 05/07/2007 | 179 | NOTICE of Appearance by CLARK P. RUSSELL on behalf of all plaintiffs (RUSSELL, CLARK) (Entered: 05/07/2007) |
| 05/07/2007 | | Pro Hac Vice fee as to James Murphy and Cameron Matheson: $ 300, receipt number 100 306159 (js) (Entered: 05/07/2007) |
| 05/07/2007 | 180 | SCHEDULING ORDER: Telephone Conference set for 5/16/2007 at 3:00 PM before Magistrate Judge Ann Marie Donio. Signed by Judge Ann Marie Donio on 5/7/07. (js) (Entered: 05/08/2007) |
| 05/09/2007 | 181 | ORDER by consent extending time for Michael Clark to file an answer; answer due 5/18/07. Signed by Judge Ann Marie Donio on 5/9/07. (js) (Entered: 05/10/2007) |
| 05/11/2007 | 182 | REPLY to Response to Motion re 170 MOTION to Stay *Proceedings Pending Appeal of Order Denying Arbitration and Refusing Stay* filed by MEDQUIST INC., MEDQUIST TRANSCRIPTIONS, LTD.. (Attachments: # 1 Certificate of Service)(GROSS, MARC) (Entered: 05/11/2007) |
| 05/11/2007 | 183 | Substitution of Attorney, O. Salvagno no longer represents M. Clark. (js) (Entered: 05/11/2007) |
| 05/16/2007 | | Minute Entry for proceedings held before Judge Ann Marie Donio : Status Conference held on 5/16/2007. (jm1, ) (Entered: 05/17/2007) |
| 05/17/2007 | 184 | ORDER granting 171 Motion for Leave to Appear Pro Hac Vice. Signed by Judge Ann Marie Donio on 5/17/07. (js) (Entered: 05/18/2007) |
| 05/17/2007 | 185 | SCHEDULING ORDER: Telephone Conference set for 7/13/2007 at 11:30 AM before Magistrate Judge Ann Marie Donio. Signed by Judge Ann Marie Donio on 5/17/07. (js) (Entered: 05/18/2007) |
| 05/18/2007 | 188 | DECLARATION of Richard DeMichele, Re: 178 MOTION for Leave to Appear Pro Hac Vice by MICHAEL CLARK. (js) (Entered: 05/22/2007) |
| 05/18/2007 | 189 | ANSWER to 3rd Amended Complaint by MICHAEL CLARK.(js) (Entered: 05/22/2007) |
| 05/21/2007 | 186 | Letter from Olivier Salvagno, Esq. confirming oral argument on MedQuist's motion to stay this action pending appeal on May 30, 2007 at 11:00 a.m. re 170 MOTION to Stay *Proceedings Pending Appeal of Order Denying Arbitration and Refusing Stay*. (SALVAGNO, OLIVIER) (Entered: 05/21/2007) |
| 05/21/2007 | 187 | Letter from Plaintiffs Regarding May 30, 2007 Oral Arguments on MedQuist's Motion to Stay Pending Appeal re 175 Brief in Opposition to Motion, 182 Reply to Response to Motion, 185 Scheduling Order. (RUSSELL, CLARK) (Entered: 05/21/2007) |
| 05/22/2007 | 190 | Letter from Marc J. Gross, Esq. in response to plaintiffs' sur-reply brief filed on May 21, 2007. (GROSS, MARC) (Entered: 05/22/2007) |
| 05/22/2007 | 191 | Letter from Olivier Salvagno, Esq. confirming oral argument on MedQuist's |

|  |  |  |
|---|---|---|
|  |  | motion to stay this action pending appeal, scheduled for May 30, 2007, shall occur by means of conference call with the Court re 170 MOTION to Stay *Proceedings Pending Appeal of Order Denying Arbitration and Refusing Stay*. (SALVAGNO, OLIVIER) (Entered: 05/22/2007) |
| 05/23/2007 | 192 | MOTION for Leave to Appear Pro Hac Vice by BRIAN KEARNS. (Attachments: # 1 Certification of Keena M. Mackay# 2 Certification of Andreea V. Prodan# 3 Text of Proposed Order # 4 Certificate of Service) (MACKAY, KEENA) (Entered: 05/23/2007) |
| 05/23/2007 |  | Setting Deadlines as to 192 MOTION for Leave to Appear Pro Hac Vice. Motion Hearing set for 7/6/2007 before Magistrate Judge Ann Marie Donio. PLEASE BE ADVISED THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (js) (Entered: 05/24/2007) |
| 05/23/2007 | 193 | ORDER granting 178 Motion for Leave to Appear Pro Hac Vice. Signed by Judge Ann Marie Donio on 5/23/07. (js) (Entered: 05/24/2007) |
| 05/24/2007 | 194 | MOTION for Leave to Appear Pro Hac Vice *on behalf of Robert P. Charrow and Laura M. Klaus* by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC.. (Attachments: # 1 Certification of Clark P. Russell in Support of Motion for Robert P. Charrow Pro Hac Vice Admission# 2 Certification of Clark P. Russell in Support of Motion of Laura M. Klaus Pro Hac Vice Admission# 3 Declaration of Robert P. Charrow in Support of Pro Hac Vice Admission# 4 Declaration of Laura M. Klaus in Support of Pro Hac Vice Admission# 5 Text of Proposed Order of Robert P. Charrow Pro Hac Vice Admission# 6 Text of Proposed Order of Laura M. Klaus Pro Hac Vice Admission# 7 Certificate of Service Motion for Pro Hac Vice Admission of Robert P. Charrow and Laura M. Klaus)(RUSSELL, CLARK) (Entered: 05/24/2007) |
| 05/24/2007 |  | Setting Deadlines as to 194 MOTION for Leave to Appear Pro Hac Vice *on behalf of Robert P. Charrow and Laura M. Klaus*. Motion Hearing set for 7/6/2007 before Magistrate Judge Ann Marie Donio. PLEASE BE ADVISED THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (js) (Entered: 05/25/2007) |
| 05/25/2007 |  | Pro Hac Vice fee as to Thomas Brown: $ 150, receipt number 100 306272 (js) (Entered: 05/25/2007) |
| 05/30/2007 | 195 | Minute Entry for proceedings held before Judge Jerome B. Simandle : Motion Hearing held on 5/30/2007 re 170 MOTION to Stay *Proceedings Pending Appeal of Order Denying Arbitration and Refusing Stay* filed by MEDQUIST INC., MEDQUIST TRANSCRIPTIONS, LTD. (Court Reporter Lisa Marcus) (js) (Entered: 05/31/2007) |
| 06/01/2007 |  | Pro Hac Vice fee as to R. Hibey and M. Reinhard : $ 300, receipt number 100 306292 (js) (Entered: 06/04/2007) |
| 06/06/2007 | 196 | Letter from Neal Marder, Esq. (on behalf of MedQuist Inc. and MedQuist |

| | | |
|---|---|---|
| | | Transcriptions, Ltd.) transmitting a declaration and providing an update on various matters discussed at the May 30, 2007 hearing on the motion to stay pending appeal. (Attachments: # 1 Declaration of Maureen Nelson Re Transcription Service Contracts of Plaintiffs South Broward Hospital District, Riverside Healthcare Systems, L.P., and West Hills Hospital# 2 Exhibit A through G# 3 Certificate of Service)(SALVAGNO, OLIVIER) (Entered: 06/06/2007) |
| 06/06/2007 | 197 | Letter from Plaintiffs Regarding Transcription Agreements of South Broward Hospital District, West Hills Hospital and Riverside Community Hospital. (Attachments: # 1 Declaration of Mark L. Hogge# 2 Exhibit 1# 3 Exhibit 2# 4 Exhibit 3# 5 Exhibit 4# 6 Exhibit 5# 7 Exhibit 6# 8 Exhibit 7# 9 Exhibit 8# 10 Exhibit 9# 11 Exhibit 10# 12 Exhibit 11# 13 Certificate of Service) (RUSSELL, CLARK) (Entered: 06/06/2007) |
| 06/11/2007 | 198 | Letter from Neal R. Marder, Esq. on behalf of MedQuist Inc. and MedQuist Transcriptions, Ltd.. (Attachments: # 1 Certificate of Service)(SALVAGNO, OLIVIER) (Entered: 06/11/2007) |
| 06/12/2007 | 199 | Notice of Request by Pro Hac Vice Thomas S. Brown to receive Notices of Electronic Filings. (BLAKELOCK, FREDERICK) (Entered: 06/12/2007) |
| 06/14/2007 | 200 | Letter from Mark L. Hogge in Response to MedQuist's June 11, 2007 Letter re 198 Letter. (Attachments: # 1 Exhibit 12# 2 Exhibit 13# 3 Certificate of Service)(RUSSELL, CLARK) (Entered: 06/14/2007) |
| 06/15/2007 | 201 | TRANSCRIPT of Proceedings held on 5/30/07 before Judge Simandle. Court Reporter: Lisa Marcus. PLEASE NOTE: The complete transcript of these proceedings is maintained in paper format on file in the Clerks Office. To request copies of this transcript, contact the Official Court Reporter or Transcription Service who prepared the transcript. (js) (Entered: 06/18/2007) |
| 06/19/2007 | 202 | Letter from Olivier, Esq. on behalf of MedQuist Inc. and MedQuist Transcriptions, Ltd.. (Attachments: # 1 Certificate of Service)(SALVAGNO, OLIVIER) (Entered: 06/19/2007) |
| 06/20/2007 | 203 | Notice to be terminated and withdraw from Notices of Electronic filing as to case. Attorney MARALEEN DANAI SHIELDS terminated. (DELEHEY, LAUREN) (Entered: 06/20/2007) |
| 06/27/2007 | 204 | ORDER granting 192 Motion for Leave to Appear Pro Hac Vice. Signed by Judge Ann Marie Donio on 6/27/07. (js) (Entered: 06/27/2007) |
| 06/27/2007 | 205 | ORDER granting 194 Motion for Leave to Appear Pro Hac Vice. Signed by Judge Ann Marie Donio on 6/27/07. (js) (Entered: 06/27/2007) |
| 07/13/2007 | | Minute Entry for proceedings held before Judge Ann Marie Donio : Status Conference held on 7/13/2007. (jm1, ) (Entered: 07/17/2007) |
| 07/16/2007 | 206 | Notice of Request by Pro Hac Vice Andreea V. Prodan to receive Notices of Electronic Filings. (Attachments: # 1 Certificate of Service)(MACKAY, KEENA) (Entered: 07/16/2007) |
| 07/16/2007 | | CLERK'S OFFICE QUALITY CONTROL MESSAGE: Document 206 filed |

| | | |
|---|---|---|
| | | by KEENA M. MACKAY on 7/16/07 cannot be processed until the fee is paid and you must resubmit this pleading and provide the e-mail address of the pro hac vice counsel. Please refile with correction made after fee is paid. (js) (Entered: 07/17/2007) |
| 07/16/2007 | | Pro Hac Vice fee as to Andreea V. Prodan: $ 150, receipt number 1561191 (js) (Entered: 07/18/2007) |
| 07/17/2007 | 207 | Notice of Request by Pro Hac Vice Andreea V. Prodan to receive Notices of Electronic Filings. (Attachments: # 1 Certificate of Service)(MACKAY, KEENA) (Entered: 07/17/2007) |
| 07/17/2007 | 208 | Notice of Request by Pro Hac Vice Matthew T. Reinhard to receive Notices of Electronic Filings. (DEMICHELE, RICHARD) (Entered: 07/17/2007) |
| 07/17/2007 | 209 | Notice of Request by Pro Hac Vice Mark L. Hogge and Katie A. Jefcoat to receive Notices of Electronic Filings. (Attachments: # 1 Certificate of Service) (RUSSELL, CLARK) (Entered: 07/17/2007) |
| 07/23/2007 | | Pro Hac Vice fee as to Laura M. Klaus: $ 150, receipt number 100 306518 (js) (Entered: 07/23/2007) |
| 07/23/2007 | | Pro Hac Vice fee as to Robert P. Charrow: $ 150, receipt number 100 306519 (js) (Entered: 07/23/2007) |
| 07/23/2007 | 210 | Letter from MedQuist Inc. re: appellate status. (GROSS, MARC) (Entered: 07/23/2007) |
| 10/01/2007 | | CLERK'S QUALITY CONTROL MESSAGE: LAUREN GRAHAM DELEHEY, does not have a correct e-mail address listed with the court and is not receiving his/her notices of electronic filing in this case. Pursuant to local rule 10.1 and court procedures, counsel and unrepresented parties are required to notify the court of any mailing or e-mail address changes. The court has deleted the invalid e-mail address. Attorneys should review the ECF link on our web site for information on maintaining your account and unrepresented parties, or those attorneys without access to maintaining their account, should notice the Clerk. (mem, ) (Entered: 10/01/2007) |
| 10/02/2007 | 211 | LETTER ORDER addressed to Counsel. Signed by Judge Jerome B. Simandle on 10/2/07. (js) (Entered: 10/04/2007) |
| 10/05/2007 | 212 | Letter from Marc J. Gross, Esq. in response to the Court's October 2, 2007 letter requesting a voluntary dismissal of portions of the appeal. (GROSS, MARC) (Entered: 10/05/2007) |
| 10/12/2007 | 213 | Letter from Plaintiffs re 211 Order. (Attachments: # 1 Certificate of Service) (RUSSELL, CLARK) (Entered: 10/12/2007) |
| 10/18/2007 | 214 | Letter from Marc J. Gross, Esq. re: status of appeal. (GROSS, MARC) (Entered: 10/18/2007) |
| 10/25/2007 | 215 | Letter from Plaintiffs' Counsel Mark Hogge re 211 Order. (Attachments: # 1 Exhibit)(RUSSELL, CLARK) (Entered: 10/25/2007) |
| 10/29/2007 | 216 | Letter from Medquist to Judge Simandle. (GROSS, MARC) (Entered: |

| | | 10/29/2007) |
|---|---|---|
| 10/29/2007 | | CLERK'S OFFICE QUALITY CONTROL MESSAGE: Document 216 filed on 10/29/07 by MARC J. GROSS does not contain a proper electronic signature. Please Refile. (js) (Entered: 10/30/2007) |
| 10/30/2007 | 217 | Letter from Marc J. Gross, Esq. to Judge Simandle dated October 29, 2007 (re-filed with proper electronic signature). (GROSS, MARC) (Entered: 10/30/2007) |
| 11/28/2007 | | CLERK'S QUALITY CONTROL MESSAGE: CLARK P. RUSSELL, does not have a correct e-mail address listed with the court and is not receiving his/her notices of electronic filing in this case. Pursuant to local rule 10.1 and court procedures, counsel and unrepresented parties are required to notify the court of any mailing or e-mail address changes. The court has deleted the invalid e-mail address. Attorneys should review the ECF link on our web site for information on maintaining your account and unrepresented parties, or those attorneys without access to maintaining their account, should notice the Clerk. (mem, ) (Entered: 11/28/2007) |
| 12/13/2007 | 218 | Letter from Mark Hogge providing a status report on the appeal filed by MedQuist, Inc. and MedQuist Transcriptions, Ltd.. (KAPLAN, ROGER) (Entered: 12/13/2007) |
| 12/18/2007 | 219 | USCA JUDGMENT as to 161 Notice of Appeal (USCA), Notice of Appeal (USCA) filed by MEDQUIST INC., MEDQUIST TRANSCRIPTIONS, LTD., affirmed. (Corprew, LaToya) (Entered: 12/18/2007) |
| 12/18/2007 | 221 | OPINION FILED. Signed by Judge Jerome B. Simandle on 12/18/07. (js) (Entered: 12/19/2007) |
| 12/18/2007 | 222 | ORDER dismissing as moot 170 Motion to Stay. Signed by Judge Jerome B. Simandle on 12/18/07. (js) (Entered: 12/19/2007) |
| 12/19/2007 | 220 | Letter from Laura Metcoff Klaus re 158 Order on Motion for Sanctions,, Order on Motion to Dismiss,,,,,,,. (SHAINBROWN, IAN) (Entered: 12/19/2007) |
| 12/28/2007 | 223 | MOTION for Reconsideration re 158 Order on Motion for Sanctions,, Order on Motion to Dismiss,,,,,,, by JOHN SUENDER. (Attachments: # 1 Brief # 2 Text of Proposed Order # 3 Certificate of Service)(REICHNER, HENRY) (Entered: 12/28/2007) |
| 12/28/2007 | | Setting Deadlines as to 223 MOTION for Reconsideration re 158 Order on Motion for Sanctions,, Order on Motion to Dismiss,,,,,,,. Motion Hearing set for 2/1/2008 before Judge Jerome B. Simandle. PLEASE BE ADVISED THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (js) (Entered: 01/02/2008) |
| 01/02/2008 | 224 | SCHEDULING ORDER: Status Conference set for 1/14/2008 at 11:30 AM before Magistrate Judge Ann Marie Donio. Signed by Judge Ann Marie Donio on 1/2/08. (js) (Entered: 01/02/2008) |
| 01/04/2008 | 225 | MOTION for Reconsideration *of the Order Denying in Part Motion to* |

| | | |
|---|---|---|
| | | *Dismiss* by RONALD SCARPONE. (BLAKELOCK, FREDERICK) (Entered: 01/04/2008) |
| 01/04/2008 | | Setting Deadlines as to [225](#) MOTION for Reconsideration *of the Order Denying in Part Motion to Dismiss*. Motion Hearing set for 2/4/2008 before Judge Jerome B. Simandle. PLEASE BE ADVISED THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (js) (Entered: 01/04/2008) |
| 01/04/2008 | [226](#) | MOTION for Reconsideration re [222](#) Order on Motion to Stay by BRIAN KEARNS. (Attachments: # [1](#) Brief # [2](#) Text of Proposed Order # [3](#) Certificate of Service)(MACKAY, KEENA) (Entered: 01/04/2008) |
| 01/04/2008 | | Setting Deadlines as to [226](#) MOTION for Reconsideration re [222](#) Order on Motion to Stay. Motion Hearing set for 2/4/2008 before Judge Jerome B. Simandle. PLEASE BE ADVISED THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (js) (Entered: 01/07/2008) |
| 01/08/2008 | [227](#) | MOTION for Reconsideration re [157](#) Opinion, [158](#) Order on Motion for Sanctions,, Order on Motion to Dismiss,,,,,,, by MICHAEL CLARK. (Attachments: # [1](#) Brief # [2](#) Text of Proposed Order # [3](#) Certificate of Service) (DEMICHELE, RICHARD) (Entered: 01/08/2008) |
| 01/08/2008 | | Setting Deadlines as to [227](#) MOTION for Reconsideration re [157](#) Opinion, [158](#) Order on Motion for Sanctions, Order on Motion to Dismiss. Motion Hearing set for 2/4/2008 before Judge Jerome B. Simandle. PLEASE BE ADVISED THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (js) (Entered: 01/08/2008) |
| 01/08/2008 | [228](#) | NOTICE of Appearance by IAN SETH SHAINBROWN on behalf of SOUTH BROWARD HOSPITAL DISTRICT (SHAINBROWN, IAN) (Entered: 01/08/2008) |
| 01/08/2008 | [229](#) | BRIEF in Opposition re [223](#) MOTION for Reconsideration re [158](#) Order on Motion for Sanctions,, Order on Motion to Dismiss,,,,,,, filed by SOUTH BROWARD HOSPITAL DISTRICT. (Attachments: # [1](#) Bell Atlantic v. Twombly# [2](#) Chrisiansen v. Camden Country# [3](#) In re Macrophage# [4](#) Smith v. United States# [5](#) Certificate of Service)(SHAINBROWN, IAN) (Entered: 01/08/2008) |
| 01/09/2008 | [230](#) | MANDATE of USCA as to [161](#) Notice of Appeal (USCA), Notice of Appeal (USCA) filed by MEDQUIST INC., MEDQUIST TRANSCRIPTIONS, LTD. (Attachments: # [1](#) Letter# [2](#) Opinion)(Corprew, LaToya) (Entered: 01/09/2008) |
| 01/09/2008 | [231](#) | SCHEDULING ORDER: Conference set for 1/29/2008 at 10:00 AM before Magistrate Judge Ann Marie Donio. Signed by Judge Ann Marie Donio on 1/9/08. (js) (Entered: 01/09/2008) |
| 01/10/2008 | [232](#) | Letter from Clerk's Office re: Order on Mandate from USCA. (lc) (Entered: 01/10/2008) |
| | | |

| 01/14/2008 | 233 | MOTION for Leave to File *Reply Brief in Support of Motion to Reconsider Order Denying in Part Motion to Dismiss* by JOHN SUENDER. (Attachments: # 1 Brief # 2 Text of Proposed Order # 3 Certificate of Service) (REICHNER, HENRY) (Entered: 01/14/2008) |
| --- | --- | --- |
| 01/14/2008 | | Setting Deadlines as to 233 MOTION for Leave to File *Reply Brief in Support of Motion to Reconsider Order Denying in Part Motion to Dismiss*. Motion Hearing set for 2/19/2008 before Judge Jerome B. Simandle. PLEASE BE ADVISED THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (js) (Entered: 01/16/2008) |
| 01/18/2008 | 234 | BRIEF in Opposition re 227 MOTION for Reconsideration re 157 Opinion, 158 Order on Motion for Sanctions,, Order on Motion to Dismiss,,,,,,,,, 225 MOTION for Reconsideration *of the Order Denying in Part Motion to Dismiss*, 223 MOTION for Reconsideration re 158 Order on Motion for Sanctions,, Order on Motion to Dismiss,,,,,,, *Combined Opposition* filed by SOUTH BROWARD HOSPITAL DISTRICT. (SCHLEIFSTEIN, TODD) (Entered: 01/18/2008) |
| 01/18/2008 | 235 | CERTIFICATE OF SERVICE by SOUTH BROWARD HOSPITAL DISTRICT re 234 Brief in Opposition to Motion, (SCHLEIFSTEIN, TODD) (Entered: 01/18/2008) |
| 01/24/2008 | 236 | ORDER granting 233 Motion for Leave to File. Signed by Judge Jerome B. Simandle on 1/24/08. (js) (Entered: 01/25/2008) |
| 01/29/2008 | 237 | MOTION for Leave to File *Reply Brief in Support of Motion to Reconsider Order Denying in Part Motion to Dismiss* by BRIAN KEARNS. (Attachments: # 1 Reply Brief, # 2 Text of Proposed Order, # 3 Certificate of Service)(MACKAY, KEENA) (Entered: 01/29/2008) |
| 01/29/2008 | 240 | Minute Entry for proceedings held before Magistrate Judge Ann Marie Donio: Status Conference held on 1/29/2008. (Disk #15) (js) (Entered: 01/31/2008) |
| 01/30/2008 | 238 | Letter from Olivier Salvagno, Esq. to Hon. Ann Marie Donio, U.S.M.J., regarding Kessler Memorial Hospital. (SALVAGNO, OLIVIER) (Entered: 01/30/2008) |
| 01/30/2008 | 239 | Letter from Richard DeMichele, Jr., Esq. re: Reply Brief to Motion to Reconsider. (DEMICHELE, RICHARD) (Entered: 01/30/2008) |
| 01/30/2008 | 241 | ORDER granting 237 Motion for Leave to File. Signed by Judge Jerome B. Simandle on 1/30/08. (js) (Entered: 01/31/2008) |
| 01/31/2008 | 242 | Letter from Frederick Blakelock re: Motions for Reconsideration. (BLAKELOCK, FREDERICK) (Entered: 01/31/2008) |
| 02/04/2008 | 243 | SCHEDULING ORDER: Telephone Status Conference set for 2/11/2008 at 1:30 PM before Magistrate Judge Ann Marie Donio. Signed by Magistrate Judge Ann Marie Donio on 2/4/08. (js) (Entered: 02/04/2008) |
| 02/11/2008 | | Minute Entry for proceedings held before Magistrate Judge Ann Marie Donio: Status Conference held on 2/11/2008. (jm1, ) (Entered: 02/13/2008) |

| | | |
|---|---|---|
| 02/13/2008 | 244 | SCHEDULING ORDER: Telephone Status Conference set for 2/20/2008 at 1:00 PM before Magistrate Judge Ann Marie Donio. Signed by Magistrate Judge Ann Marie Donio on 2/13/08. (js) (Entered: 02/13/2008) |
| 02/14/2008 | 247 | TRANSCRIPT of Proceedings held on 1/29/08 before Judge Donio. PLEASE NOTE: The complete transcript of these proceedings is maintained in paper format on file in the Clerks Office. To request copies of this transcript, contact the Official Court Reporter or Transcription Service who prepared the transcript. (js) (Entered: 02/19/2008) |
| 02/15/2008 | 245 | Letter from Ian S. Shainbrown. (SHAINBROWN, IAN) (Entered: 02/15/2008) |
| 02/15/2008 | 246 | Letter from Marc J. Gross, Esq., attorneys for MedQuist Inc. in response to plaintiffs' counsel's 2/15/08 letter. (GROSS, MARC) (Entered: 02/15/2008) |
| 02/19/2008 | 248 | STIPULATION // Joint Discovery Plan by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC.. (SHAINBROWN, IAN) (Entered: 02/19/2008) |
| 02/19/2008 | 249 | Letter from Keena S. MacKay Re: Consent Order Admitting Christopher S. Turner Pro Hac Vice. (Attachments: # 1 Certification of Keena M. MacKay, # 2 Certification of Christopher S. Turner, # 3 Text of Proposed Order, # 4 Certificate of Service)(MACKAY, KEENA) (Entered: 02/19/2008) |
| 02/20/2008 | 250 | ORDER ADMITTING COUNSEL PRO HAC VICE. Signed by Magistrate Judge Ann Marie Donio on 2/20/08. (js) (Entered: 02/20/2008) |
| 02/20/2008 | 251 | Minute Entry for proceedings held before Magistrate Judge Ann Marie Donio: Status Conference held on 2/20/2008. (Disk #15) (js) (Entered: 02/21/2008) |
| 02/21/2008 | 252 | RICO CASE ORDER. Signed by Magistrate Judge Ann Marie Donio on 2/21/08. (js) (Entered: 02/21/2008) |
| 02/21/2008 | 253 | SCHEDULING ORDER: Telephone Status Conference set for 4/10/2008 at 11:30 AM before Magistrate Judge Ann Marie Donio. Discovery due by 7/31/2008. Disp. Motions due by 11/24/2008. Signed by Magistrate Judge Ann Marie Donio on 2/21/08. (js) (Entered: 02/21/2008) |
| 03/03/2008 | 254 | TRANSCRIPT of Proceedings held on 2/20/08 before Judge Donio. PLEASE NOTE: The complete transcript of these proceedings is maintained in paper format on file in the Clerks Office. To request copies of this transcript, contact the Official Court Reporter or Transcription Service who prepared the transcript. (js) (Entered: 03/03/2008) |
| 03/11/2008 | 255 | Notice of Request by Pro Hac Vice Christopher S. Turner to receive Notices of Electronic Filings. ( Pro Hac Vice fee $ 150 receipt number 03120000000001902413.) (Attachments: # 1 Certificate of Service) (MACKAY, KEENA) (Entered: 03/11/2008) |
| 03/11/2008 | 256 | Notice of Request by Pro Hac Vice Edward J. Shapiro to receive Notices of Electronic Filings. (Attachments: # 1 Certificate of Service)(MACKAY, |

| | | |
|---|---|---|
| | | KEENA) (Entered: 03/11/2008) |
| 03/11/2008 | 257 | Letter from Marc J. Gross, Esq. re: tentative settlement and enclosing proposed Consent Order for a Stay. (Attachments: # 1 Text of Proposed Order)(GROSS, MARC) (Entered: 03/11/2008) |
| 03/11/2008 | 258 | CONSENT ORDER STAYING CASE through 4/18/2008. Signed by Judge Jerome B. Simandle on 3/11/2008. (sk) (Entered: 03/12/2008) |
| 04/17/2008 | 259 | Letter from Mark L. Hogge regarding requesting the present stay be continued for an additional four weeks to Friday, May 16, 2008. (SHAINBROWN, IAN) (Entered: 04/17/2008) |
| 04/28/2008 | 260 | ORDER Continuing Stay thru 5/16/08. Signed by Judge Jerome B. Simandle on 4/28/08. (js) (Entered: 04/29/2008) |
| 05/16/2008 | 261 | Letter from Mark Hogge re: request that court extend stay of proceedings. (SHAINBROWN, IAN) (Entered: 05/16/2008) |
| 05/28/2008 | 262 | STIPULATION of Dismissal *with Prejudice* by RIVERSIDE HEALTHCARE SYSTEMS, L.P., WEST HILLS HOSPITAL, SOUTH BROWARD HOSPITAL DISTRICT, NORTHBAY HEALTHCARE GROUP, PARTNERS HEALTHCARE SYSTEMS, INC.. (SHAINBROWN, IAN) (Entered: 05/28/2008) |
| 06/09/2008 | 263 | ORDER DISMISSING CASE. Signed by Judge Jerome B. Simandle on 6/9/08. (js) (Entered: 06/09/2008) |
| 06/13/2008 | 264 | Letter from Marc J. Gross, Esq., attorney for defendants, requesting the court file the enclosed proposed form of Order of Dismissal With Prejudice.. (GROSS, MARC) (Entered: 06/13/2008) |
| 06/16/2008 | 265 | ORDER OF DISMISSAL WITH PREJUDICE. Signed by Judge Jerome B. Simandle on 6/16/08. (js) (Entered: 06/18/2008) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 07/22/2008 14:25:38 | | |
| PACER Login: | ms0981 | Client Code: | 200426.00074-14039 |
| Description: | Docket Report | Search Criteria: | 1:05-cv-02206-JBS-AMD Start date: 1/1/1970 End date: 7/22/2008 |
| Billable Pages: | 21 | Cost: | 1.68 |

# EXHIBIT B

CM-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

David Perez (SBN 238136)
Greenberg Traurig, LLP
1900 University Avenue, 5th Floor
East Palo Alto, CA 94303
TELEPHONE NO.: 650-328-8500    FAX NO. (Optional): 650-328-8508
E-MAIL ADDRESS (Optional): perezdj@gtlaw.com
ATTORNEY FOR (Name): Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda
STREET ADDRESS: Rene C. Davidson Alameda County Courthouse
MAILING ADDRESS: 225 Fallon Street
CITY AND ZIP CODE: Oakland, CA 94612.
BRANCH NAME: Civil Division

**ENDORSED
FILED
ALAMEDA COUNTY**

JUN - 6 2008

CLERK OF THE SUPERIOR COURT
S. Halcrombe
Case Number: RG 08391997

PLAINTIFF/PETITIONER: Kaiser Foundation Health Plan, Inc., Kaiser Foundation
Hospitals, The Permanente Medical Group, Inc., et al.,
DEFENDANT/RESPONDENT: MedQuist, Inc., and MedQuist Transcriptions, Ltd.

JUDICIAL OFFICER:

DEPT:

## NOTICE OF RELATED CASE

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1. a. Title: South Broward Hospital District, et al. vs. MedQuist, Inc., et al.

   b. Case number: Civil No. 05-CV-2206-(JBS-JBR)

   c. Court: ☐ same as above

   ☒ other state or federal court (name and address): U.S.D.C. for New Jersey District, Camden Vicinage

   d. Department:

   e. Case type: ☐ limited civil ☒ unlimited civil ☐ probate ☐ family law ☐ other (specify):

   f. Filing date: September 7, 2004

   g. Has this case been designated or determined as "complex?" ☐ Yes ☒ No

   h. Relationship of this case to the case referenced above (check all that apply):

   ☒ involves the same parties and is based on the same or similar claims.

   ☒ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

   ☐ involves claims against, title to, possession of, or damages to the same property.

   ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

   ☒ Additional explanation is attached in attachment 1h

   i. Status of case:

   ☐ pending

   ☒ dismissed ☒ with ☐ without prejudice

   ☐ disposed of by judgment

2. a. Title:

   b. Case number:

   c. Court: ☐ same as above

   ☐ other state or federal court (name and address):

   d. Department:

| | | |
|---|---|---|
| Form Approved for Optional Use<br>Judicial Council of California<br>CM-015 [Rev. July 1, 2007]<br>WDC 371631409v1 | **NOTICE OF RELATED CASE** | Page 1 of 3<br>Cal. Rules of Court, rule 3.300<br>www.courtinfo.ca.gov |

American LegalNet, Inc.
www.FormsWorkflow.com

| PLAINTIFF/PETITIONER: Kaiser Foundation Health Plan, Inc. | | CM-015 |
|---|---|---|
| DEFENDANT/RESPONDENT: MedQuist, Inc. | CASE NUMBER: | |

2.  *(continued)*

   e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify)*:

   f. Filing date:

   g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

   h. Relationship of this case to the case referenced above *(check all that apply)*:

      ☐ involves the same parties and is based on the same or similar claims.

      ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      ☐ involves claims against, title to, possession of, or damages to the same property.

      ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

        ☐ Additional explanation is attached in attachment 2h

   i. Status of case:

      ☐ pending

      ☐ dismissed ☐ with ☐ without prejudice

      ☐ disposed of by judgment

3.  a. Title:

   b. Case number:

   c. Court: ☐ same as above

      ☐ other state or federal court *(name and address)*:

   d. Department:

   e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify)*:

   f. Filing date:

   g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

   h. Relationship of this case to the case referenced above *(check all that apply)*:

      ☐ involves the same parties and is based on the same or similar claims.

      ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      ☐ involves claims against, title to, possession of, or damages to the same property.

      ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

        ☐ Additional explanation is attached in attachment 3h

   i. Status of case:

      ☐ pending

      ☐ dismissed ☐ with ☐ without prejudice

      ☐ disposed of by judgment

4.  ☐ Additional related cases are described in Attachment 4. Number of pages attached:

Date: June 6, 2008

David Perez
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

CM-015 [Rev. July 1, 2007]

**NOTICE OF RELATED CASE**

Page 2 of 3

American LegalNet, Inc.
www.FormsWorkflow.com

Kaiser Foundation Health Plan, Inc., et al. vs. MedQuist, Inc., et al          Case No:

### ATTACHMENT 1h

On or about September 7, 2004 Plaintiffs South Broward Hospital District, et al. filed a putative class action against MedQuist, Inc. and MedQuist Transcriptions, Ltd., as well as a number of individual current or former employees of MedQuist, Inc. and MedQuist Transcriptions, Ltd., Civil No. 05-CV-2206, in the United States District Court for the District of New Jersey, Camden Vicinage ("the South Broward action"). The plaintiffs in this action were members of the putative class in the South Broward action, in which the named plaintiffs, on behalf of those similarly situated, challenged the overbilling practices of the defendants. No class was ever certified in the South Broward action, and it was dismissed with prejudice on or about May 28, 2008. The plaintiffs in this action were not part of the settlement of the South Broward action, and no disposition was ever entered with respect to plaintiffs in this action as a result of the South Broward action.

# EXHIBIT C

 



This is a printer friendly version - Back to article online
To print this article open the file menu and choose Print.

Article published October 11, 2004

# Trail of words, numbers

### Fraud lawsuit targets transcription giant MedQuist

By: Mark Taylor

The nation's largest medical transcription company said last week that it plans to review its billing claims with as many as 3,000 hospital clients after a class-action lawsuit alleged the company engaged in widespread billing fraud.

Memorial Healthcare System, a 1,111-bed, three-hospital public system owned by the South Broward Hospital District in Hollywood, Fla., alleged in its 34-page lawsuit against MedQuist, Mount Laurel, N.J., that the company systematically overbilled it and several thousand other hospitals by millions of dollars for decades.

Washington lawyer Mark Hogge of Greenberg Traurig, who is leading the class-action litigation against MedQuist and four of its current and former officers, said his firm believes that at least 25% and as much as half of Memorial's payments to MedQuist may have been based on fraudulent billing.

Hogge said the lawsuit was filed in September in U.S. District Court in Los Angeles, instead of Florida or New Jersey, partly to meet class-action legal obligations and partly because the state has "very favorable class-action laws and some of the toughest consumer fraud statutes in the country."

The class-action lawsuit is the latest in a series of scandals facing the 30-year-old company, which controls about 20% of the country's medical transcription services market. In April, the Nasdaq exchange delisted the company for failure to file appropriate financial forms. In March, the company ordered outside reviews by law firm Debevoise & Plimpton and accounting firm PricewaterhouseCoopers, whose reports MedQuist's board released in July. The reviews found that MedQuist may have wrongfully billed transcription clients. The firms found that instead of billing based on the number of characters transcribed, MedQuist employed ratios and formulas that may have pumped up the amount of actual work performed to inflate billings, in essence, charging for work not performed, without disclosing that billing formula to clients.

Earlier this year, MedQuist disclosed that the Securities and Exchange Commission also

had launched an investigation into the company. Former MedQuist Chief Financial Officer Brian Kerns and former Chief Legal Officer John Suender, both defendants in the class-action lawsuit and alleged by South Broward to be co-conspirators in the fraud scheme, resigned in July after the outside audits showed the company erred in its billings to hospitals and other transcription services clients. The reviews did not specify the amount of the overbilling.

"The use of ratios and formulas caused some clients to be billed more and some to be billed less than if the counting method provided for in the contracts had been used," MedQuist revealed in its public filings. "In addition, the ratios and formulas for certain client accounts were changed by the company, generally without disclosure to clients, in order to affect profit margins."

In July the board also named Howard Hoffmann as its interim CEO; Hoffmann had been a principal and partner at Nightingale Associates, Stamford, Conn. Hoffmann said MedQuist's priority is to work with customers to rectify problems, make the needed changes and reforms internally, and become current on the company's SEC filings.

Triple damages under RICO

The class-action lawsuit charges that the defendants "knowingly and fraudulently overcharged for transcription services." MedQuist intentionally misrepresented the terms of the contract pertaining to its fraudulent billing practices to convince plaintiffs to contract with MedQuist, according to the lawsuit. "Defendant MedQuist committed these fraudulent acts to engorge itself with improper profits at the expense of the class (hospital clients)."

Hogge said the plaintiffs would seek triple the amount of alleged damages under the Racketeer Influenced and Corrupt Organizations Act, or RICO, and state fraud laws, as well as punitive damages.

"The fraudulent practices date back to the beginning of the company," he said. "We've found one large health system alone that has paid MedQuist more than $80 million over the years and believes it was overbilled by more than $20 million."

He said other hospitals would be added to the plaintiff list. Hogge said he could not comment on whether a whistle-blower lawsuit has been filed against MedQuist. Those lawsuits are filed under seal in federal court. However, he confirmed that MedQuist offers transcription services to U.S. Army and Navy hospitals and to veterans' hospitals and clinics, which, because federal money is involved, could trigger the federal False Claims Act. In 2000, Royal Philips Electronics, the world's third-largest consumer electronics company, bought a 72% stake in the healthcare technology firm. MedQuist earned a profit of $30.3 million on revenue of $369.2 million through the first nine months of 2003, the most recent financial figures available. The company has not yet released its 2003 annual report, pending a financial audit by accounting firm KPMG.

In a news release, MedQuist said it has hired the law firm of Winston & Strawn to represent it.

"MedQuist has been proactively and responsibly working with its clients to address the questions raised regarding its billing practices, and we will continue to do so," Hoffmann said in a news release. "The company intends to respond to the suit appropriately, according to the best interests of our customers, employees and shareholders."

MedQuist spokesman Montieth Illingworth said the "vast majority" of the com-pany's clients are hospitals. MedQuist has not estimated the potential cost of the alleged overbillings, but "It's something we're working to determine," Illingworth said. He said the company is not aware of any pending whistle-blower lawsuit involving allegations concerning its billing practices.

In its promotional materials MedQuist says it services 3,000 clients with a network of more than 10,000 transcriptionists. That could change, according to stock analyst Paul Meeks of the firm of Meeks & York, who tracks MedQuist. Meeks said the transcription business, while profitable now, is changing. "The industry is maturing and margins are compressing," Meeks said. He said MedQuist plans to announce a joint venture deal in the coming months with an Indian partner to outsource much of its U.S. business, laying off employees and cutting costs, as well as a large acquisition to diversify its business.

"It's impossible now to quantify the hit that they would take from the class-action lawsuit or any potential whistle-blower suit," Meeks said. "But this is a strong business that generates a lot of cash flow. Most of the bad news is already reflected in the stock price, and any positive news will drive up the price."

In August 2003, MedQuist announced that R. Timothy Stack, then president and CEO of three-hospital Piedmont Medical Center in Atlanta and a MedQuist board member from 1997 to 2000, would become MedQuist president and CEO. But after serving only 69 days, Stack resigned and returned to his former hospital position, where he remains. Stack said he left MedQuist for "personal and professional reasons" and said he was unaware of the billing problems when he was a board member.

Asked whether he learned of the alleged fraud scheme during his stint as president, Stack said, "No comment," but pointed out that he was not named in the class-action lawsuit. He said Piedmont does not contract with MedQuist and will not be joining the litigation seeking reimbursement.

Stack was the second of four MedQuist presidents to lead the company during the past 14 months. Greg Sebasky, who was named president and chief operating officer in February, shares power with interim CEO Hoffmann.

---

*Modern Healthcare* is the industry's most trusted, credible and relied-upon news source. In print and online, *Modern Healthcare* examines the most pressing healthcare issues and provides executives with the information they need to make the most informed business decisions and lead their organizations to success. It's for this reason *Modern Healthcare* is deemed a "must-read publication" by the who's who in healthcare.

For more healthcare business news, visit http://www.ModernHealthcare.com.

---

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SOUTH BROWARD HOSPITAL DISTRICT d/b/a MEMORIAL HOSPITAL WEST, d/b/a MEMORIAL HOSPITAL PEMBROKE, d/b/a MEMORIAL REGIONAL HOSPITAL et al., <br><br> Plaintiffs, <br><br> v. <br><br> MEDQUIST INC., RONALD F. SCARPONE, JOHN SUENDER, BRIAN J. KEARNS, MICHAEL CLARK, and MEDQUIST TRANSCRIPTIONS, LTD., <br><br> Defendants. | HON. JEROME B. SIMANDLE <br><br> Civil Action No. 06-5814 (JBS) <br><br> **ORDER** |

This matter having come before the Court upon the following motions: (1) the Motion to Dismiss by Defendants MedQuist, Inc., MedQuist Transcriptions, Ltd, Ronald Scarpone and Michael Clark (collectively, the "MedQuist Defendants") [Docket Item No. 135]; (2) the Motion to Dismiss by Defendant John Suender [Docket Item No. 133]; (3) the Motion to Dismiss by Defendant Brian Kearns [Docket Item No. 134]; (4) the Motion to Dismiss the First Claim for Fraud in the Inducement of the Arbitration Clause for Failure to State a Claim, to Compel Arbitration of All Claims by Plaintiffs and to Stay the Case in its Entirety Pending Arbitration by MedQuist, Inc. [Docket Item No. 136]; and (5) the Motion for Sanctions pursuant to Rule 11 [Docket Item No. 111]; and this Court having considered the submissions of the parties in support thereof and opposition thereto; and this Court having

heard oral argument on the three pending motions to dismiss and
the motion to dismiss, compel arbitration and stay the case; and
the Court having determined that contrary to this Court's Amended
Order of December 19, 2005 [Docket Item No. 127], this Court will
not hear oral argument on MedQuist's motion for sanctions; and
for the reasons stated in the Opinion of today's date; and for
good cause shown;

**IT IS** this __30th__ day of **March, 2007,** hereby

**ORDERED** that the Motion to Dismiss of the MedQuist
Defendants [Docket Item No. 135], shall be, and hereby is,
**GRANTED in part and DENIED in part** as follows:

1.   The MedQuist Defendants' motion to dismiss shall be
     **DENIED** as to Claims 2 (fraud), Claim 3 (accounting),
     Claim 4 (unjust enrichment) , and Claim 6 (RICO
     conspiracy) of the Third Amended Complaint;

2.   The MedQuist Defendants' motion to dismiss Claim 5
     (substantive RICO claims) shall be **GRANTED** as to
     MedQuist, Inc. but **DENIED** as to Ronald Scarpone and
     Michael Clark and Claim 5 shall be **DISMISSED** as to
     MedQuist, Inc.; and

3.   The MedQuist Defendants' motion to dismiss shall be
     **GRANTED** as to Claims 7, 8, 11 (negligent
     misrepresentation as to MedQuist, Scarpone and Clark),
     Claims 12 and 15 (negligent supervision as to Scarpone
     and Clark) and Claim 16 (state unfair competition laws)
     and Claims 7, 8, 11, 12, 15, and 16 shall be **DISMISSED**
     as to the MedQuist Defendants.

**IT IS FURTHER ORDERED** that the Motion to Dismiss of John
Suender [Docket Item No. 133], shall be and hereby is, **GRANTED in
part and DENIED in part** as follows:

1.  Suender's motion to dismiss shall be **DENIED** as to Claim 4 (unjust enrichment), Claim 5 (substantive RICO) and Claim 6 (RICO conspiracy) of the Third Amended Complaint; and

2.  Suender's motion to dismiss shall be **GRANTED** as to Claim 3 (accounting), Claim 9 (negligent misrepresentation), Claim 13 (negligent supervision) and Claim 16 (state unfair competition laws) and Claims 3, 9, 13 and 16 of the Third Amended Complaint shall be **DISMISSED** as to John Suender.

**IT IS FURTHER ORDERED** that the Motion to Dismiss of Brian Kearns [Docket Item No. 134], shall be and hereby is, **GRANTED in part and DENIED in part** as follows:

1.  Kearns' motion to dismiss shall be **DENIED** as to Claim 4 (unjust enrichment), Claim 5 (substantive RICO) and Claim 6 (RICO conspiracy) of the Third Amended Complaint; and

2.  Kearns' motion to dismiss shall be **GRANTED** as to Claim 3 (accounting), Claim 9 (negligent misrepresentation), Claim 13 (negligent supervision) and Claim 16 (state unfair competition laws) and Claims 3, 9, 13 and 16 of the Third Amended Complaint shall be **DISMISSED** as to Brian Kearns.

**IT IS FURTHER ORDERED** that MedQuist's Motion to Dismiss the First Claim for Fraud in the Inducement of the Arbitration Clause for Failure to State a Claim, to Compel Arbitration of All Claims by Plaintiffs and to Stay the Case in its Entirety Pending Arbitration [Docket Item No. 136] shall be, and hereby is, **DENIED in part** in that (1) MedQuist's Motion to Compel Arbitration is **DENIED as waived** and (2) Claim 1 of the Third Amended Complaint is hereby **DISMISSED as moot;** and

**IT IS FURTHER ORDERED** that the Motion for Sanctions pursuant to Rule 11 [Docket Item No. 111] shall be and hereby is, **<u>GRANTED</u>** and Plaintiffs' Counsel, Greenberg Traurig, LLP, shall be **<u>SANCTIONED</u>** by the issuance of this Warning and the publication of this Court's Opinion.


　　　　　　　　　　　　　　　<u>**s/ Jerome B. Simandle**</u>
　　　　　　　　　　　　　　　JEROME B. SIMANDLE
　　　　　　　　　　　　　　　U.S. District Judge

EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

SOUTH BROWARD HOSPITAL
DISTRICT d/b/a MEMORIAL
HOSPITAL WEST, d/b/a MEMORIAL
HOSPITAL PEMBROKE, d/b/a
MEMORIAL REGIONAL HOSPITAL <u>et</u>
<u>al</u>.,

            Plaintiffs,

    v.

MEDQUIST INC., RONALD F.
SCARPONE, JOHN SUENDER, BRIAN
J. KEARNS, MICHAEL CLARK, and
MEDQUIST TRANSCRIPTIONS, LTD.,

            Defendants.

---

HON. JEROME B. SIMANDLE

Civil No. 05-2206 (JBS)

**OPINION**

APPEARANCES:

Roger B. Kaplan, Esq.
GREENBERG TRAURIG, LLP
200 Campus Drive, P.O. Box 677
Florham Park, NJ 07932-0677
    -and-
Mark L. Hogge, Esq.
Jeannette M. Brook, Esq.
Katherine Clune, Esq.
Kate Jefcoat, Esq.
800 Connecticut Avenue, Suite 500
Washington, D.C. 20006
    Attorneys for Plaintiffs South Broward Hospital District,
    Childrens' Hospital of Los Angeles, Northbay Healthcare
    Group, Partners Healthcare Systems, Inc., Riverside
    Healthcare Systems, L.P. and West Hill Hospital.

Marc J. Gross, Esq.
Olivier Salvagno, Esq.
GREENBAUM, ROWE, SMITH & DAVIS LLP
6 Becker Farm Road
Roseland, NJ 07068
    -and-
Neal R. Marder, Esq.
Gail J. Standich, Esq.
Stephen Smerck, Esq.

WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071
     Attorneys for Defendants MedQuist Inc., MedQuist
     Transcriptions, Ltd., Ronald Scarpone and Michael Clark

Henry F. Reichner, Esq.
Lauren Graham-Delehey, Esq.
Janett D. Pateiro, Esq.
REED SMITH, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
     -and-
Maraleen Danai Shields, Esq.
POST & SHELL, P.C.
1245 South Cedar Crest Boulevard, Suite 300
Allentown, PA 18103
     -and-
Cameron Matheson, Esq.
James Murphy, Esq.
LeClair Ryan, P.C.
Riverfront Plaza, East Tower
951 East Byrd Street
P.O. Box 2499
Richmond, VA 23218-2499
     Attorneys for Defendant John Suender

Christopher M. DiMuro, Esq.
Keena Mackey, Esq.
LATHAM & WATKINS, LLP
One Newark Center, 16th Floor
Newark, NJ 07101
     -and-
Edward J. Shapiro, Esq.
Charles J. Butler, Esq.
Joshua K. Chandler, Esq.
LATHAM & WATKINS, LLP
555 11th St., N.W., Suite 1000
Washington, D.C. 20004
     Attorneys for Defendant Brian Kearns

2

**TABLE OF CONTENTS**

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . .  4

II.   BACKGROUND. . . . . . . . . . . . . . . . . . . . .  6

      A.   The Parties, Procedural History and Summary of the
           Claims. . . . . . . . . . . . . . . . . . . . .  6
      B.   Underlying Facts. . . . . . . . . . . . . . . .  8
      C.   The Arbitration Clause. . . . . . . . . . . . . 12

III.  STANDARD OF REVIEW. . . . . . . . . . . . . . . . . 14

IV.   DEFENDANT MEDQUIST AND TRANSCRIPTIONS MOTION TO DISMISS
      CLAIM 1 OF THE TAC AND TO COMPEL ARBITRATION. . . . . 15

V.    DEFENDANTS' MOTIONS TO DISMISS. . . . . . . . . . . 23

      A.   Plaintiffs' Fraud Claim Against MedQuist (Claim 2). 23

      B.   Plaintiffs' Demand for Accounting (Claim 3) and Claim
           for Unjust Enrichment (Claim 4). . . . . . . . . 28
           1.  MedQuist, Scarpone and Clark. . . . . . . . 29
           2.  Kearns and Suender. . . . . . . . . . . . . 30

      C.   Violation of the RICO Act (§1962(c))(Claim 5) and
           Conspiracy to Violate RICO ((§1962(d))(Claim 6)  . . 33
           1.  Violation of RICO (§1962(c))(Claim 5). . . . 34
               a.  MedQuist, Scarpone and Clark. . . . . . 34
                   i.   Existence of a RICO "Enterprise". . . 34
                   ii.  "Operations and Control" Allegations
                        . . . . . . . . . . . . . . . . . . 41
               b.  Kearns and Suender. . . . . . . . . . . 43
           2.  RICO Conspiracy Claim against Scarpone, Clark,
               Suender and Kearns (Claim 6). . . . . . . . 46
               a.  Scarpone and Clark. . . . . . . . . . . 47
               b.  Suender and Kearns. . . . . . . . . . . 49

      D.   Plaintiffs' Claims for Negligent Misrepresentation
           (Claims 7-11). . . . . . . . . . . . . . . . . . 51
           1.  Claims Against MedQuist (Claim 7). . . . . . 51
           2.  Claims Against Scarpone, Clark, Suender and Kearns
               (Claim 8, 9, 10, 11). . . . . . . . . . . . 56

E.    **Plaintiffs' Claims for Negligent Supervision (Claims 12-15)**. . . . . . . . . . . . . . . . . . . . . 57

F.    **Plaintiffs' Claims under the New Jersey Consumer Fraud Act and California Unfair Business Practices Act (Claim 16)**. . . . . . . . . . . . . . . . . . . . 60
    1.   **New Jersey Consumer Fraud Act**. . . . . . . . 61
    2.   **California Unfair Business Practice Act** . . . . 64

G.    **Plaintiffs' Class Allegations**. . . . . . . . . . . 66

VI.  **MEDQUIST'S MOTION FOR SANCTIONS**. . . . . . . . . . . . 69

VII. **CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . 73

**SIMANDLE**, District Judge:

## I.   INTRODUCTION

This matter is a complex civil action involving a putative class of hospitals asserting claims of fraud, negligent misrepresentation, negligent supervision, unfair business practices, a violation of the Racketeer Influenced and Corrupt Organizations Act, and other tort claims against MedQuist, Inc. ("MedQuist"), MedQuist Transcriptions, Ltd., (MedQuist's wholly-owned subsidiary and a transcription service company)(hereafter "Transcriptions") and four senior executive officers of either MedQuist or Transcriptions -- Ronald Scarpone, Michael Clark, John Suender, and Brian Kearns.[1]  Presently before the Court are

_____

[1]  MedQuist, Transcriptions, Scarpone, Clark, Suender, and Kearns shall be referred to collectively as the "Defendants," whereas MedQuist, Scarpone and Clark shall be referred to collectively as the "MedQuist Defendants."  Scarpone, Clark, Suender and Kearns shall be referred to collectively as the

five motions.  First, is a motion filed by MedQuist to dismiss
the first claim of the Third Amended Complaint ("TAC") (fraud in
the inducement of the arbitration clause) for failure to state a
claim upon which relief can be granted, to compel arbitration of
all claims by certain plaintiffs, and to stay the case pending
arbitration. [Docket Item No. 136].  Second, this Opinion will
address three motions to dismiss the TAC brought by: (1) the
MedQuist Defendants [Docket Item No. 135]; (2) Suender [Docket
Item No. 133], and (3) Kearns [Docket Item No. 134].  Finally,
this Opinion will address MedQuist and Transcriptions' motion for
Rule 11 sanctions. [Docket Item No. 111.]

   For the reasons discussed in Part IV, below, the Court will
not compel arbitration, finding instead that MedQuist has waived
its right to compel arbitration.  Because the Court finds that
MedQuist has waived this right, MedQuist's motion to dismiss
Claim 1 (fraud in the inducement) is moot.  Furthermore, the
Court will grant in part and deny in part the Defendants' motions
to dismiss the TAC as follows, as discussed in Part V, below:

   •   Claim 2 (fraud), the Court will deny MedQuist's motion
       to dismiss;

   •   Claim 3 (demand for accounting), the Court will deny
       the MedQuist Defendants' motions to dismiss but grant
       Defendants Suender and Kearns' motions to dismiss;

   •   Claim 4 (unjust enrichment), the Court will deny all
       Defendants' motions to dismiss;

---

"Individual Defendants."

5

- Claims 5 and 6 (RICO and RICO conspiracy), the Court will dismiss Plaintiffs' substantive RICO claims against MedQuist only and all other Defendants' motions to dismiss will be denied;

- Claims 7-11 and 12-15 (negligent misrepresentation and negligent supervision), the Court will grant all Defendants' motions to dismiss;

- Claim 16 (violation of the New Jersey Consumer Protection Act and California Unfair Business Practices Act), the Court will grant all Defendants' motions to dismiss.

Finally, the Court will grant MedQuist's motion for Rule 11 sanctions and admonish Plaintiffs' counsel for violating their Rule 11 duties to conduct adequate pre-filing due diligence, as set forth in Part VI, below.

## II. **BACKGROUND**

### A. **The Parties, Procedural History and Summary of the Claims**

Plaintiffs are six hospitals or hospital systems that claim to be among MedQuist's nearly 3,000 medical transcription customers. (TAC ¶ 3, 8-13.) Defendant MedQuist is the largest provider of medical transcription services in the United States and Transcriptions is MedQuist's wholly-owned subsidiary. (Id. at ¶ 31.) The four individual defendants are senior executive officers of either MedQuist, Transcriptions or both. Specifically, Ronald Scarpone is the former executive vice president of marketing and new business development at MedQuist. (Id. at ¶ 16.) Michael Clark is a senior vice president at

6

MedQuist responsible for three client service centers. (Id. at ¶ 19.) John Suender is the former executive vice president and chief legal officer of MedQuist and vice president of Transcriptions. (Id. at ¶ 17.) Brian Kearns is the former chief financial officer of both MedQuist and Transcriptions. (Id. at ¶ 18.)

On December 13, 2005, this Court ordered Plaintiffs to file the TAC. [Docket Item No. 126.][2] On January 4, 2006, Plaintiffs filed the TAC [Docket Item No. 131].[3] Defendants moved to dismiss all claims in the TAC for failure to state a claim [Docket Item Nos. 133-135], and MedQuist moved to dismiss Claim 1, to compel arbitration, and to stay the proceedings. [Docket Item No. 136.] Plaintiffs filed opposition [Docket Item Nos.

---

[2]    Previously, Plaintiffs filed their Complaint and then a First Amended Complaint in the Central District of California. Defendants moved to dismiss or, in the alternative, transfer the case to the District of New Jersey arguing that the action was not properly venued in California. While these motions were pending, Plaintiffs filed a Second Amended Complaint. On April 22, 2005, the Honorable Terry J. Hatter, Jr., U.S.D.J., issued an order granting MedQuist's request to transfer to the District of New Jersey.

[3]    In the TAC, Plaintiffs claim jurisdiction pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c) and supplemental jurisdiction over the state law claims brought by Plaintiffs under 28 U.S.C. § 1367 as the claims against MedQuist are related to the claims upon which the original jurisdiction is based. (TAC ¶ 20-21.) The TAC also states that Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of themselves and all other non-governmental hospitals and medical centers who were damaged by Defendants' fraudulent scheme. (Id. at ¶ 24-30.)

139-141, 143] to which Defendants timely replied. [Docket Item No. 146-149.]

The TAC contains sixteen claims.  In Claim 1, a subset of Plaintiffs (Childrens Hospital Los Angeles, NorthBay, and Partners HCS, who are collectively called the "Arbitration Plaintiffs") bring a claim for fraud in the inducement of the arbitration clauses in their transcriptions services agreement. (Claim 1, TAC ¶¶ 49-67.)  Second, Plaintiffs bring claims of fraud and negligent misrepresentation against MedQuist.  (Claims 2 and 7, TAC ¶¶ 68-75 and 109-116.)  Next, Plaintiffs bring claims for accounting, unjust enrichment and violation of state unfair and deceptive trade practices acts against all Defendants. (Claims 3, 4 and 16, TAC ¶¶ 76-83 and 177-181.)  Fourth, Plaintiffs bring an action for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962. ("RICO") and conspiracy to violate RICO against MedQuist, Scarpone, Clark, Suender and Kearns.  (Claims 5 and 6, TAC ¶¶ 84-108.)  Finally, Plaintiffs bring actions for negligent misrepresentation (Claims 8-11) and negligent supervision (Claims 12-15) against Scarpone, Suender, Kearns and Clark, individually. (TAC ¶¶ 117-159 and 160-177.)

**B.   Underlying Facts**

MedQuist is in the business of providing medical transcription services to hospitals and other healthcare

8

facilities throughout the United States and has provided
transcription services to all of the Plaintiffs.  (Id. at ¶ 31.)
According to the TAC, MedQuist's service involves several steps.
(Id. at ¶ 33.)  First, doctors at customer hospitals dictate
their reports in free form into a voice recorder that connects
via telephone with MedQuist.  (Id.)  The dictation is then
forwarded to a medical transcriptionist, who calls up a template
for the particular type of report being prepared, types the
formal report, and uploads it directly into the MedQuist computer
server.  (Id.)

This dispute centers on the billing practices used by
MedQuist for its transcription services.  According to
Plaintiffs, MedQuist, by using a number of different computer
programs, artificially inflated invoices for transcription
services.  (Id. at ¶ 34.)  According to the TAC, the MedQuist
billing terms varied depending upon the type of report produced.
(Id. at ¶ 36.)  For example, the contractual cost per line, word
or character of an operative medical report differed from the
cost per line, word or character of a discharge summary.  (Id.)
The definition of a "line" for purposes of determining costs was
set forth in many of MedQuist's contracts as sixty-five
characters, or sometimes specifically referred to as an "AAMT
line."  (Id.)  By way of example, according to an exemplary
contract between MedQuist and several Plaintiffs:

An AAMT line is defined as any line having 65 "characters." A character is defined as any letter, number, symbol or function key necessary for the final appearance and content of a document including, without limitation, the space bar, carriage return, underscore, bold and any characters contained within the macro, header, or footer. A defined line is calculated by counting all characters contained within a document and simply dividing the total number of characters by 65 to arrive at the number of defined lines. Client acknowledges that the charges set forth in this Agreement are based upon the fact that character counts shall be determined using Vendor's software system and shall not be derived from any third party software or interface system.

(Id. ¶ 37.) According to the TAC, MedQuist stopped using a computer program that accurately counted the characters in a transcript in 1998 at which point MedQuist "began utilizing various methods to inflate its counting," leading to "artificially inflated characters, which inflated the line counts, thereby inflating the invoice." (Id.)

According to Plaintiffs, a review of internal corporate mechanisms and operations will reveal that all Defendants were aware of this and other fraudulent methods of counting characters. (Id. ¶ 39.) In the TAC, Plaintiffs describe a number of methods MedQuist used in furtherance of its fraudulent scheme to inflate customer invoices. (Id. at ¶ 40-44.) Such methods include:

10

- Repeatedly and systematically counting the same letter as multiple characters;[4] (<u>Id.</u> ¶ 40.)

- Using percentages or ratios to multiply by the payroll count of the transcriptionist; (<u>Id.</u>)

- Counting "invisible" characters known as "print strings" that are embedded within the body of each report;[5] (<u>Id.</u> ¶ 41.)

- Adding between seven and ten percent to each invoice as an allocated cost for company overhead (with the charges hidden through artificial inflation of line counts); (<u>Id.</u> ¶ 42.)

- Charging for silent embedded characters within the transcribed reports not necessary for the appearance of the document (e.g. headers, footers, and additional "silent" characters within the test); (<u>Id.</u> ¶ 43.)

- For Plaintiffs that were billed on a per report basis, calculating a per report rate for a Plaintiff based upon a previously inflated line, word or character count (thereby increasing the average report basis); (<u>Id.</u> ¶ 44.)

- Charging some Plaintiffs for each and every template (a special format within the MedQuist software program where a report is placed) by once again artificially increasing the line count charge on each invoice. (<u>Id.</u> ¶ 44.)

In addition to fraudulent billing practices, Plaintiffs

allege that Defendants employed a system to prevent Plaintiffs

from discovering the fraudulent billing practices used by

MedQuist by (1) refusing to break down the costs charged and (2)

---

[4] According to the TAC, MedQuist would count a character once for the actual letter, then again if the letter was capitalized, then against if the letter was underlined, then again if the letter was bolded, then again for turning the capital letter designation on and then off and for a space before and after the word. (<u>Id.</u> ¶ 40.)

[5] Print strings are software characters that instruct a computer where to send the report within the word processing system. (<u>Id.</u>)  All invoices were sent without any breakdown. (<u>Id.</u>)

refusing to provide customers with line counts (claiming that this information was "proprietary"). (<u>Id.</u> ¶ 46.) Further, Plaintiffs allege that MedQuist submitted artificially inflated invoices to Plaintiffs on a bi-weekly basis by mailing or faxing the invoices and that Plaintiffs unwittingly paid these fraudulent invoices. (<u>Id.</u>)

     **C.  The Arbitration Clause**

The Arbitration Plaintiffs each executed transcription services contracts with MedQuist that include broad arbitration provisions in which the Arbitration Plaintiffs agreed to arbitrate all disputes involving invoices (among other things). (TAC ¶¶ 50-67.) An exemplar contract contains the following arbitration provision:

> In the event that the parties are unable to resolve such dispute [concerning the amounts invoiced by MedQuist] within fifteen (15) days of entering into negotiations, the dispute shall be settled by arbitration in accordance with the commercial arbitration rules of the American Arbitration Association. Arbitration shall be conducted in the jurisdiction of the principal headquarters of the party not raising the dispute. The decision reached through arbitration shall be final and binding on both parties. This [provision] shall also apply to any other dispute between the parties.

(Def's Arbitration Br. at 2, Ex. B, Declaration of Maureen Nelson ¶ 4.). Thus, the Arbitration Plaintiffs agreed that any dispute between the parties would be subject to arbitration in accordance with the commercial arbitration rules of the American Arbitration Association.

According to the TAC, when negotiating contracts with the
Arbitration Plaintiffs, MedQuist required that each contract
contain an arbitration clause.  (<u>Id.</u> ¶ 50.)  Plaintiffs allege
that MedQuist, however, did not disclose in negotiations that the
primary purpose for requiring arbitration was not to arbitrate
disputes in good faith, but to restrict access to billing
methodology, minimize the likelihood of a public trial, and to
prevent the Arbitration Plaintiffs from obtaining information
that would otherwise be available to them under the liberal
discovery procedures used by the courts.  (<u>Id.</u>)  The Arbitration
Plaintiffs specifically point to Defendant Suender as one of the
Defendant who insisted that such arbitration clauses be included
in transcription services contracts.  (<u>Id.</u> ¶ 51.)

Plaintiffs also allege that MedQuist and Suender
misrepresented to Plaintiffs the material terms of the
arbitration clause.  (<u>Id.</u> ¶ 52.)  Specifically such
misrepresentations included terms in which MedQuist agreed to
promptly deliver to the Arbitration Plaintiffs "any backup or
other information which supports the correctness of such disputed
amounts" and "immediately and in good faith negotiat[e] to
resolve any remaining dispute" as MedQuist (1) refused to provide
backup information and (2) never entered into good faith
negotiation to resolve disputes and never intended to do so.
(<u>Id.</u>)  Further, with respect to representations made regarding

13

the availability of backup materials, the Arbitration Plaintiffs allege that MedQuist knew that no backup information existed and in reliance on MedQuist's representations, Children's Hospital, Northbay, and Partners HCS executed agreements on July 1, 2001, September 17, 2002, and November 1, 2002, respectively.

### III.  <u>STANDARD OF REVIEW</u>

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  A district court must accept any and all reasonable inferences derived from those facts.  <u>Unger v. Nat'l Residents Corp. v. Exxon Co., U.S.A.</u>, 761 F. Supp. 1100, 1107 (D.N.J. 1991).  Further, the court must view all allegations in the complaint in the light most favorable to the plaintiff.  <u>See</u> <u>Scheuer</u>, 416 U.S. at 236; <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).

It is not necessary for the plaintiff to plead evidence, and it is not necessary to plead the facts that serve as the basis for the claim.  <u>Bogosian v. Gulf Oil Corp.</u>, 561 F.2d 434, 446 (3d Cir. 1977).  When a motion to dismiss is before the court, the question is not whether plaintiff will ultimately prevail; rather, it is whether a plaintiff can prove any set of facts in support of its claims that would entitle it to relief.

14

<u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).  Therefore, in deciding a motion to dismiss, a court should look to the face of the complaint and decide whether, taking all of the allegations of fact as true and construing them in a light most favorable to the nonmovant, plaintiff's allegations state a legal claim. <u>Markowitz v. Northeast Land Co.</u>, 906 F.2d 100, 103 (3d Cir. 1990).

   While the court is required to take all of the allegations of fact as true, the court is "not required to credit bald assertions or legal conclusions alleged in the complaint."  <u>Jones v. Intelli-Check, Inc.</u>, 274 F. Supp. 2d 615, 625 (D.N.J. 2003). In particular, when a motion to dismiss involves an action for fraud, "a plaintiff may not rely merely on conclusory statements," but must instead "indicate at the very least who made the material representation giving rise to the claim and what specific representations were made" to comply with Fed R. Civ. P. 9(b).  <u>NN&R, Inc. v. One Beacon Ins. Group.</u>, 362 F. Supp. 2d 514, 518 (D.N.J. 2005).

## IV.   <u>DEFENDANT MEDQUIST AND TRANSCRIPTIONS MOTION TO DISMISS CLAIM 1 OF THE TAC AND TO COMPEL ARBITRATION</u>

   The Arbitration Plaintiffs each have a written transcription services contract with MedQuist in which these plaintiffs have agreed to arbitrate all claims they assert against MedQuist.  MedQuist argues that this Court must compel arbitration and order the Arbitration Plaintiffs to proceed to

15

arbitration on all claims against MedQuist.  MedQuist also seeks
an order staying the case in its entirety pending the resolution
of arbitration.  Plaintiffs attack the validity of the
arbitration clauses by arguing (and have alleged as much in Claim
1 of the TAC) that the Arbitration Plaintiffs were fraudulently
induced into agreeing to arbitrate.[6]  In the alternative,
Plaintiffs argue that MedQuist, by taking certain action that
prejudiced Plaintiffs, has waived its right to compel
arbitration.

Before a court can compel arbitration of a claim, the
court must conduct a two-step inquiry to determine if the dispute
is arbitrable.  The court must determine (1) whether a valid
agreement to arbitrate exists and (2) whether the scope of the
agreement covers the present dispute.  Upon being satisfied that
a valid agreement exists and that the dispute is covered by the
arbitration clause, the court shall order the parties to proceed
to arbitration in accordance with the terms of the agreement.
See Federal Arbitration Act, 9 U.S.C. § 3; Trippe Mfg. Co. v.

---

[6]  The Arbitration Plaintiffs allege that, in negotiating
their transcription services contracts with the Arbitration
Plaintiffs, MedQuist insisted that an arbitration clause be
inserted into the contract and that the primary purpose of this
clause was to "restrict access to the counting and billing
methodology, to minimize the likelihood of a public trial in any
court, and to prevent [the Arbitration Plaintiffs] from obtaining
information which may otherwise be available to them through the
adjudicative process . . . ."  (TAC ¶ 50.)  In addition,
Plaintiffs allege that MedQuist also made several
misrepresentations regarding how MedQuist will deliver backup and
other information regarding disputed invoices.  (Id. ¶¶ 51-65.)

<u>Niles Audio Corp.</u>, 401 F.3d 529, 532 (3d Cir. 2005); <u>PaineWebber,</u>
<u>Inc. v. Hartmann</u>, 921 F.2d 507, 511 (3d Cir. 1990).  The focus of
the court's inquiry is on the validity and scope of the
arbitration clause, rather than the contract as a whole.  <u>Prima</u>
<u>Paint Corp. v. Flood & Conklin Mfg. Co.</u>, 388 U.S. 395 (1967);
<u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 546 U.S. 440 (2005).

Here, the Court finds that, even if a valid agreement to
arbitrate were found to exist (i.e., that the Arbitration
Plaintiffs were not fraudulently induced into entering into the
agreement to arbitrate), MedQuist has waived its rights to compel
arbitration of these claims.  Because the Court finds that
MedQuist waived its right to compel arbitration, MedQuist's
motion to dismiss Claim 1 of the TAC (fraud in the inducement) is
now moot and the Court need not address it.

This Court is aware that a waiver of the right to compel
arbitration is "not to be lightly inferred" because of the strong
federal policy in favor of arbitrability.  <u>Great Western Mtg.</u>
<u>Corp. v. Peacock</u>, 110 F.3d 222, 232 (1997); <u>Barbour v. CIGNA</u>
<u>HealthCare of N.J., Inc.</u>, 2003 U.S. Dist. LEXIS 26214, at *14-17
(D.N.J. Mar. 4, 2003); <u>NN&R, Inc. v. OneBeacon Ins. Group</u>, 2006
U.S. Dist. LEXIS 3573, *8-14 (D.N.J. Jan. 30, 2006).  Indeed, the
Supreme Court requires that "any doubts concerning the scope of
arbitrable issues should be resolved in favor of arbitration,
whether the problem at hand is the construction of the contract

17

language or an allegation of waiver, delay, or a like defense to arbitrability." <u>Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983).

However, "courts have not hesitated to hold that the right to arbitrate has been waived under [certain] circumstances." <u>Hoxworth v. Blinder, Robinson & Co.</u>, 980 F.2d 912, 926 (3d Cir. 1992). Such circumstances include "when the parties have engaged in a lengthy course of litigation, when extensive discovery has occurred, and when prejudice to the party resisting arbitration can be shown." <u>Great Western Mtg. Corp.</u>, 110 F.3d at 233. The showing of prejudice is the "touchstone" for determining whether the right to arbitration has been waived and the relevant inquiry is the extent of the litigation and discovery that the parties engaged in as well as:

> the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims; whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings; the extent of its non-merits motion practice; its assent to the district court's pretrial orders; and the extent to which both parties have engaged in discovery.

<u>PaineWebber Inc.</u>, 61 F.3d at 1069 n. 4. Waiver will "normally be found only where the demand for arbitration came long after suit commenced" because that is when prejudice can be shown by the party that has expended time, effort, and money prosecuting a case under the discovery rules in the Federal Rules of Civil Procedure which are unavailable in the arbitral forum. <u>Id.</u> at

18

1068. "Merely answering on the merits, asserting a counterclaim (or cross-claim) or participating in discovery, without more," is generally not enough to constitute waiver. Id. at 1069 (quoting Hoxworth, 980 F.2d at 925).

In this case, a finding of waiver is appropriate. First, like the defendants in Hoxworth, MedQuist has allowed nearly sixteen months to pass between the commencement of the suit (September 9, 2004) and when MedQuist first moved to compel arbitration (January 20, 2006).[7]  [Docket Item No. 136.] MedQuist's delay in moving to compel is all the more perplexing when one considers that MedQuist was on notice -- from as early as the filing of the original complaint and First Amended Complaint -- that Plaintiffs' transcription services agreements contained arbitration clauses and that Plaintiffs were alleging fraud in the inducement of the arbitration clauses.  (See Complaint ¶¶ 3(a), 34, and 38-47 and First Amended Complaint ¶¶ 4(a), 37, 41-50.)

---

[7]  The Court notes that, on August 31, 2005, MedQuist moved to dismiss the Second Amended Complaint both on the merits [Docket Item No. 93] and in favor of arbitration. [Docket Item No. 92.] In MedQuist's motion to dismiss in favor of arbitration however, MedQuist did not seek to compel arbitration.  In fact, MedQuist's brief in support of its motion to dismiss in favor of arbitration expressly states that MedQuist was not seeking to compel arbitration in the motion to dismiss. [Docket Item No. 92, p. 23 ("However, in the present case, defendants have not moved to compel arbitration, and plaintiffs have not indicated whether they intend to pursue arbitration should the Court grant the present Motion.")(emphasis added)].  This strategy implies a tactical decision in 2005 to not assert an arbitration right.

Second, prior to filing its motion to compel arbitration on January 20, 2006, MedQuist's actions did not indicate an intent to compel arbitration.  To the contrary, the fact that MedQuist engaged in extensive motion practice (filing seven motions and answering the Second Amended Complaint prior to filing its motion to compel arbitration) and indicated in correspondence the decision to reserve filing a motion to compel, demonstrates MedQuist's tactical decision to forego arbitration pending litigation on the merits through its dismissal motions. MedQuist's motion practice on the merits started while the case was still venued in the Central District of California when, on December 20, 2004, Defendants filed three motions: (1) a motion to dismiss Plaintiffs' complaint for lack of personal jurisdiction; (2) a motion to dismiss for failure to state a claim for which relief could be granted; and (3) a motion to dismiss or, in the alternative, transfer venue to the District of New Jersey.  On August 17, 2005, MedQuist filed a motion to stay to which Plaintiffs replied on September 2, 2005.[8]  Also in August of 2005, MedQuist again moved to dismiss, filing a motion to dismiss for failure to state a claim and a second motion to dismiss in favor of arbitration (but not seeking to compel

---

[8]  MedQuist's motion to stay, filed on August 17, 2005, was followed closely by MedQuist's two motions to dismiss, filed August 31, 2005, forcing Plaintiffs to resist both the motion to stay and motions to dismiss simultaneously.  Undoubtably, this lead to Plaintiffs incurring greater costs associated with motion practice.

arbitration, see footnote 7, supra).  Finally, on November 8,
2005, MedQuist filed a motion for Rule 11 sanctions (on November
8, 2005).  The Defendants also answered the Second Amended
Complaint on August 1, 2005.

        MedQuist and Plaintiffs corresponded numerous times
beginning in December of 2004 when MedQuist's counsel wrote to
Plaintiffs informing them that MedQuist planned to file three
motions to dismiss but made no mention of arbitration.  (Hogge
Decl. at ¶ 5 and Ex. A, Letter from Neal R. Marder, Esq. of
12/13/04).  In email correspondence, counsel for MedQuist
mentioned that they had made a tactical decision to reserve
moving to compel arbitration until after the court has ruled on
the merits of MedQuist's motion to dismiss.  (Id., Email from
Gail Standish, Esq. dated 3/7/05).  Specifically, counsel for
MedQuist stated that it was MedQuist's plan:

> [T]o file a motion to dismiss all claims in the present
> complaint [the SAC] . . . .  The other potential motion
> I'd like to discuss would be to stay any claims that
> remain after our motions to dismiss are decided, and to
> compel arbitration.  As this motion would not be filed
> until after a decision on the anticipated motions to
> dismiss, we will have additional time to meet and confer.

(Id.)  The parties also had a conference and discovery hearing on
June 20, 2005 before U.S. Magistrate Judge Joel B. Rosen but
there was no indication from MedQuist that they planned to move
to compel arbitration.

Third, MedQuist's failure to timely move to compel arbitration has been costly to Plaintiffs. Plaintiffs have devoted substantial amounts of time, effort and money into prosecuting this action.  The parties have engaged in expensive and lengthy motion practice and Plaintiffs defended seven motions before MedQuist filed its motion to compel arbitration. Moreover, in conjunction with MedQuist's motion to compel arbitration in January of 2006, Plaintiffs also had to defend against a motion to dismiss Plaintiffs' claims on the merits.

Like the plaintiffs in Hoxworth, Plaintiffs here have been prejudiced by MedQuist's failure to raise arbitration promptly. See 980 F.2d at 926.  MedQuist's demand for arbitration comes long after the suit was commenced.  Furthermore, in making their tactical decision to defer moving to compel arbitration, MedQuist has availed itself of the jurisdiction of the federal courts and has twice attempted to test the sufficiency of Plaintiffs pleadings.  MedQuist was put on notice from the time the original Complaint was filed that at least some Plaintiffs were subject to arbitration clauses but proceeded to conduct extensive and costly motion practice prior to moving to compel.  As such, this Court finds that, although waiver is generally not favored, MedQuist waived its right to compel arbitration here through both the operation of its own tactical choice and the unfolding of all attendant circumstances.

22

## V.    DEFENDANTS' MOTIONS TO DISMISS

### A.    Plaintiffs' Fraud Claim Against MedQuist (Claim 2)

In Claim 2 of the TAC, Plaintiffs allege that MedQuist carried out a scheme to defraud Plaintiffs by artificially inflating invoices for transcription services.  (TAC ¶ 69.) Specifically, Plaintiffs allege that MedQuist conducted this fraudulent scheme knowingly and intentionally and that Plaintiffs were unaware of the scheme because the fraudulent nature of the artificially inflated invoices was not apparent on the face of the invoices and Plaintiffs reasonably relied on the accuracy of the invoices.  (Id. at ¶¶ 70-72.)

MedQuist argues that Plaintiffs' fraud claim fails as a matter of law because it does not satisfy the heightened pleading requirements of Rule 9(b), Fed. R. Civ. P.  According to MedQuist, for Plaintiffs to satisfy Rule 9(b), the TAC must allege either the "date, place and time" of the fraud or provide alternative facts to "inject[] precision and some measure of substantiation" into the averments of fraud.  Lum v. Bank of America, 361 F.3d 217, 224 (3d Cir. 2004).  This means that, at a minimum, a plaintiff would be required to indicate "which defendant(s) made misrepresentations to which plaintiffs."  Id. According to MedQuist, virtually none of the allegations refer to fraudulent acts or misrepresentations directed at any one named Plaintiff.  Instead, Plaintiffs allege that MedQuist's fraudulent

23

conduct affected the general category of "Plaintiffs" or "Plaintiffs and the Class." (Id.)  In response, Plaintiffs argue that this Court must approach Plaintiffs' fraud claims with a more relaxed and pragmatic approach than is generally required under Rule 9(b) because a relaxation of this standard is warranted in cases of corporate fraud where the defendant has certain factual information solely within its control.  Under this more relaxed standard, Plaintiffs' fraud allegations provide enough specifics to put MedQuist on notice of the nature and circumstances of the claims against them.

When pleading a claim of fraud, a plaintiff must plead "the circumstances constituting fraud or mistake . . . with particularity."  Fed. R. Civ. P. 9(b).  A plaintiff is not required to "plead the 'date, place or time' of the fraud, so long as plaintiff uses an alternative means of injecting precision and some measure of substantiation into their allegations."  Rolo v. City Inv. Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998) (quoting Seville Indus. Machinery v. Southmost Machinery, 742 F.2d 786, 791 (3d Cir. 1984)).  To meet this standard, the subject and nature of each misrepresentation must be adequately pled.  See Seville Indus. Machinery, 742 F.2d at 791.[9]  A court must apply the heightened pleading standards of

---

[9]  In Seville, the Third Circuit held that plaintiffs satisfied Rule 9(b) by incorporating into their complaint a specific list of machine parts involved in the fraud, as well as describing the transactions that involved these parts.  See

Rule 9(b) in accordance with the rule's underlying purpose -
namely (a) to put the defendant on notice of the precise
misconduct surrounding the allegation of fraud asserted against
it and (b) to guard against "spurious charges of immoral or
fraudulent behavior." See id. at 791; see also Lum, 361 F.3d at
224; New Jersey Sports Prod., Inc. v. Don King Prod., Inc., 1997
U.S. Dist. LEXIS 23209 at *42 (D.N.J. October 28, 1997)(holding
that "[t]he central inquiry . . . is whether the complaint is
sufficiently precise to place the defendant on notice . . .
.")(emphasis added).

The Third Circuit has relaxed the heightened standards for
pleadings under Rule 9(b) in the case of corporate fraud. See In
re Craftmatic Sec. Litig., 890 F.2d 628, 645 (3d Cir. 1989);
Shapiro v. UJB Financial Corp., 964 F.2d 272, 284 (3d Cir. 1992).
While the rule established in Craftmatic was forged with respect
to a securities fraud case, the same purpose -- to prevent
sophisticated defrauders from successfully concealing the details
of their fraud -- is equally applicable in instances of corporate
fraud. Id. To this end, the Craftmatic court held that "courts
have relaxed the rule when factual information is peculiarly
within the defendant's knowledge or control." Id. (citing Moore

---

Seville, 742 F.2d at 791. The court concluded that the heightened
pleading requirement was met because the complaint "sets forth
[i] the nature of the alleged misrepresentations, and [ii] while
it does not describe the precise word used, each allegation of
fraud adequately describes the nature and subject of the alleged
misrepresentation." Id.

<u>v. Kayport Package Express, Inc.</u>, 885 F.2d 531, 540 (9th Cir. 1989)). The pleader, however, must (1) allege that the necessary information lies within the defendant's control and (2) the allegations must be accompanied by a statement of the facts upon which the allegations are based. <u>Id.</u>; <u>see</u> <u>In Re: Midlantic Corp. Shareholder Litig.</u>, 758 F. Supp. 226, 232 (D.N.J. 1990). Finally, courts in this District have held that "when the transactions are numerous and take place over an extended period of time, less specificity in pleading fraud is required . . . ." <u>Kronfeld v. First Jersey Nat'l Bank</u>, 638 F. Supp. 1454, 1465 (D.N.J. 1986).

In the present case, Plaintiffs have met the Rule 9(b) pleading standards. The TAC asserts that the "specific internal corporate mechanisms and operations by which Defendants carried out the Fraudulent Scheme, and the specific activities engaged in by Defendants in furtherance of the Fraudulent Scheme, are within the exclusive knowledge and understanding of those with MedQuist." (TAC ¶ 39.) Moreover, Plaintiffs allege that, without any breakdown for the costs charged in Plaintiffs' bi-monthly invoices, the inflation of the invoices was "not apparent on the face of the invoices themselves." (<u>Id.</u> ¶ 71.) Also, under <u>Kronfeld</u>, the fact that Plaintiffs were invoiced on a bi-weekly basis and MedQuist's allegedly fraudulent activity took

26

place over a period of five years weighs in favor of this Court relaxing the heightened pleading standards of Rule 9(b).

Plaintiffs' pleadings are satisfactory as they function to put MedQuist on notice of the specific fraud claims asserted against it. The TAC provides details about how MedQuist generated inflated invoices, how the invoices were upcharged and how Plaintiffs were invoiced by MedQuist. (TAC ¶¶ 31-48, 68-74.) The TAC also contains allegations regarding how the inflated invoices were delivered (by fax or mail) and how Plaintiffs, being unable to verify the accuracy of the invoices, unwittingly paid them. (Id. ¶¶ 31-48, 68-74.) Such detailed allegations are sufficient to satisfy Rule 9(b).

MedQuist cites Rolo v. City Inv. Co. Liquidating Trust, supra, for the proposition that this Court must dismiss Plaintiffs' fraud claim against MedQuist. According to MedQuist, the present case is similar to Rolo, in which the Third Circuit concluded that a complaint failed to meet the Rule 9(b) standard because it lacked "any specific allegations about the [fraudulent] presentations made to any of the named plaintiffs." Id., 155 F.3d at 658. Similarly, according to MedQuist, Plaintiffs have made no allegations as to what happened to any named Plaintiffs. The Court finds Rolo distinguishable from the present situation, however. In Rolo, the plaintiffs failed to specifically allege whether any misrepresentations were made to

27

the plaintiffs, instead alleging what "typically" happened to "most purchasers." Id. at 659. Here, while Plaintiffs have not alleged which of the ten fraudulent activities were done to which of the six Plaintiffs, Plaintiffs have alleged that MedQuist carried out its Fraudulent Scheme against all Plaintiffs in some or all of these ways. (TAC ¶ 69.) Given that knowledge of the specific application of these fraudulent billing mechanisms is alleged to be peculiarly within Defendants' control, and having cited numerous examples of the deceptive overbillings, this is sufficient to satisfy Rule 9(b).

Accordingly, the Court will deny MedQuist's motion to dismiss Claim 2 of the TAC.

**B.** **Plaintiffs' Demand for Accounting (Claim 3) and Claim for Unjust Enrichment (Claim 4)**

In Claim 3 of the TAC, Plaintiffs allege Defendants knew of the existence of corporate records that indicate the amounts Defendants unlawfully obtained due to the fraudulent scheme perpetrated by Defendants. Plaintiffs have demanded that MedQuist reveal its complete corporate records so that a fair accounting can be made of profits derived from upcharging. (Id. ¶ 77.) According to Plaintiffs, Defendants have rebuffed previous demands for an accounting by Plaintiffs. (Id. ¶ 78.) In Claim 4, Plaintiffs allege that Defendants were improperly and unjustly enriched by payments received from Plaintiffs based on

28

wrongful and fraudulent invoices for transcription services
rendered.

### 1. **MedQuist, Scarpone and Clark**

The MedQuist Defendants argue that Plaintiffs' claim for
accounting is barred. According to the MedQuist Defendants, an
accounting is an equitable remedy that is only available when a
remedy at law is not available. In addition, the MedQuist
Defendants argue that Plaintiffs have not alleged the
circumstances that would entitle them to an accounting, namely,
that the complicated nature of the accounts between the parties
requires as much. Third, the MedQuist Defendants argue that
Plaintiffs cannot proceed with an unjust enrichment claim.
Unjust enrichment, according to the MedQuist Defendants, is a
quasi-contract claim. Plaintiffs have plead the existence of an
express contract between each Plaintiff and MedQuist and/or
Transcriptions; and Defendants argue that the existence of an
express contract precludes a claim under quasi-contract. <u>See
Moser v. Milner Hotels, Inc.</u>, 6 N.J. 278, 280 (1951).

At this stage in the litigation, the Court will allow
Plaintiffs' equitable claims for an accounting and unjust
enrichment to go forward against the MedQuist Defendants.
Plaintiffs are simply taking advantage of the fact that Rule
8(e)(2), Fed. R. Civ. P. allows a plaintiff to plead in the
alternative. <u>Id.</u> Decisions from this District and others have

reiterated this point.  See In re K-Dur Antitrust Litig., 338 F.
Supp. 2d 517, 544 (D.N.J. 2004)(plaintiffs "are clearly permitted
to plead alternative theories of recovery," including unjust
enrichment and parallel remedies at law); see also U.S. v.
Kensington Hosp., 760 F. Supp. 1120, 1135 (E.D. Pa. 1991)(finding
dismissal of unjust enrichment claim premature where federal
rules allow pleading alternative theories of recovery).  As such,
MedQuist's motion to dismiss Plaintiffs' demand for an accounting
and unjust enrichment claim will be denied.

### 2.   Kearns and Suender

Kearns and Suender each raise an additional argument for
dismissal of Plaintiffs' demand for an accounting.  Specifically,
Kearns and Suender argue that, as former employees of MedQuist,
they do not have access to the records and in fact never had
possession, custody or control of such records.  This being the
case, this Court could issue no order directing Kearns or Suender
to provide the requested accounting.  In addition, Kearns and
Suender argue that Plaintiffs (1) cannot bring a claim for unjust
enrichment if a contract exists and (2) that Plaintiffs have not
alleged that Plaintiffs never conferred a benefit on them and
thus, there is no benefit that it would be unjust for either of
them to retain.  Specifically, Kearns and Suender argue that even
if Plaintiffs invoices were inflated, Plaintiffs have not and
cannot claim that any of the alleged overpayments were paid to

30

either individual.  In opposition, Plaintiffs argue only that
Kearns and Suender's arguments are premature and improper in a
12(b)(6) analysis.

The Court agrees with Kearns and Suender and will dismiss
Plaintiffs' demand for an accounting against these defendants.
Plaintiffs have failed to plead that either Kearns or Suender
have access to the records Plaintiffs seek or in fact ever had
possession, custody or control of the records -- all of which are
necessary elements of a claim for the equitable relief of an
accounting.  MedQuist and Transcriptions (the corporate
defendants) and not Kearns and Suender (the former officers) are
the proper defendants for this claim.  In fact, the TAC states
specifically that "Plaintiffs have demanded that MedQuist reveal
its complete corporate records" regarding the fraudulent scheme.

The Court, however, does not agree with Suender and Kearns
that Plaintiffs' unjust enrichment claim must be dismissed.  Rule
8(a) of the Federal Rules of Civil Procedure requires only notice
pleading or a "short and plain statement of the claim showing
that the pleader is entitled to relief." Fed. R. Civ. P. 8(a);
see In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256,
270 (3d Cir. 2006).  The Supreme Court has made clear that Rule
8(a) does not demand fact pleading nor that Plaintiffs' legal
theories be set out in particularity. Swierkiewicz v. Sorema,
N.A., 534 U.S. 506, 512 (2002); Weston v. Penn., 251 F.3d 420,

31

428-30 (3d Cir. 2001).  Instead, Rule 8 requires only that a complaint "provide fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Weston, 251 F.3d at 429 (quoting Conley v. Gibson, 355 U.S. 41, 47-78 (1957)).

First, Suender and Kearns' arguments rest on the presumption that a valid contract exists between MedQuist and Plaintiffs and that Plaintiffs cannot recover for unjust enrichment if a contract exists.  The TAC, however, does not allege that a valid contracts exist; rather, the TAC alleges that the process of negotiating the contracts was so fraught with fraud, that no contracts were formed.  In addition, Suender's and Kearns' arguments that Plaintiffs have failed to plead that either defendant personally retained any benefit from the fraudulent scheme that would be unjust for them to retain is unavailing.  Under the lenient standard of Rule 8, it is clear that dismissal under Fed. R. Civ. P. 12(b)(6) would be inappropriate as Plaintiffs have alleged that Defendants (including Suender and Kearns) "have been unjustly enriched at the expense of Plaintiffs and the Class" as a result of their participation in the fraudulent scheme.  Presently, that is all that Plaintiffs are required to do.

Thus, as to Suender and Kearns, Plaintiffs' demand for an accounting will be dismissed but Plaintiffs' claim for unjust enrichment will be allowed to proceed.

### C. Violation of the RICO Act (§ 1962(c))(Claim 5) and Conspiracy to Violate RICO ((§ 1962(d))(Claim 6)

In Claims 5 and 6 of the TAC, Plaintiffs allege that all of the Defendants (except Transcriptions) violated the RICO statute (18 U.S.C. § 1962(c)) and engaged in a conspiracy to violate RICO (18 U.S.C. § 1962(d)). (TAC ¶¶ 84-100). Specifically, Plaintiffs claim that MedQuist, Clark, Scarpone, Suender and Kearns are each RICO "persons" under § 1961(3), (see TAC ¶ 86), and that MedQuist and Transcriptions together formed an ongoing and continuing association-in-fact that served as the RICO "enterprise" under § 1961(4) (referred to as the "MedQuist enterprise"). (TAC ¶ 87.) According to the TAC, over a five-year period, these Defendants used the MedQuist enterprise to artificially inflate invoices for transcription services to Plaintiffs. (TAC ¶¶ 89-100). The RICO predicate acts included sending invoices via fax (constituting wire fraud in violation of 18 U.S.C. § 1343) and through the U.S. mail (constituting mail fraud in violation of 18 U.S.C. § 1341). (Id. ¶¶ 89-93.) According to the TAC, Defendants' actions constituted "racketeering activity" and collectively, constituted a "pattern of racketeering activity." 18 U.S.C. § 1961(1), (5).

Section 1962(c) makes it unlawful for:

> any person employed by or associated with any enterprise
> engaged in, or the activities of which affect, interstate
> or foreign commerce, to conduct or participate, directly
> or indirectly, in the conduct of such enterprise's

affairs through a pattern of racketeering activity or
collection of unlawful debt.

18 U.S.C. § 1962(c).  To plead a RICO violation, a plaintiff

"must allege (1) conduct (2) of an enterprise (3) through a

pattern (4) of racketeering activity."  Lum, 361 F.3d at 223.

Thus, under § 1962(c), Plaintiffs must plead: (1) the existence

of an enterprise affecting interstate commerce; (2) that the

defendant was employed by or associated with the enterprise; (3)

that the defendant participated, either directly or indirectly,

in the conduct or the affairs of the enterprise; and (4) that he

or she participated through a pattern of racketeering activity."

United States v. Eraser, 341 F.3d 273, 285 (3d Cir. 2003).

### 1.  Violation of RICO (§ 1962(c))(Claim 5)

#### a.  MedQuist, Scarpone and Clark

The MedQuist Defendants advance two arguments for dismissal

of Plaintiffs' RICO claims.

##### i.  Existence of a RICO "Enterprise"

First, the MedQuist Defendants argue that Plaintiffs failed

to properly plead the existence of a RICO enterprise.  A proper §

1962(c) claim must allege "the existence of two distinct

entities: (1) a 'person'; and (2) an 'enterprise' that is not

simply the same 'person' referred to by a different name."

Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161

(2001).  According to the MedQuist Defendants, Plaintiffs' RICO

claim against MedQuist fails because Plaintiffs have failed to

34

plead that the RICO "person" (MedQuist) is sufficiently distinct from the RICO "enterprise" (an association-in-fact between MedQuist and its wholly-owned subsidiary Transcriptions).[10] Plaintiffs counter that Defendants have confused what must be plead at the pleadings stage with what Plaintiffs must prove at trial.  At the motion to dismiss stage, according to Plaintiffs, Plaintiffs need only identify the entities it believes constitute the RICO enterprise and RICO person.  Moreover, according to Plaintiffs, a RICO "enterprise" is defined broadly under the RICO statute[11] and Third Circuit law allows a plaintiff to plead a parent-subsidiary as the components of an "association-in-fact."

The Third Circuit has an extensive jurisprudence regarding what constitutes sufficient distinction between a RICO "person" and a RICO "enterprise."  In B.F. Hirsch v. Enright Ref'g Co., 751 F.2d 628, 633 (3d Cir. 1984), the Third Circuit held that the defendant "person" charged with violating § 1962(c) cannot be the same entity as the alleged "enterprise."  The defendant in Enright, therefore could not simultaneously be both the defendant and the enterprise, because it would be illogical to say that a

---

[10]  The Court notes that the MedQuist Defendants argue only that Plaintiffs' RICO claims against MedQuist must be dismissed on these grounds.  The MedQuist Defendants make no mention of this Court dismissing Clark and Scarpone on these grounds.

[11]  An enterprise includes "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact, though not a legal entity."  18 U.S.C. § 1961(4)).

corporation was employed by or associated with itself.  Id. at
633.  In Brittingham v. Mobil Corp., 943 F.2d 297, 302-03 (3d
Cir. 1991), the court upheld a district court's dismissal on Rule
12(b)(6) grounds due to lack of distinctiveness in which a parent
corporation was the RICO "person" and its subsidiary the alleged
"enterprise."

However, in Lorenz v. CSX Corp., 1 F.3d 1406, 1412-13 (3d
Cir. 1993), the court recognized that "it is still theoretically
possible for a parent corporation to be the 'person' and its
subsidiary to be the 'enterprise' . . . [but] the plaintiff must
plead facts which, if assumed to be true, would clearly show that
the parent corporation played a role in the racketeering activity
which is distinct from the activities of the subsidiary."
Further, the Lorenz court held that a RICO claim under Section
1962(c) "is not stated where the subsidiary merely acts on behalf
of, or to the benefit of, its parent."  Id. at 1412.  In Lorenz,
in which the parent and grandparent corporations were the
defendant and the subsidiary the enterprise, the court ultimately
concluded that the plaintiffs failed to allege sufficient facts
to show that the grandparent and parent were distinct entities
from the alleged enterprise consisting of their subsidiary.  Id.
This was due, in part, to the fact that the alleged frauds which
constituted the RICO predicate acts "[were] described as being
committed by both the parent and subsidiary corporation . . .

36

[therefore] undercut[ting] plaintiff's theory that the corporate defendants are distinct from the enterprise consisting of their subsidiary." Id. For purposes of Section 1962(c), the court held that there was not sufficient distinctiveness between the "person" and "enterprise." Id.

In a case with a factual scenario very similar to the present case, the Third Circuit held that a corporation generally cannot be a RICO "person" under Section 1962(c) and conduct an "enterprise" consisting of the corporation itself in association with its subsidiaries or employees. Gasoline Sales, Inc. v. Aero Oil Co., 39 F.3d 70, 73 (3d Cir. 1994). In Gasoline Sales, the plaintiff alleged that Getty Petroleum Corp. was one of the RICO "persons" while Getty's two wholly-owned subsidiaries Aero Oil Company and Reco Petroleum, Inc. comprised the RICO "enterprise." Id. at 71. The Court upheld the district court's dismissal on 12(b)(6) grounds, holding that Getty was not "sufficiently distinct from the 'enterprises' Aero and Reco to have conducted them within the meaning of section 1962(c)." Id. at 73. According to the Court of Appeals, the plaintiff's "complaint, far from distinguishing Getty's role in the scheme, closely identif[ies] Getty's actions with the actions of Aero and Reco." Id.

In Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., 46 F.3d 258 (3d Cir. 1995), the Third Circuit revisited its § 1962(c)

37

jurisprudence in light of the U.S. Supreme Court cases of <u>Reves v. Ernst & Young</u>, 507 U.S. 170, 183 (1993), and <u>National Organization for Women v. Scheidler</u>, 510 U.S. 249 (1994), holding that "corporate officers/employees may properly be held liable as persons managing the affairs of their corporation as an enterprise through a pattern of racketeering . . . ." <u>See also Kushner</u>, 533 U.S. at 161.  The <u>Jaguar Cars</u> court appears not to have addressed or modified the line of cases holding that corporations are not distinct from their subsidiaries, stating that "a corporation would be liable under § 1962(c), only if it engages in racketeering activity as a 'person' in another distinct 'enterprise.'"  <u>Jaguar Cars</u>, 46 F.3d at 268.

Applying these cases to the facts before this Court, the Court holds that MedQuist is not sufficiently distinct from the MedQuist-Transcriptions association-in-fact to make MedQuist liable under Section 1962(c).  The Court agrees with Plaintiffs that an enterprise can consist of a parent and subsidiary acting as an "association-in-fact."  However, the pleadings must draw a distinction between the RICO "enterprise" and the RICO "person." <u>See Lorenz</u>, 1 F.3d at 1412 (finding that "the plaintiff must plead facts which, if assumed true, would clearly show that the parent corporation played a role in the racketeering activity that was distinct" from the enterprise.)  In the TAC, Plaintiffs fail to adequately plead such a distinction.

At oral argument, Plaintiffs' counsel argued that such a distinction exists in that Transcriptions signed the customer contracts while the artificially inflated invoices were sent and funds received by MedQuist and that it is through that enterprise (the combination of MedQuist and Transcriptions - two legally distinct entities) that the fraudulent scheme was perpetrated. But in order to name MedQuist as the RICO "person" under a § 1962(c) claim, Plaintiffs would have to allege facts that show that MedQuist played a role in the racketeering activity which was distinct from the activity of the association-in-fact between MedQuist and Transcriptions.  Plaintiffs have not done this. Instead, the TAC routinely lumps MedQuist and Transcriptions together, referring to them collectively as "MedQuist."  (TAC ¶ 1.)  For example, the TAC states that "MedQuist (and its acquired company Transcriptions, Inc.) systematically inflated invoices for transcription services . . . and took steps to actively conceal the fraudulent manner in which invoices were manufactured."  (Id. ¶ 4.)  The TAC also alleges that, in furtherance of the fraudulent scheme, "MedQuist utilized a method to artificially inflate its invoices by counting 'invisible' characters," (Id. ¶ 41), that "MedQuist invoiced Class members," (Id. ¶ 46), that "MedQuist submitted its artificially inflated invoices to Plaintiffs," (Id. ¶ 47), and "[w]ith respect to those contracts in which MedQuist agreed to bill per AAMT line,

39

MedQuist has admitted that it did not consistently do so." (<u>Id.</u>
¶ 38.) Here, the TAC suffers from the same ills that the Third
Circuit pointed out in the plaintiffs' complaint in <u>Gasoline
Sales</u>; namely that the complaint, "far from distinguishing
Getty's [the RICO "person"] role in the scheme, [the complaint]
closely identif[ies] Getty's actions with the actions of Aero and
Reco [the enterprise.]" <u>Gasoline Sales</u>, 39 F.3d at 73. As such,
MedQuist must be dismissed under Claim 5.[12]

The MedQuist Defendants do not directly argue that
Plaintiffs' RICO claims against Scarpone and Clark should be
dismissed. Unlike with MedQuist, there is no "distinctiveness"
problem with Scarpone (a senior officer of both MedQuist and
Transcriptions) and Clark (a senior officer at MedQuist)
designated as the RICO "persons" and the MedQuist-Transcriptions
association-in-fact as the RICO "enterprise." Indeed, under
<u>Kushner</u> and <u>Jaguar Cars</u> a corporate employee/officer can be a
RICO "person" while the employee's employer can serve as the RICO

---

[12] At oral argument, Plaintiffs' counsel argued that <u>Emcore
Corp. v. PriceWaterhouseCoopers, LLP</u>, 102 F. Supp. 2d 237 (D.N.J.
2000) altered the Third Circuit's jurisprudence in holding that
an entity may be a member of an association in fact enterprise,
such as we have here, together with its affiliates and
simultaneously be liable as a RICO person. (Tr. at 43.) Indeed,
<u>Emcore</u> does hold as Plaintiffs' counsel submitted. <u>Emcore Corp.</u>,
102 F. Supp. 2d at 260-61. The holding of <u>Emcore</u>, however, does
not change the state of the law as addressed in <u>Jaguar Cars</u>. In
addition, here as opposed to in <u>Emcore</u>, the Court concludes that
the alleged actions of MedQuist are not distinguishable from
those of the RICO enterprise. As such, <u>Emcore</u> does not control.

"enterprise." <u>Kushner</u>, 533 U.S. at 161; <u>Jaguar Cars</u>, 46 F.3d 258.

### ii. "Operations and Control" Allegations

Second, MedQuist argues that, for Plaintiffs to state a § 1962(c) claim, a plaintiff must allege not only that the defendants were "employed by or associated with" an enterprise, but also that defendants "conduct[ed] or participat[ed] . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity." (MedQuist Br. at 16 <u>citing</u> 18 U.S.C. § 1962(c)). MedQuist argues that here, Plaintiffs' allegations are wholly conclusory and that Plaintiffs do not state any facts to support allegations that Scarpone and Clark participated in the operation or management of the RICO enterprise.[13]

To survive a Rule 12(b)(6) motion to dismiss their Section 1962(c) claim, Plaintiffs need only allege that the MedQuist Defendants "participated in the operation or management" of the relevant enterprise. <u>Reves</u>, 507 U.S. at 184. Thus, to participate directly or indirectly in the conduct of an enterprise's affairs for purposes of § 1962(c), one need only play "<u>some part</u> in directing the enterprise's affairs." <u>See</u> <u>id.</u> at 179 (emphasis added). It is not necessary for Plaintiffs to

---

[13] In support of this proposition, the MedQuist Defendants cite <u>Goren v. New Vision Int'l, Inc.</u>, 156 F.3d 721, 727 (7th Cir. 1998)("It is not enough...for a plaintiff simply to allege the [conduct] elements in a boilerplate fashion; instead she must allege sufficient facts to support each element.")

plead that the MedQuist Defendants had primary responsibility for operating and managing the affairs of the RICO enterprise. <u>Id.</u>

Here, the TAC identifies an ongoing and continuing association-in-fact consisting of MedQuist and Transcriptions as the enterprise that Scarpone and Clark used to conduct a pattern of racketeering activities. Specifically, the TAC alleges that Scarpone, as the executive vice president of marketing and new business development, was "one of the highest-ranking officer[s] directly responsible for overseeing the marketing of MedQuist's. . . medical transcription services." (TAC ¶ 16.) Furthermore, Clark, as MedQuist's Senior Vice-President of Operations is alleged to have been "responsible for supervising all of MedQuist's offices throughout the country" and for the customer service centers where the customer complaints for inflated billing were lodged. (<u>Id.</u> ¶ 19.) Scarpone and Clark were also among the Defendants that Plaintiffs' TAC alleged: (1) "delivered or cause to be delivered" the "artificially inflated invoices for transcription services," (<u>Id.</u> ¶ 90, 92); (2) were motivated in creating and operating the MedQuist enterprise "to fraudulently obtain illegal profits for their medical transcription services"; (<u>Id.</u> ¶ 98) and (3) were among "an array of employees" who carried out "illegal conduct and wrongful practices" and "necessarily relied upon the frequent transfer of documents . . . by the U.S. mails and interstate wire facilities." (<u>Id.</u> ¶ 95.)

Accordingly, the Court will dismiss Plaintiffs' substantive RICO claim (Claim 5) against MedQuist because Plaintiffs' pleadings do not satisfy § 1962(c)'s distinctiveness requirement. However, the Court will deny the MedQuist Defendants' motion to dismiss Scarpone and Clark, finding that they are sufficiently distinct from the RICO enterprise and that Plaintiffs properly alleged that Scarpone and Clark were involved in the operation and control of the RICO enterprise.

### b.    Kearns and Suender

Kearns and Suender support their motion to dismiss with respect to Plaintiffs' substantive RICO violation claim by arguing that (1) the TAC fails to allege that Kearns or Suender were directing the affairs of the RICO enterprise and (2) Plaintiffs failed to plead the RICO predicate acts with sufficient particularity.  The Court disagrees and finds that Plaintiffs have adequately plead their substantive RICO claims against Suender and Kearns.

As stated above, to survive a Rule 12(b)(6) motion to dismiss a § 1962(c) claim, a plaintiff need only allege that the defendant "participated in the operation or management" of the relevant enterprise and had "some part in directing the enterprise's affairs."  Reves, 507 U.S. at 179, 184 (emphasis added).  Plaintiffs must also allege facts indicating that the defendant participated in the operation or management through a

43

pattern of racketeering activity (i.e., if his management
participation is conducted via a pattern of criminal acts) and
demonstrate a nexus between the person and the unlawful conduct
in the affairs of an enterprise.  United States v. Parise, 159
F.3d 790, 796 (3d Cir. 1998).

     With respect to Kearns, the TAC satisfies the requirement
that Plaintiffs plead that Kearns participated in the operations
and management of the RICO enterprise.  The TAC alleges that
Kearns was the Chief Operating Officer of MedQuist, Inc. and
Senior Vice President and Chief Financial Officer of
Transcriptions and was "the highest-ranking officer directly
responsible for overseeing the financial affairs, profits and
revenues generated by MedQuist" at the time MedQuist was
allegedly part of the fraudulent scheme.  (TAC ¶ 18.)  Kearns
executed several agreements on behalf of Transcriptions (at the
time he allegedly knew that MedQuist was involved in a fraudulent
scheme to provide Plaintiffs with inflated invoices) and was
"instrumental in the implementation and continuation" of the
scheme.  (Id. ¶ 18, 48.)  These allegations satisfy the
requirement that Plaintiffs plead that Kearns was involved in the
operations and management of the RICO enterprise and participated
in a pattern of racketeering activity.

     In addition, Plaintiffs have sufficiently plead a nexus
between the person (Kearns) and the unlawful conduct in the

affairs of an enterprise (mail fraud and wire fraud). Plaintiffs plead Kearns' predicate acts with sufficient particularity. The TAC cites Kearns as among the Defendants who "delivered or caused to be delivered" the "artificially inflated invoices for transcription services . . . ." (Id. ¶ 90, 92). Kearns also was among "an array of employees" who carried out "illegal conduct and wrongful practices" and "necessarily relied upon the frequent transfer of documents . . . by the U.S. mails and interstate wire facilities." (Id. ¶ 95.) At this stage in the proceedings, Plaintiffs have satisfied their pleading requirements with respect to Kearns.

Similarly, Plaintiffs have properly plead a § 1962(c) claim against Suender as the TAC identifies a MedQuist-Transcriptions enterprise that Suender, as a senior executive, used to conduct a pattern of racketeering. Viewing the TAC in the light most favorable to the Plaintiffs, as required at this stage by Rule 12(b)(6), the TAC alleges that Suender was Executive Vice President and Chief Legal Officer of MedQuist, Inc. and Vice President of Transcriptions. (TAC ¶ 17.) In this capacity, Suender reviewed, approved and ratified contracts between MedQuist and Plaintiffs "at a time when he knew that MedQuist was engaged" in a fraudulent scheme to provide customers with artificially inflated invoices. (Id.) In addition, Plaintiffs have sufficiently plead a nexus between Suender and the

45

racketeering activity of mail fraud and wire fraud.  The TAC alleges that Suender was among the Defendants that "delivered or cause to be delivered" the "artificially inflated invoices for transcription services," (Id. ¶ 90, 92), and that Suender was among "an array of employees" who carried out "illegal conduct and wrongful practices" and "necessarily relied upon the frequent transfer of documents . . . by the U.S. mails and interstate wire facilities."  (Id. ¶ 95.)  At this stage in the proceedings, Plaintiffs have satisfied their pleading requirements with respect to Suender pursuant to Section 1962(c).

### 2. RICO Conspiracy Claim against Scarpone, Clark, Suender and Kearns (Claim 6)

In Claim 6, Plaintiffs allege that Scarpone, Clark, Suender and Kearns "violated RICO when they conspired and agreed to conduct the affairs of the MedQuist enterprise through a pattern of racketeering activity over an approximate five year period, which was intended to defraud Plaintiffs . . . ."  (TAC ¶ 104.) According to the TAC, "Defendants' motive in conspiring to operate the MedQuist enterprise . . . was to fraudulently obtain illegal profits for medical transcription services . . . ."  (Id. ¶ 105.)  Plaintiffs also allege that Defendants carried out the scheme by "mailing and/or faxing . . . artificially inflated invoices for transcription services to Plaintiffs."  (Id.)

Section 1962(d) makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b),

46

or (c)" of § 1962. 18 U.S.C. § 1962(d). To state a claim, a plaintiff must set forth allegations sufficient to describe (1) the general composition of the conspiracy, (2) some or all of its broad objectives, and (3) the defendant's general role in that conspiracy. See Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989). In addition, a plaintiff must demonstrate that the defendants agreed to commit predicate racketeering acts with knowledge that the acts formed a pattern of racketeering activity in violation of § 1962(a), (b) or (c). See A-Valey Eng'rs, Inc. v. Bd. of Chose Freeholders, 106 F. Supp. 2d 711, 717 (D.N.J. 2000); see also Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162 (3d Cir. 1989), abrogated on other grounds, Beck v. Prupis, 529 U.S. 494 (2000).[14]

### a. Scarpone and Clark

According to Scarpone and Clark, Plaintiffs' claim for RICO conspiracy fails because it is supported only by conclusory allegations devoid of supporting facts necessary to properly make out a conspiracy claim. To the contrary, the Court finds Plaintiffs' conspiracy allegations neither conclusory nor devoid

---

[14] While a plaintiff must fairly apprise defendants of the basis for its conspiracy charges, the heightened pleading standards of Rule 9(b) do not apply. Rose, 871 F.3d at 366; Emcore, 102 F. Supp. 2d at 264. A conspiracy allegation must only satisfy the low threshold of Rule 8, Fed. R. Civ. P., but "[a] general allegation of conspiracy without a statement of fact [is] an allegation of legal conclusion and insufficient to state a cause of action." Black & Yates v. Mahogany Ass'n, Inc., 129 F.2d 227, 232 (3d Cir. 1941).

of supporting facts and holds that Plaintiffs have adequately plead a cause of action under RICO conspiracy. As stated by the Third Circuit in Rose, the heightened pleading standards of Rule 9(b) do not apply. Rose, 871 F.3d at 366. Plaintiffs need only fairly apprise Scarpone and Clark of the basis for Plaintiffs' conspiracy allegations.

Taking all of the allegations set forth in the Complaint as true, Plaintiffs have done as much. First, the TAC describes the general composition of the conspiracy as it names Scarpone and Clark as among the four senior officers of MedQuist and/or Transcriptions that were responsible for the operation, management and financial affairs of the RICO enterprise. (TAC ¶¶ 16-19.) Second, the TAC describes the broad objectives of the conspiracy, namely that Defendants (1) established a billing system and used the system to create and transmit fraudulent invoices and (2) sought to operate the enterprise to fraudulently obtain illegal profits from their medical transcription services. (Id. ¶¶ 39-47, 90-99, 105-06.) Finally, the TAC describes Scarpone and Clark's roles in the conspiracy both generally and specifically. The TAC states that Scarpone and Clark "were instrumental in the implementation and continuation of the Fraudulent Scheme to artificially inflate invoices for transcription services . . . ." (Id. ¶ 48.) Specifically, the TAC alleges that Scarpone was "responsible for overseeing the

48

marketing of MedQuist's purported business practices and medical transcription services," (Id. ¶ 16) and Clark was responsible "for supervising all of MedQuist's offices . . . [including] the Customer Service Centers wherein the artificial inflating of reports . . . took place."  (Id. ¶ 17.)

The Court also holds that Plaintiffs have sufficiently plead the existence of an agreement in furtherance of the affairs of the RICO enterprise.  Indeed, the TAC states that Defendants "violated RICO when they conspired and agreed to conduct the affairs of the MedQuist enterprise through a pattern of racketeering activity . . . ."  (Id. ¶ 104.)  Plaintiffs have also properly alleged that Scarpone and Clark were among the Defendants who "knowingly and intentionally" delivered or faxed the fraudulent invoices.  (Id. ¶ 90, 92.)  As such, Plaintiffs' claim of RICO conspiracy against Scarpone and Clark will proceed.

### b.    Suender and Kearns

Suender and Kearns set forth similar arguments to those raised by Scarpone and Clark in support of their motions to dismiss Plaintiffs' RICO conspiracy claim - namely that Plaintiffs have failed to plead that either defendant entered into an agreement to facilitate a scheme which includes the operation or management of a RICO enterprise.  According to Suender and Kearns, the TAC lacks any specific factual allegation to support the claim that either defendant agreed to participate

in the affairs of the alleged RICO enterprise or that he agreed to commit or facilitate the commission of a predicate act.

Contrary to Suender's arguments and viewing the facts alleged in the TAC in a light favorable to Plaintiffs, Plaintiffs have satisfied the minimal obligations to plead a cause of action for RICO conspiracy.  First, Plaintiffs have alleged that all of the Individual Defendants "conspired and agreed to conduct the affairs of the MedQuist enterprise through a pattern of racketeering activity[.]"  (TAC ¶ 104.)  Additional facts found in the TAC buttress Plaintiffs' conspiracy claim, including Plaintiffs' allegations that, in his capacity as the Chief Legal Officer of MedQuist, Inc. and Vice President of Transcriptions, Suender entered contracts with MedQuist customers at a time when he knew that the company was involved in a scheme to defraud customers by sending artificially inflated invoices.  (Id. ¶ 48.) In addition, the TAC contains claims that Suender "in cooperation with the other Defendants and in furtherance of the Fraudulent Scheme" insisted that certain agreements contain arbitration clauses with the sole intent of preventing MedQuist's scheme from being uncovered during discovery should MedQuist be sued.  (Id. ¶ 51.)  Thus, the TAC is sufficiently precise to give Suender "fair notice" of the conspiracy claim against him.  Conley v. Gibson, 355 U.S. 41, 47-78 (1957).

50

With respect to Kearns, his arguments similarly fail. Plaintiffs have alleged that he, along with Suender, Scarpone and Clark, "conspired and agreed to conduct the affairs of the MedQuist enterprise through a pattern of racketeering activity[.]" (TAC ¶ 104.)  Moreover, as Chief Financial Officer of MedQuist and Transcriptions, Kearns executed an agreement on behalf of Transcriptions and Plaintiffs Partners PHS and NorthBay HealthCare Group at a time when he knew that the company was engaged in a fraudulent scheme.  (Id. ¶ 18.)  Thus, as with Suender, the TAC is sufficiently precise to give Kearns fair notice of the conspiracy claim against him.

In summary, this Court will deny all of the Individual Defendants' motions to dismiss Plaintiffs' claim of RICO conspiracy.

### D.  **Plaintiffs' Claims for Negligent Misrepresentation (Claims 7-11)**

#### 1.  **Claims Against MedQuist (Claim 7)**

In Claim 7, Plaintiffs allege that MedQuist is liable for negligent misrepresentation because MedQuist owed a duty of care to Plaintiffs to refrain from misrepresenting its billing practices, breached this duty by omission when it failed to inform Plaintiffs that it had unilaterally decided not to engage in the represented billing practices, and caused damage to Plaintiffs who were unaware of MedQuist's breach.  (TAC ¶¶ 109-116.)  MedQuist makes two arguments in support of its motion to

dismiss this claim.  MedQuist first contends that Plaintiffs have
failed to plead a legally cognizable duty that can satisfy the
first element of any negligence claim (i.e., that MedQuist owed a
duty to Plaintiffs independent of any duty established in the
transcription services contracts between MedQuist and
Plaintiffs.)  Second, MedQuist argues that a failure to disclose
an allegedly material fact can support a negligent
misrepresentation claim only if there is a duty on the part of
the defendant to disclose certain information and here,
Plaintiffs have failed to plead that MedQuist had such a duty to
disclose.  Plaintiffs counter that MedQuist's motion is
premature.  The question of whether a duty exists under a claim
for negligent misrepresentation, according to Plaintiffs, is a
question of law that the Court may determine only after
discovery, when the Court can properly weigh numerous factors
surrounding the parties and their relationship in order to
determine whether a duty of care exists.

MedQuist's motion is not premature and Plaintiffs are not
entitled to take discovery on this matter.  Plaintiffs are only
entitled to discovery if they have plead a valid claim of
negligent misrepresentations.  Here, they have not.  New Jersey
law requires that a plaintiff bringing a negligent
misrepresentation claim demonstrate that a defendant negligently
provided false information and that plaintiff incurred damages

caused by the plaintiff's reliance on that information.  See Karu v. Feldman, 119 N.J. 135, 145 (N.J. 1990); Highlands Ins. Co. v. Hobbs Group, LLC., 373 F.3d 347, 351 (3d Cir. 2004).  Moreover, in New Jersey, "any tort of negligence requires the plaintiff to prove that the putative tortfeasor breached a duty of care . . . ."  Highlands Ins. Co., 373 F.3d at 351.

In this case, Plaintiffs have failed to plead that MedQuist owed a legally cognizable duty to Plaintiffs –– outside of MedQuist's contractual duties –– for which Plaintiffs can recover in tort.  It is the transcription services agreement between Plaintiffs and MedQuist that defines the duties and obligations between the parties generally and MedQuist's billing practices specifically.  Plaintiff's negligent misrepresentation claim is based on MedQuist's alleged misrepresentations of its billing practices, but the billing practices are defined in the transcription services contracts.  Thus, while Plaintiffs have framed their claims as negligent misrepresentation claims (tort claims), in actuality, Plaintiffs claims are for breach of the transcription services contracts.  In New Jersey, when reviewing the merits of a claim, a court will look beyond how a plaintiff has captioned or described a claim and adjudicate it based on what the claim actually alleges.  New Mea Constr. Corp. v. Harper, 203 N.J. Super. 486, 494 (App. Div. 1985)("Merely nominally casting this cause of action as one for negligent

supervision does not alter its nature.") Here, Plaintiffs cannot
sustain a tort claim, as Plaintiffs have not alleged a duty
outside of duties outlined in the services contracts.

Under New Jersey law, "a tort remedy does not arise from a
contractual relationship unless the breaching party owes <u>an
independent duty</u> imposed by law." <u>Saltiel v. GSI Consultants,
Inc.</u>, 170 N.J. 297, 315 (2002)(emphasis added). If there is no
duty owed to a plaintiff independent of what the defendant owes
plaintiff under a contract, a plaintiff may not maintain a tort
claim (as a necessary element of the tort claim is absent). <u>See
id</u>. at 316.[15] Indeed, in <u>Int'l Minerals & Mining Corp. v.
Citicorp North Am., Inc.</u>, Judge Barry stated:

> It has long been the law that remedies in tort relating
> to a breach of contract may not be maintained in addition
> to those established under the contract itself in the
> absence of any independent duty owed by the breaching
> party to the plaintiff.
>
> Where a party does not owe another a duty of care absent
> the existence of a contract, a separate duty of care
> cannot arise simply by virtue of the existence of the

---

[15]     In <u>Saltiel</u>, plaintiff and defendants had a contract to
design and prepare plans for the construction of an athletic
field. <u>Id.</u> at 300-01. Upon completion of the field, it was
determined that defendant architect had negligently prepared the
specifications and plaintiff sued for negligent misrepresentation
and breach of contract, among other claims. <u>Id.</u> at 301. The New
Jersey Supreme Court concluded that the plaintiff had not
established that defendant owed a duty to plaintiff that was
independent of defendant's duty under the contract. <u>Id.</u> at 317.
While there are duties that are specifically imposed by law in
New Jersey (such as a duty on attorneys, product manufacturers,
and insurance brokers), no extra-contractual duty was placed on
defendant. <u>Id.</u>

contract. Indeed, it is fundamental that a party's
liability for breach should be governed strictly by the
application of foreseeable damages stemming from the
establishment of the contractual relationship. [Thus,].
. . an independent tort action is not cognizable where
there is no duty owed to the plaintiff other than the
duty arising out of the contract itself.

736 F. Supp. 587, 597 (D.N.J. 1990).

In this case, like in <u>Saltiel</u>, Plaintiffs have failed to
plead any duty independent of the contracts between Plaintiffs
and MedQuist. Plaintiffs' allegation that (1) MedQuist owed "a
duty of care . . . to refrain from misrepresenting its billing
practices" and (2) that MedQuist "breached by omission its duty
by failing to inform Plaintiffs . . . that it had unilaterally
decided did not engage in the represented billing practices"
clearly show that Plaintiffs have plead that MedQuist's duty
arises from the contract and not that MedQuist had an extra-
contractual duty. (TAC ¶¶ 112-13.) Because Plaintiffs have not
plead any duty MedQuist owed Plaintiffs independent of MedQuist's
contractual duties, Plaintiffs cannot maintain a tort claim for
negligent misrepresentation.

In addition, Plaintiffs' negligent misrepresentation claim
against MedQuist must be dismissed because Plaintiffs failed to
plead that MedQuist made a false statement of fact or that
MedQuist had a duty to disclose. Plaintiffs allege that
MedQuist's negligent misrepresentation occurred due to MedQuist's
"breach of omission." (TAC ¶ 112.) While a breach of omission

55

can support a claim of negligent misrepresentation, <u>see</u> <u>Karu</u>, 119
N.J. at 148, a plaintiff must plead a duty to disclose.  Here,
Plaintiffs have not done so.  In addition, this is not a
situation where the defendant has a duty to disclose.  <u>See</u>
<u>Maertin v. Armstrong World Indus.</u>, 241 F. Supp. 2d 434, 461
(D.N.J. 2002)("There are three general types of transactions
where the duty to disclose arises: (1) where a fiduciary
relationship exists between the parties, (2) where the
transaction itself calls for perfect good faith and full
disclosure, or (3) where one party expressly reposes a trust and
confidence in the other.")(internal citations and quotations
omitted).  The arm's length negotiation of a contract between two
corporations for transcription services does not fall within the
narrow circumstances giving rise to such a duty to disclose under
New Jersey law.  Accordingly, MedQuist's motion to dismiss
Plaintiffs' negligent misrepresentation claim (Claim 7) will be
granted and this claim shall be dismissed.

> **2.   Claims Against Scarpone, Clark, Suender and Kearns
> (Claim 8, 9, 10, 11)**

As with MedQuist, Plaintiffs have failed to allege or
identify any extra-contractual duty that the Individual
Defendants owed to Plaintiffs.  Therefore, Plaintiffs' claims for
negligent misrepresentation must also fail as to these
Defendants.  These Individual Defendants also cannot be held
liable for negligent misrepresentation under the "participation

theory" advanced by Plaintiffs.  It is true that, under limited circumstances, New Jersey courts have applied the "participation theory" to hold corporate officers personally liable for tortious conduct.  See Saltiel, 170 N.J. at 315.  "[T]he essence of the participation theory is that a corporate officer can be held personally liable for a tort committed by the corporation when he or she is sufficiently involved in the commission of the tort."  Id. at 303.[16]  The participation theory, however, is inapplicable when the corporation's duty is dependent on contract.  Because Plaintiffs have not plead that the Individual Defendants have any duty outside of MedQuist's contract duty, Plaintiffs' claims for negligent misrepresentation against the Individual Defendants must be dismissed.

**E.** **Plaintiffs' Claims for Negligent Supervision (Claims 12-15)**

In Claims 12-15, Plaintiffs allege that the Individual Defendants, in their various senior and supervisory positions within either MedQuist and/or Transcriptions, owed a duty of care to Plaintiffs "to properly supervise individuals within the corporation who were responsible for making representations about the billing practices of MedQuist . . . and who were responsible for the methods and procedures used to determine the basis for

---

[16]  "A predicate to liability is a finding that the corporation owed a duty of care to the victim, the duty was delegated to the officer and the officer breached the duty of care by his own conduct."  Saltiel, 170 N.J. at 303.

the invoices sent to Plaintiffs and the Class." (TAC ¶¶ 161, 166, 170, and 174.) Plaintiffs also allege that the Individual Defendants breached this duty of care by failing to properly supervise these individuals and that this breach resulted in damage to Plaintiffs as Plaintiffs paid improperly and artificially inflated invoices. (Id. ¶¶ 162, 167, 171, and 175.)

The Individual Defendants argue, as they did in response to Plaintiffs' claims of negligent misrepresentation, that Plaintiffs' claims fail because the Individual Defendants had no duty of care to properly supervise outside of their duty under the medical transcription contracts between MedQuist and Plaintiffs. As such, according to the Individual Defendants, Plaintiffs' claims cannot survive. Plaintiffs argue that they have adequately plead claims for negligent supervision because the Individual Defendants assumed all liability to determine the price and billing based on MedQuist's pricing methodology without giving Plaintiffs the opportunity to review pricing. These actions, according to Plaintiffs, created an extra-contractual duty not governed by contract, but developed through express conduct of the Individual Defendants. As such, apart from their contractual obligations, the Individual Defendants owed Plaintiffs an independent duty to accurately calculate pricing.

In this case, Plaintiffs' claims of negligent supervision must fail for several reasons. First, Plaintiffs have failed to

allege that the Individual Defendants owed a duty to Plaintiffs that is independent of the duty MedQuist (and the Individual Defendants as officers of MedQuist) owed Plaintiffs under the medical transcriptions contracts. While Plaintiffs argue in their opposition briefs that certain "extra-contractual tortious behaviors" the Individual Defendants engaged in created a duty separate and apart from MedQuist's contractual duties, the TAC contains no such allegations. To the contrary, according to the TAC, if such a duty exists, it is wholly dependent upon or related to the contract. The obligations that the Individual Defendants had to properly supervise MedQuist employees to ensure that MedQuist was properly invoicing Plaintiffs is not a duty imposed by law, but by the transcription services contracts between MedQuist and Plaintiffs. "Merely nominally casting this cause of action as one for negligent supervision does not alter its nature." New Mea Constr. Corp., 203 N.J. Super. at 494.

Second, the Individual Defendants cannot be held liable for negligent supervision under the "participation theory" advanced by Plaintiffs. Similar to the New Jersey Supreme Court's conclusion in Saltiel, this Court is convinced that Plaintiffs have plead a cause of action sounding in contract not in tort and have failed to plead that the Individual Defendants owed an independent duty to Plaintiffs outside the scope of the contracts. As such, Plaintiffs cannot rely on this theory.

59

Third, Plaintiffs cannot maintain a cause of action for the tort of negligent supervision where the Individual Defendants' actions resulted in nothing more than MedQuist breaching its transcription services contracts with Plaintiffs. The New Jersey Appellate Division has made this point, holding that "[i]t is sufficient to note that such negligence did no more than cause the breach of contract for which defendant was liable . . . [and such negligence] does not form the basis for an independent tort." Noye v. Hoffmann-La Roche, 238 N.J. Super. 430, 437-38 (App. Div. 1990)(citing New Mea Const. Corp., 203 N.J.Super. at 494.)[17]

### F.   **Plaintiffs' Claims under the New Jersey Consumer Fraud Act and California Unfair Business Practices Act (Claim 16)**

In Claim 16, Plaintiffs allege that pursuant to the fraudulent scheme, all of the Defendants made misrepresentations and concealed material facts from Plaintiffs which constitute unlawful, unfair and/or fraudulent business acts or practices in violation of (1) the New Jersey Consumer Fraud Act, N.J. Stat. Ann. 56:8-1 et seq ("NJCFA") and (2) the California Unfair

---

[17]   In addition, Plaintiffs' arguments that they need discovery on this issue are unavailing. If certain extra-contractual behavior on the part of the Individual Defendants created a duty between Plaintiffs and the Individual Defendants, Plaintiffs were required to plead as much in the TAC. Moreover, if a special relationship existed between the Individual Defendants and Plaintiffs such that an extra-contractual duty existed, Plaintiffs would know of it and would have been able to plead facts to support the existence of such a relationship.

Business Practices Act, Cal. Bus. & Prof. Code § 17200 (2007)

("UCL").  (TAC ¶¶ 177-180.)  Because the Defendants have

allegedly committed these acts in violation of the NJCFA and UCL,

Plaintiffs are entitled to, among other remedies, disgorgement of

profits.  (Id. ¶ 181.)

### 1.   New Jersey Consumer Fraud Act

The Defendants argue that Plaintiffs' claim under the NJCFA

should be dismissed because the NJCFA protects persons in

connection with the sale of any "merchandise" and that the sale

of medical transcription services is not contained within the

NJCFA's definition of "merchandise."  Plaintiffs argue that New

Jersey courts have held that the NJCFA is to be read liberally

and expansively and that the NJCFA applies to medical

transcription services.

The NJCFA prohibits:

> The act, use or employment by any person of any
> unconscionable commercial practice, deception, fraud,
> false pretense, false promise, misrepresentation, or the
> knowing, concealment, suppression, or omission of any
> material fact . . . in connection with the sale or
> advertisement of any merchandise or real estate, or with
> the subsequent performance of such person as aforesaid .
> . . .

N.J. Stat. Ann. 56:8-2 (2007).  The NJCFA defines "merchandise"

to include "any objects, wares, goods, commodities, services or

anything offered, directly or indirectly to the public for sale."

Id. at 56:8-1(c)(emphasis added).  The NJCFA also defines

"person" to include partnerships, corporations, companies, and

61

business entities.  Id. at 56:8-1(d).  According to the New
Jersey Supreme Court, the NJCFA was "aimed basically at unlawful
sales and advertising practices designed to induce consumers to
purchase merchandise or real estate" and that "[t]he legislative
concern was over sharp practices and dealings in the market of
merchandise and real estate whereby the consumer could be
victimized by being lured into a purchase through fraudulent,
deceptive or other similar kind of selling or advertising
practices."  Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 271
(1978).  Moreover, the applicability of the NJCFA "hinges on the
nature of a transaction, requiring a case by case analysis."
Papergraphics Int'l, Inc. v. Correa, 389 N.J. Super. 8, 13 (App.
Div. 2006)

This Court finds that, based on the nature of the
transaction here, the NJCFA does not apply here and accordingly,
Plaintiffs' claim under the NJCFA will be dismissed.  Medical
transcription services are not services that are sold to the
general public.  Therefore, those services are not "merchandise"
under the NJCFA.  Indeed, medical transcription services are much
more like the sale of a franchise, see J & R Ice Cream Corp. v.
California Smoothie Licensing Corp., 31 F.3d 1259 (3d Cir. 1994),
or the provision of financial planning, store planning and
merchandising services, see Windsor Card Shops, Inc. v. Hallmark
Cards, Inc., 957 F. Supp. 562, 567, n. 6 (D.N.J. 1997), which

have been deemed not included in the term "merchandise" under the NJCFA because these goods or services are not generally offered to the public.[18]

Plaintiffs put forth two arguments that the NJCFA covers these transactions.  Both are unavailing.  Plaintiffs first argue that, because the definition of "person" incorporates business entities, corporations and partnerships, the Court should read the NJCFA expansively to include such business-to-business transactions.  The Third Circuit has already dealt with this issue, holding that:

> It is clear that a corporation may qualify as a person under the [NJCFA] when it finds itself in a consumer oriented situation such as the purchaser of a tow truck, yacht, or as the purchaser of computer peripherals. However, we conclude that when an individual or a corporation purchases a franchise, it is not a person in a "consumer oriented situation," and thus the transaction is not covered by the Act.  In short, it is the character of the transaction rather than the identity of the purchaser which determines if the [NJCFA] is applicable.

J & R Ice Cream Corp., 31 F.3d at 1273, quoting BOC Group, Inc. v. Lummus Crest, Inc., 251 N.J. Super. 271, 277 (Law Div. 1990)("It is clear that a corporation may qualify as a person under the Act when it finds itself in a consumer oriented situation.")  Here, Plaintiffs are not acting as a person in a

---

[18]   Moreover, a ruling to the contrary -- that medical transcription services are "merchandise" under the NJCFA in this case -- would be contrary to the legislative intent of the NJCFA that "the evils sought to be eliminated point to an intent to protect the consumer in the context of the ordinary meaning of that term in the marketplace." J & R Ice Cream Corp., 31 F.3d at 1272-73.

consumer oriented situation as Plaintiffs are hospitals and health care networks purchasing such services as part of their business. Second, Plaintiffs argue that MedQuist's transcription services are covered under the NJCFA because they are standard off-the-shelf services available to anyone. The TAC states otherwise as Plaintiffs have alleged that "MedQuist provides . . . medical transcription services to hospitals and other healthcare facilities . . . ." (TAC ¶ 31.) There is no indication that such medical transcription services are generally available to non-hospital entities. Certainly medical transcription services cannot be thought of as a typical consumer service. Accordingly, Plaintiffs' claim under the NJCFA will be dismissed.

### 2. California Unfair Business Practice Act

The MedQuist Defendants argues that Plaintiffs' claim under the UCL must be dismissed because Plaintiffs have failed to allege crucial elements of a claim under the UCL. Plaintiffs respond by arguing that they have more than adequately stated a claim under the UCL as the pleading requirements for the UCL are to be liberally construed. According to Plaintiffs, a plaintiff need not plead or prove the elements of a tort, but only establish that the business practice is either unlawful, unfair or fraudulent.

64

Section 17200 of the UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Thus, the UCL proscribes "three varieties of unfair competition – acts or practices which are unlawful, or unfair, or fraudulent." <u>Cel-Tech Commc'n Inc. v. Los Angeles Cellular Tele. Co.</u>, 83 Cal. Rptr. 2d 548, 561 (Cal. 1999). California law requires a plaintiff to state "with reasonable particularity the facts supporting the statutory elements of the violation" of Section 17200. <u>Khoury v. Maly's of Cal., Inc.</u>, 17 Cal. Rptr. 2d 708, 712 (Cal. Ct. App. 1993).

Plaintiffs' UCL claim is bare bones. Plaintiffs cite the statutory sections of the UCL, (TAC ¶ 178), and that "Defendants made misrepresentations and concealed material facts set forth above from Plaintiffs and the Class, which actions constitute unlawful, unfair, and/or fraudulent business acts or practice and/or violations of Section 17200 . . . ." (TAC ¶ 180.) Plaintiffs do not allege which business practices were forbidden by law, which were unfair or which were fraudulent. Without this level of particularity, Plaintiffs claim under the UCL must be dismissed.

Plaintiffs contend that they have incorporated by reference the other allegations made in the TAC and such incorporation satisfies the pleading requirements. However, simply incorporating the other parts of the TAC by reference cannot be

65

said to constitute pleading the facts supporting the statutory
elements with "reasonable particularity."  Indeed, this pleading
does not provide sufficient notice of the precise claims
Plaintiffs are asserting against Defendants under Section 17200.
Accordingly, Plaintiffs' UCL claim will be dismissed against all
Defendants.

### G.    **Plaintiffs' Class Allegations**

The MedQuist Defendants argue that Plaintiffs' class
allegations are fatally flawed because they have not pled an
ascertainable class.  The MedQuist Defendants argue that where a
party's class allegations are so deficient that a class cannot be
ascertained, the Court may dismiss the class action allegations
at the pleading stage.  See, e.g., Rowe v. Morgan Stanley Dean
Witter, 191 F.R.D. 398, 416 (D.N.J. 1999)(dismissing class action
allegations when it appeared on the face of the complaint that
the class definitions could not satisfy numerosity requirement).
Specifically, Plaintiffs allege a class "of themselves and all
other non-governmental hospitals and medical centers who were
damaged" by Defendants' fraudulent scheme to artificially inflate
invoices for transcription services.  According to the MedQuist
Defendants, such a class allegation runs afoul of the rule that
the definition of the class may not depend on the merits of the
case.  Plaintiffs counter, stating that a Rule 12(b) motion is

not the proper vehicle for attacking the validity of Plaintiffs'
class action allegations.

This Court will deny the motion to dismiss Plaintiffs' class
allegations by the MedQuist Defendants at this stage in the
litigation. Fed. R. Civ. P. 23(c)(1), which governs
certification of class actions, states that "[w]hen a person sues
. . . as a representative of a class, the court must -- <u>at</u> <u>an</u>
<u>early</u> <u>practicable</u> <u>time</u> -- determine by order whether to certify
the action as a class action." Thus, a district court may strike
class action allegations prior to discovery when presented with
Rule 12(b)(6) motion. <u>See</u> <u>Clark v. McDonald's Corp.</u>, 213 F.R.D.
198, 205 n.3 (D.N.J. 2003). However, other decisions in this
District teach that a dismissal of class certification
allegations should be ordered only "in those rare cases where the
complaint itself demonstrates that the requirements for
maintaining a class action cannot be met." <u>Id.</u> (citations
omitted); <u>see also</u> <u>In re Ford Motor Co. Ignition Switch Prods.</u>
<u>Liab. Litig.</u>, 174 F.R.D. 332, 338 (D.N.J. 1997).

Dismissal at this stage in the litigation would not allow
Plaintiffs to fully develop their class claims through discovery.
Indeed, the usual practice favoring pre-certification discovery
derives from the fundamental premise of Fed. R. Civ. P. 12, which
is that claims, including class claims, should not be dismissed
on the pleadings "unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46. Dismissal of class allegations at this stage should be done rarely and that the better course is to deny such a motion because "the shape and form of a class action evolves only through the process of discovery." Gutierrez v. Johnson & Johnson, Inc., 2002 U.S. Dist. LEXIS 15418, *16 (D.N.J. Aug. 12, 2002)(citing Abdallah v. Coca-Cola Co., 1999 U.S. Dist. LEXIS 23211 (D. Ga. July 16, 1999)); see also 7AA Charles Alan Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure Civil § 1785.3 (3d 2005) (the practice employed in the overwhelming majority of class actions is to resolve class certification only after an appropriate period of discovery). Thus, while it is Plaintiffs' burden to prove that the proposed class action satisfies each of the required elements of Rule 23(a) and one of the prerequisites of Rule 23(b), see Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994), the "court may find it necessary . . . to analyze the elements of the parties' substantive claims and review facts revealed in discovery in order to evaluate whether the requirements of Rule 23 have been satisfied." In re Ford Motor Ignition Switch Prods. Liab. Litig., 174 F.R.D. at 338 (citing Castano v. Am. Tobacco Co., 84 F.3d 734, 744 (5th Cir. 1996)).[19] As such, dismissal of

---

[19] Moreover, "[a]s a practical matter, the court's [certification decision] usually should be predicated on more

Plaintiffs' class action allegations at this point would be premature as Plaintiffs have pled sufficient facts to satisfy Rule 23(a) and (b).

## VI.  **MEDQUIST'S MOTION FOR SANCTIONS**

Prior to Plaintiffs filing the TAC, the MedQuist Defendants filed a motion for Rule 11 sanctions against Plaintiffs' counsel. The MedQuist Defendants premise this motion on Plaintiffs' failure to conduct an adequate investigation before filing the complaint in this case (specifically the Second Amended Complaint (the "SAC")).  According to the MedQuist Defendants, Plaintiffs' SAC contains numerous false allegations including: (1) a representation that each named Plaintiff executed a contract like the exemplar contract attached to the SAC; (2) a representation that each named Plaintiff was to be billed by MedQuist based on the AAMT-line unit of measure; and (3) that each named Plaintiff was fraudulently induced to enter an agreement to arbitrate.  The MedQuist Defendants argue that these false allegations were not the result of mistake, but rather Plaintiffs' counsel failure to conduct even a basic review of their clients' own contracts. Indeed, according to the MedQuist Defendants, counsel failed to

---

information than the complaint itself affords . . . [and] [t]hus, courts frequently have ruled that discovery relating to the issue whether a class action is appropriate needs to be undertaken before deciding whether to allow the action to proceed on a class basis."  5C Wright, Miller & Kane, <u>Federal Practice & Procedure Civil</u> 3d § 1785.3.

obtain copies of the relevant contracts from their clients before filing the SAC - contracts that at least some of the Plaintiffs admittedly had in their possession. Finally, after being confronted with such inconsistencies in the SAC, Plaintiffs' counsel continued to move forward with the SAC without amendment despite actual knowledge that allegations in the SAC were based on false allegations.

Fed. R. Civ. P. 11 "imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'" Lieb v. Topstone Indus. Inc., 788 F.2d 151, 157 (3d Cir. 1986). Rule 11 requires that an attorney who submits a complaint certify that it is not asserted for improper purposes (such as delay or harassment) and that there is a reasonable basis in fact and law for the claims made. Leuallen v. Borough of Paulsboro, 180 F. Supp. 2d 615, 618 (D.N.J. 2002). Rule 11 is intended to discourage the filing of frivolous, unsupported, or unreasonable claims. The Third Circuit has written that "the legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances." Ford Motor Co. v. Summit Motor Products, Inc., 930 F.2d 277, 289 (3d Cir. 1991)(citations omitted). Reasonableness in the context of a Rule 11 inquiry has been defined as "an objective knowledge or

belief at the time of the filing of a challenged paper that the claim was well grounded in law and fact."  Id.

Plaintiffs' counsels' failure to review their own clients' transcription services contracts prior to filing this suit was not objectively reasonable.  This failure lead to Plaintiffs' allegations that each named Plaintiff's contract contained specific terms (e.g., that each Plaintiff was to be billed by MedQuist based on the AAMT-line unit of measure and each named Plaintiff was fraudulently induced to enter an agreement to arbitrate), when in fact some contracts do not.  Plaintiffs' counsel appears to have acted in response to a July 30, 2004 press release issued by MedQuist concerning the results of its internal investigation regarding AAMT-billing practices and little more.  Moreover, Plaintiffs' counsels' excuses for failure to review Plaintiffs' contracts -- that they made a mistake, that the medical transcription contracts were difficult to locate, that they relied on a MedQuist officer and publicly available documents -- are wholly unpersuasive.  Plaintiffs are sophisticated large hospital facilities and hospital chains with their own obligations to maintain records and there is no indication that counsel was facing time pressure (due to an impending expiration of a statute of limitation) to file or amend the complaint.  Counsel apparently failed to obtain the underlying contracts from some clients, or counsel failed to

71

examine the clients' contracts, before making claims based upon
them.  This is unreasonable under the circumstances and has led
to confusion and wasted time, necessitating further amendment to
the already twice-amended Complaint.

Having determined that Plaintiffs' counsel violated Rule 11,
this Court must now determine what sanctions are appropriate.
Rule 11 provides, in relevant part, that "[a] sanction imposed
for violation of this rule shall be limited to what is sufficient
to deter repetition of such conduct or comparable conduct by
others similarly situated" and "may consist of, or include,
directives of a nonmonetary nature, an order to pay a penalty
into court . . . ." Fed. R. Civ. P. 11(c)(2).  The Third Circuit
has held that an appropriate sanction may be "a warm-friendly
discussion on the record, a hard-nosed reprimand in open court,
compulsory legal education, monetary sanctions, or other measures
appropriate to circumstances." Langer v. Monarch Life Ins. Co.,
966 F.2d 786, 810 (3d Cir. 1992)).  The Court may also sanction
Plaintiffs' counsel with a written warning.  Gaiardo v. Ehtyl
Corp., 835 F.2d 479, 482 (3d Cir. 1987).

Here, after weighing the parties' arguments, the Court will
impart a warning to Plaintiffs' counsel and publish this opinion.
A written warning and the publication of this opinion are
sufficient sanctions to deter repetition of Plaintiffs' counsel's
failure to conduct pre-filing due diligence.  Further, this

remedy will serve as a "wake-up" call to Plaintiffs' counsel, that will sensitize them to their obligations under Rule 11. Specifically, with the imposition of this sanction, it is the expectation of this Court that Plaintiffs' counsel will conduct a thorough investigation before filing complaints, discovery responses, motions, and the like, in the future. This mild sanction is appropriate in these circumstances, however, because of the seriousness and diligence with which Plaintiffs' counsel has responded to the Court's demand that Plaintiffs file a Third Amended Complaint that addresses the problems highlighted by counsel for MedQuist in the telephone conference call with the Court held on December 13, 2005. [Docket Item No. 126.] Such a response satisfies the Court that Plaintiffs' counsel will take their obligations under Rule 11 more seriously in the future, and that a greater sanction would be inappropriate.

## VII. <u>CONCLUSION</u>

For the reasons set forth in this Opinion, this Court will (1) dismiss Claim 1 of Plaintiffs' TAC as moot and deny MedQuist's motion to compel arbitration because MedQuist has waived its right to arbitrate; (2) grant in part and deny in part the MedQuist Defendants' motion to dismiss, Defendant Suender's motion to dismiss, and Defendant Kearns' motion to dismiss; and (3) grant the MedQuist Defendants' motion for Rule 11 sanctions

73

and issue a written warning to address Plaintiffs' counsels' failure to conduct sufficient pre-filing due diligence.

The accompanying Order is entered.

**March 30, 2007**                        **s/ Jerome B. Simandle**
Date                                      JEROME B. SIMANDLE
                                          United States District Judge

# EXHIBIT F

*ORIGINAL*

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

FILED
CLERK, U.S. DISTRICT COURT

MAR 31 2005

CENTRAL DISTRICT OF CALIFORNIA
BY                           DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT

APR - 1 2005

CENTRAL DISTRICT OF CALIFORNIA
BY                           DEPUTY

SCANNED

# United States District Court
# Central District of California
# Western Division

| | |
|---|---|
| SOUTH BROWARD HOSPITAL DISTRICT, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MEDQUIST, INC., *et al.*, <br><br> Defendants. | CV 04-07520 TJH (VBKx) <br><br><br> Order |

The Court has considered Defendants' motions to dismiss for lack of personal jurisdiction and to dismiss for improper venue, or in the alternative, to transfer, together with the moving and opposing papers.

It is Ordered that, since the individual Defendants have declared that they agree to submit to personal jurisdiction in the District of New Jersey, the motion to dismiss for lack of personal jurisdiction is moot, and on that basis, be, and hereby is, Denied.

*56*

1      It is further Ordered that Defendants' motion to transfer be, and hereby

2   is, Granted.

3

4      It is further Ordered that this action be, and hereby is, Transferred to

5   the District of New Jersey.

6

7   Date:   March 30, 2005

8

9                                        Terry J. Hatter, Jr.

10                                 United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Order - Page 2 of 2